# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN SOCIETY FOR THE PREVENTION | : | |
| OF CRUELTY TO ANIMALS, | : | |
| FUND FOR ANIMALS, | : | |
| ANIMAL WELFARE INSTITUTE, | : | |
| ANIMAL PROTECTION INSTITUTE, | : | |
| TOM RIDER, | : | MISC. NO. _____ |
| | : | |
| Plaintiffs | : | **[RELATED TO:** |
| | : | **Civ. No. 03-02006 (EGS/JMF)]** |
| v. | : | |
| | : | |
| RINGLING BROS. AND BARNUM & BAILEY | : | |
| CIRCUS, | : | |
| FELD ENTERTAINMENT, INC., | : | |
| | : | |
| Defendants | : | |

## NON-PARTY PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS MOTION FOR PROTECTIVE ORDER REGARDING DEFENDANT FELD ENTERTAINMENT'S SUBPOENA TO PeTA

COMES NOW non-party People for the Ethical Treatment of Animals ("PeTA") (a 501(c)(3) non-profit organization dedicated to the welfare of animals), by counsel, and moves this Court for a protective order quashing a subpoena *duces tecum* dated September 20, 2007 issued by defendant Feld Entertainment Inc. ("FEI") to PeTA, or, in the alternative, to adjudge and restrict the scope of the subpoena.

The subpoena which has been fully complied with by PeTA based on its review of rulings by Judges Emmet G. Sullivan and John M. Facciola, basically seeks PeTA's full investigative files relating

to Ringling animals for over more than a decade. The subpoena is a blatant attempt to bypass rulings of this Court. FEI has now filed a separate action in the United States District Court for the Eastern District of Virginia, Norfolk Division (*Feld Entertainment, Inc. v. People for the Ethical Treatment of Animals*, 1/28/08, USDC E.D.Va.) in an attempt to have judges there give rulings different and inconsistent with those of this Court. PeTA has offered FEI to agree to have the matter moved or filed in this Court, but FEI has refused in a flagrant effort to avoid the judges in this case and this Court's prior rulings. PeTA agrees to the jurisdiction of this Court to this subpoena.

## BACKGROUND

On September 14, 2007, PeTA was contacted by a process server with regard to a subpoena. Within three to four days, PeTA agreed to accept service of the subpoena and a subpoena (Exhibit 1), dated September 20, 2007, was accepted on September 21, 2007. The subpoena, signed by George Gasper of Fulbright & Jaworski, counsel for FEI, was issued out of the Eastern District of Virginia. PeTA referred the subpoena to Philip Hirschkop, of Alexandria, Virginia, who has been counsel to PeTA for over twenty-five years and has extensive experience dealing with the these defendants, but in different cases. Mr. Hirschkop promptly contacted Mr. Gasper to discuss the scope of the subpoena on September 26 , 2007 and filed objections on October 10, 2007.

Mr. Gasper waited five weeks to reply to the objections, sending to Mr. Hirschkop a lengthy letter dated November 15, 2007, which Mr. Hirschkop received on November 16, 2007, the Friday before Thanksgiving, and which demanded production by PeTA the day before Thanksgiving. Mr. Hirschkop wrote to Mr. Gasper on November 20, 2007 and personally contacted Mr. Gasper on December 5, 2007. On both December 14, 2007 and December 17, 2007, PeTA produced responsive

documents showing financial expenditures by PeTA with relation to seven individual witnesses identified in the subpoena, as well as other responsive documents. (The December 14th and December 17th transmittal letters are attached as Exhibit 2.)

FEI has not modified the subpoena and is now seeking the Norfolk Court to order production of everything set forth in the subpoena. PeTA had over a dozen people spend over 150 hours to provide the information already produced to FEI, in addition to Mr. Hirschkop's time and billing from Mr. Hirschkop's firm.

## THE SUBPOENA

The subpoena is outrageously over broad. In the Motion to Compel filed in Norfolk (Exhibit 3),[1] FEI admits, at page 5, that it requested:

> "(1) videotapes and photographs of <u>anything</u> owned by FEI, including its elephants, and of <u>any</u> former FEI employees; (2) documents relating to former FEI employees, including Mr. Rider, who are parties or witnesses in the Litigation; (3) documents concerning plaintiffs and their counsel's request for funding relating to the Litigation or witnesses in it; and (4) documents provided to plaintiffs in the Litigation." (Emphasis added.)

On its face, the foregoing is far beyond the scope of what this Court has allowed, and is a knowing and wilful breach of this Court's Orders. The subpoena, although issued in the Eastern District of Virginia could only be signed by Mr. Gasper based on the pendency of this action by which he is bound. *See* Rule 45, Federal Rules of Civil Procedure. How would pictures of lions or zebras, or videos of tigers, benefit this litigation or have remote relevance? How would any picture of "any" former employee, including clowns, be remotely relevant? Requests for documents relating to former

---

[1] Included as Exhibit 4 to this Motion for Protective Order, is Mr. Hirschkop's letter to Mr. Gasper dated November 20, 2007, which FEI failed to include as an exhibit to their Norfolk motion. It is included here in order to complete the record.

employees, who are parties or witnesses, goes directly to PeTA's trade secrets and efforts of PeTA

relative to circuses, and is totally unrelated to the subject matter of this pending case. For instance,

PeTA has extensive efforts to seek legislation restricting the use of exotic animals and has had some of

the same witnesses involved in this case be involved in its legislative efforts, where these persons have

testified and had expenses related thereto (room, meals, travel) paid. Other than possibly actual

testimony directly related to the elephants involved in this matter, everything else would be totally

irrelevant. The subpoena was issued to use process in this case to investigate what PeTA is doing and is

a direct abuse of this Court's jurisdiction.

Indeed, in addition to the generalities in the quote above, the subpoena itself is otherwise over

broad and irrelevant to the underlying case. Paragraphs 1, 2 and 3 relate to witnesses Archelle Hundley,

Robert Tom, Jr., and Margaret Tom. Each paragraph is fairly identical in what they request.

Paragraph 1 of the subpoena includes all communications with <u>or about</u> Hundley, whether or not

related to this litigation, and for a period of more than a decade. It requests documents regarding

elephants in <u>all</u> circuses and is not limited to the Blue Unit or even just to Ringling Bros. It requires

material about any current or former employee, etc. of defendant. Other items are requested, and can be

reviewed by the Court.

Paragraph 4 includes all communications with or about any other current or former employee,

etc. of defendant and all documents reflecting any such person's statements or allegations about, among

other things, the defendant or any other current or former employee of defendant. Subsection (c)

requests documents related to anything of value, whether monetary or in kind, to any prior employee,

etc. of defendant. The rest of the paragraph is equally broad and reviewable by the Court.

Paragraph 5 also refers to any former employee, consultant, etc.

Paragraph 6 goes to pictures, videos, recordings concerning <u>any animal</u> of defendant or <u>anything owned</u> by defendant or concerning <u>anyone who has ever worked</u> for defendant.

Paragraph 7 refers to any communications with plaintiffs' counsel in this case, who FEI repeatedly admits has represented PeTA for over a dozen years.

With respect to the request in the Norfolk Motion to Compel for documents concerning Frank Hagan, that is equally outrageous. Mr. Hagan is not one of the enumerated witnesses in the subpoena from FEI, and when Mr. Hirschkop fully discussed the subpoena in September, 2007 with Mr. Gasper, Mr. Hagan was not mentioned by Mr. Gasper. It was not until December 5, 2007 (two and one-half months after issuance of the subpoena) that Mr. Gasper first raised the previously-produced redacted documents concerning Mr. Hagan. The Court should be aware that PeTA received a Hagan-related subpoena in this case <u>three years ago</u> from Covington & Burling, FEI's prior counsel. Production under that subpoena was amicably resolved, and redacted production of documents was made with the agreement of FEI's then-counsel. The redacted material has nothing to do with this case and are not useable in this case as Mr. Hagan is deceased. Regardless, those documents no longer exist. PeTA had offered nonetheless to FEI counsel a printout of payments made to Mr. Hagan from computer sources, but Mr. Gasper has refused to accept that.

## FEI'S ABUSE

The scope of the subpoena is outrageous and a direct affront to the dignity and jurisdiction of this Court. Defense counsel apparently feels that given the great patience that this Court has shown, they can get away with this kind of misconduct. Unfortunately, this conduct by FEI counsel is repetitive. Counsel misrepresents in its Norfolk Motion to Compel that this Court's prior rulings authorize the

requests for all the foregoing. Indeed, some of the foregoing requests were specifically rejected by both

The Honorable Emmet Sullivan and The Honorable John Facciola in prior rulings.

Counsel falsely buttress their argument to the Norfolk court that this Court has ordered these

same things from other third parties (WAP and HSUS). Yet, in that portion of their Memorandum, they

fail to point out to the Norfolk court that they assert in D.C. that WAP is an alter ego to plaintiffs'

attorneys and entirely fail to point out how assiduously they argued in this Court that HSUS should be

treated as a party because of their relationship to plaintiff The Fund for Animals. There are other

specific misrepresentations about this Court's rulings in defendant's Motion to Compel, which counsel

can address at a hearing in this matter, but which are self-evident to this Court (*see* Exhibit 3).

It is interesting that as long as twenty-five years ago this Court, through The Honorable Louis

Oberdorfer, criticized the same firm (Fulbright & Jaworski), for the same kind of misconduct.

> There is a serious discrepancy between respondents' description of the
> issues framed by the complaints and the plain language of the complaints.
> *Compare* Joint Statement in Opposition to Plaintiffs' Motion to Compel,
> at 6-8 *with id.* apps. 1, 2 (complaints). Parties to an ancillary proceeding
> such as this before a court which does not have a full record or familiarity
> with an ongoing record should take special care to be candid with the
> ancillary court. Respondents' choice of advocacy over care is
> disappointing. Fortunately, a copy of the complaints were furnished as an
> appendix to respondents' brief.

*In re Subpoena Duces Tecum to Fulbright & Jaworski and Vinson & Elkins*, 99 F.R.D. 582, 1983 U.S.
Dist. LEXIS 13459; 14 Fed. R. Evid. Serv. (Callaghan) 898; fn.2.

Indeed, that criticism was picked up in the opinion of the Court of Appeals:

> Likewise without merit is appellants' claim that the SEC had agreed by
> letter to maintain the confidentiality of the submitted materials.
> Appellants were not entirely forthcoming below on this issue. Only after
> the District Court held against appellants in its first memorandum did they
> request reconsideration of that decision based on the new submission of
> correspondence consisting of two letters between Fulbright and the SEC.

\* \* \*

> Regardless of Fulbright's attempts to extract such a promise from the
> SEC, neither these letters nor any other part of the record indicates any
> such agreement by the SEC. Indeed, the record shows that the exchange
> of these letters occurred <u>after</u> the SEC had already been given access to all
> of the documents in question.

*In re: Subpoenas Duces Tecum* [Appellants Fulbright & Jaworski, Vinson & Elkins, Tesoro Petroleum],
238 U.S. App. D.C. 221, 738 F.2d 1367, 1373; 1984 U.S. App. LEXIS 20690, 19-22; *emphasis in
original*.

PeTA understands that for this case the Court has also had occasion to criticize FEI counsel's conduct.

PeTA also points out to the Court that this whole matter is a violation of this Court's discovery

cutoff. All discovery was to be completed by January 30, 2008. While FEI suggests that it is PeTA's

dilatory efforts that cause the delay, that is not correct. PeTA filed objections to the subpoena on

October 10, 2007, and FEI counsel then waited five weeks to reply (on November 15, 2007 at 6:30 PM).

In December, PeTA produced documents responsive to the subpoena in light of this Court's rulings (*see*

Exhibit 2). On December 5, 2007, PeTA's counsel, Mr. Hirschkop, personally informed Mr. Gasper of

all functions that these seven alleged witnesses had to do with PeTA. PeTA made plain in December it

would not produce videotapes of every aspect of this or all circuses. PeTA confirmed a $2,000 grant to

WAP for which FEI already had documentary proof and that there were no other grants given to or

requested by WAP. PeTA also disclosed the longstanding representation by PeTA, in other matters, by

the Meyer Glitzenstein firm. Nonetheless, FEI, which last wrote to PeTA on December 18, 2007, waited

six weeks, until January 28, 2008 – two days before discovery was ordered to be <u>completed</u> in this case –

to file its Motion to Compel through a special action in Norfolk.

Counsel understands there may be hundreds or thousands of hours of videotapes of circus walks.

As these walks are conducted in the public eye, the videos merely show countless hours of elephants

being paraded to and from a train. They do not show abuse as it is not the norm when the elephants are in the public eye. However, there is audio of PeTA employees, and the real reason FEI wants the videos is to listen to the PeTA employees and volunteers who made the videos. Counsel could not responsibly produce such tapes without first viewing and listening to them, which would likely take several weeks of doing nothing else. Nonetheless, it is not conceivable that this Court would admit those videotapes or even find them relevant.

This whole effort to force the matter to be relitigated on discovery rulings in Norfolk is, as pointed out above, an outrageous attempt to not only circumvent the rulings of this Court, and blatant judge shopping. While Rule 45 requires that a Motion to Compel be heard in the district in which the subpoena was issued, PeTA has offered to waive that and to submit itself to the jurisdiction of this Court. FEI has refused, clearly to avoid the judges in this Court and their prior rulings.

## PeTA FILES THIS MOTION FOR PROTECTIVE ORDER PURSUANT TO THE PROCEDURES APPROVED BY THE D.C. CIRCUIT IN THE CASE *IN RE SEALED CASES*

This Court clearly has jurisdiction to grant this motion. *See In re Sealed Cases*, 141 F.3d 337 (D.C. Cir, 1998), where this precise procedure was approved by the United States Court of Appeals for the D.C. Circuit. In that case, a defendant in a case pending in the Eastern District of Arkansas served a subpoena *duces tecum*, issued from the United States District Court for the District of Columbia, upon a third party law firm demanding production of documents and testimony at a deposition in Washington D.C. The law firm objected to the subpoena and the defendant filed a motion to compel in the District Court in the District of Columbia, and suggested to the Court that the motion be transferred to Arkansas. The third party law firm objected to the transfer, but the District Court nonetheless transferred the discovery dispute to Arkansas, finding that the authority to transfer was supported by the Advisory Notes

-8-

of Rule 26(c) which refers to the possibility that "the court in the district where the deposition is being

taken may, and frequently will, remit the deponent or party to the court where the action is pending."

The law firm sought a writ of mandamus from the United States Circuit Court of Appeals, which was

granted. That Court found that there was no authorization, within the text of Rule 26, to transfer a

motion to quash and that the District Court misconstrued "remit" for "transfer". However, in reconciling

the Advisory Notes with Rule 26, the Circuit Court approved of the exact procedure that PeTA seeks in

this case, stating:

> The advisory committee note is thus more naturally read to suggest that the
> court for the district where the deposition is to be taken may stay its action
> on the motion, **permit the deponent to make a motion for a protective
> order in the court where the trial is to take place**, and then defer to the
> trial court's decision. *See* Kearney, 172 FRD at 383.[2]  This reading cures
> the jurisdictional problems; a nonparty that moves for a protective order in
> the court of the underlying action thereby submits to that court's
> jurisdiction.  (Emphasis added).

In discussing the purpose of Rule 45 and its territorial protection for the third party, the Court noted that

the operation of the subpoena rules, in fact, grants nonparty witnesses the privilege of choosing to

litigate in their home districts regardless of how relief is sought, or to seek a protective order in the trial

court, as PeTA as done here. The D.C. Circuit stated:

> [i]n the end what affords the nonparty deponent this territorial protection is
> that the rules vest power to compel discovery from a nonparty, and to
> impose contempt sanctions for non-compliance, in the subpoena-issuing
> court. FRCvP 37(a)(1); FRCvP 45(e).  Rule 26(c) permits that court to
> stay its proceedings on a nonparty deponent's motion for a protective order
> **pending action by the trial court**, and to quash, followed by deference to
> the trial court's resolution on that motion.  The rules may well allow
> similar abstention on a motion to quash, followed by deference to the trial
> court's decision on a motion for a protective order; this was the technique

---

[2]*See Kearney*, 172 F.R.D. 381, 383; 1997 U.S. Dist. LEXIS 6859.

> used in *Kearney*. But if the nonparty deponent fails to take the bait and
> move for a protective order in the trial court, the issuing court must make
> the decision whether discovery may be had, and its scope, since it is the
> only court with the power to order enforcement. Other courts have
> recently adopted this reading of the Advisory Committee Note. (Emphasis
> added, citations omitted.)

See also, *Hartz Mountain Corp v. Chanelle Pharma Veterinary Products*, 235 FRD 535 (D. Me. 2006),

where, based on *In re Sealed Cases*, the District Court found that "when the court from which a

subpoena issues is not the forum in which the underlying action is pending, a motion to quash that

subpoena is properly brought in the issuing court.... However, it is within the discretion of the court that

issued the subpoena to transfer motions involving the subpoena to the district in which the action is

pending." 9A C. Wright & A. Miller, *Federal Practice and Procedure,* Section 2463 at 79 (2d ed.

1994.) The Court stated:

> I find persuasive in this regard the analysis of the District of Columbia
> Circuit Court of Appeals in *In re Sealed Case*, 141 F.3d 337 (D.C. Cir
> 1998). It held that the court from which the subpoena issues may not
> transfer a motion to quash but may stay its action on the motion and
> **permit the party seeking to quash the subpoena to make a motion for**
> **a protective order in the court where the trial is to take place** and then
> defer to the trial court's decision. 141 F.3d at 340-42. (Emphasis added.)

As approved in the above cases, PeTA will be filing a Motion to Quash, Motion for Protective Order and

Motion to Stay in the United States District Court for the Eastern District of Virginia, Norfolk Division,

the court from which the subpoena to PeTA was issued.[3]

---

[3]PeTA may also file a motion for transfer between the Norfolk Division and Alexandria
Division of the Eastern District of Virginia based on *forum non conveniens*.

PeTA requests that this Court order an expedited response and set this down for hearing on a expedited basis, given the pendency of the matter in Norfolk.

Respectfully submitted,

PHILIP J. HIRSCHKOP (D.C. Bar #153908)
HIRSCHKOP & ASSOCIATES, P.C.
908 King Street, Suite 200
Alexandria, Virginia  22314
Telephone:  (703) 836-6595
Facsimile:  (703) 548-3181
*Counsel for People for the Ethical Treatment of Animals*

## CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2008, a copy of the foregoing Nonparty PeTA's Motion for Protective Order, and a copy of the proposed Order, were served via hand-delivery upon:

Katherine A. Meyer, Esquire
MEYER GLITZENSTEIN & CRYSTAL
1601 Connecticut Avenue, N.W., Suite 700
Washington, D.C.  20009
*Counsel for Plaintiffs*

Lisa Zeiler Joiner, Esquire
FULBRIGHT & JAWORSKI LLP
801 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
*Counsel for Defendants*

PHILIP J. HIRSCHKOP

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

| Eastern | DISTRICT OF | Virginia |
|---|---|---|

ASPCA et al.

V.

Ringling Bros. et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 03-cv-2006 (D.D.C.)

TO:  People for the Ethical Treatment of Animals
501 Front Street
Norfolk, VA 23510

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Appendix A

| PLACE   501 Front Street<br>Norfolk, VA 23510 | DATE AND TIME<br>10/12/2007 10:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>*George Gasper* (Attorney for Defendant) | DATE<br>9/20/2007 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
George Gasper, Fulbright & Jaworski L.L.P.
801 Pennsylvania Avenue, N.W., Washington, DC 20004 (202-662-4504)

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.



AO88  (Rev.  12/06) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on

| DATE | SIGNATURE OF SERVER |
|---|---|
| | |
| | ADDRESS OF SERVER |

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## APPENDIX "A"

### DEFINITIONS

1.    "Animal Activist/Group" means any person or entity that advocates on behalf of animals and includes, but is not limited to, the American Society for the Prevention of Cruelty to Animals ("ASPCA") or any local or regional Society for the Prevention of Cruelty to Animals ("SPCA"), the Fund for Animals ("FFA"), the Animal Welfare Institute ("AWI"), the Performing Animal Welfare Society ("PAWS"), the Earth Liberation Front ("ELF"), the Animal Liberation Front ("ALF"), Animal Protection Institute ("API"), Captive Animals' Protection Society ("CAPS"), In Defense of Animals ("IDA"), Compassion over Killing, the Wildlife Advocacy Project ("WAP"), and any other local and/or regional grass roots group or local and/or regional animal activist organization.

2.    "Communication" means the transmittal or exchange of information of any kind in any form, including oral, written, or electronic form.

3.    "Complaint" refers to the Complaint filed by the ASPCA, AWI, FFA, and Tom Rider originally captioned as *American Society for the Prevention of Cruelty to Animals, et al. v. Ringling Bros. and Barnum & Bailey Circus et al.*, No. 03-2006 (EGS) (D.D.C.), dated September 23, 2003.

4.    "Defendant" means Feld Entertainment, Inc., any of its current or former employees, consultants, agents, attorneys, directors, other representatives, and all other persons acting under their control or on their behalf and includes the Ringling Bros. and Barnum and Bailey Circus as referred to in the Complaint.

5.    "Document" is defined to be synonymous and equal in scope to usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a), and shall include all Documents regardless of whether they exist in paper or electronic format.

A copy or duplicate of a document which has any non-conforming notes, marginal annotations, or other markings, and any preliminary version, draft, or revision of the foregoing is a separate document within the meaning of this term. Document(s) include, by way of example only, any memorandum, letter, envelope, correspondence, <u>electronic mail</u>, report, note, Post-It, message, telephone message, telephone log, diary, ledger, chart, journal, calendar, minutes, working paper, financial report, accounting report, account statement, check, work papers, teletype message, facsimile, directory, computer disk or tape, thumb or flash drive, or video or audio recording such as a tape, CD, or DVD. Document(s) also include the file, folder tabs, binders and labels appended to or containing any Documents.

6.     "Litigation" means this case, originally captioned as *American Society for the Prevention of Cruelty to Animals, et al. v. Ringling Bros. and Barnum & Bailey Circus, et al.,* No. 03-2006 (EGS) (D.D.C.), and/or its predecessor suit, captioned as *American Society for the Prevention of Cruelty to Animals, et al. v. Ringling Bros. and Barnum & Bailey Circus, et al.,* No. 00-1641 (EGS) (D.D.C.).

7.     "MGC" means the law firm of Meyer Glitzenstein & Crystal, formerly known as Meyer & Glitzenstein.

8.     "Person" means any natural persons, proprietorships, public or private corporations, partnerships, trusts, joint ventures, groups, associations, organizations, or other legal entities, including any representative of any such person or persons.

9.     "Plaintiffs" refers to the plaintiffs in the Litigation:  ASPCA, FFA, AWI, API and Tom Rider.

10.     "Produce" or "Production" means to provide legible, complete, and exact copies of responsive documents to the undersigned counsel, or to make such documents available to the

undersigned counsel for inspection and reproduction. Where the document is in the form of a computer program or computer data, production should include production of the responsive information in machine-readable format along with a description of the format and any other information necessary and sufficient to permit access to and an understanding of the information.

11.    The phrase "refer, reflect, or relate to" is used as a means of requesting information or documents that constitute, comprise, consist of, contain, evidence, set forth, propose, show, disclose, describe, discuss, mention, explain, summarize, reflect, deal with, identify, analyze, demonstrate, or in any way address, involve, regard, pertain to, touch upon, affect, or concern, in whole or in part, the subject matter of the relevant request for production.

12.    "Wildlife Advocacy Project" ("WAP") refers to an organization purporting to be a non-profit advocacy group that was founded by Katherine Meyer and Eric Glitzenstein of MGC. Any reference to WAP includes, but is not limited to, any persons that are partners, associates, employees, paralegals, interns, clerks, independent contractors or otherwise associated with MGC, including but not limited to Katherine Meyer, Eric Glitzenstein and Leslie Mink, that are acting on behalf of WAP.

13.    "You" and "Your" refer to the People for the Ethical Treatment of Animals ("PETA").

14.    To the extent not otherwise defined, all words shall have their usual and ordinary meaning as the context of the sentence would indicate.

31351300.1

- 3 -

## INSTRUCTIONS

1.      All documents shall be produced in the order they are kept in the ordinary course of business, and shall be produced in their original folders, binders, covers or containers, or facsimile thereof.  Documents should be produced in a manner that ensures that the source of each document can be determined.  Documents attached to each other should <u>not</u> be separated.

2.      These requests relate to all documents which are in Your possession, custody or control that are responsive to one or more of the document production requests contained herein.

3.      Unless otherwise noted, these requests shall apply to the period January 1, 1996 to the present.

4.      All uses of the conjunctive include the disjunctive and vise versa.  Words in the singular include the plural and vice versa.  Pronouns shall be construed as gender-neutral.

5.      Each document production request shall operate and be construed independently.  Unless otherwise noted, no paragraph limits the scope of any other paragraph.

6.      For each document whose production is requested, produce the entire original document, along with all attachments, appendices, and exhibits, and any copies that are not identical to the original (whether because of notes made on, or attached to, such copy or otherwise) .

7.      You shall affix to every page of every document that You produce a Bates number or other unique identifier.

8.      Documents shall be produced in such fashion as to identify the department, branch, or office in whose possession they were located and, where applicable, the natural

person in whose possession they were found and the business address of each document's custodian(s).

9.    Electronically stored information should be produced in an intelligible format or together with a sufficient description of the system or program from which it was derived to permit rendering the material intelligible. As stated above, the term "documents" specifically includes, but is not limited to, e-mail communications and other electronic records.

10.    If any document responsive to any request is withheld, in whole or in part, from production under a claim of privilege (including, without limitation, attorney-client or work-product privilege) or otherwise, please provide a list identifying for <u>each</u> such withheld document the following:

a.    the type of document (e.g., memorandum, letter, report, chart, etc.), its general subject matter (without revealing the information as to which privilege is claimed), the date of the document, and the nature and length of any attachment or appendices;

b.    all author(s), addressee(s), distributee(s), and recipient(s);

c.    the date of the document; and

d.    the nature of the privilege or protection claimed, or any other basis on which the document has been withheld.

11.    If a document responsive to these requests was at any time in Your possession, custody or control but is no longer available for production, as to each document state the following information:

a.    whether the document is missing or lost;

b.    whether the document has been destroyed;

c.      whether the document has been transferred or delivered to another person and, if so, at whose request;

d.      whether the document has been otherwise disposed of; and

e.      the circumstances surrounding the disposition of the document and the date of its disposition.

## REQUESTS FOR PRODUCTION

1.      All documents that refer, reflect, or relate to Archele Faye Hundley, including without limitation:  (a) all communications with or about Ms. Hundley; (b) all documents reflecting Ms. Hundley's statements or allegations concerning the Litigation, elephants in circuses, Defendant, and/or any current or former employee, consultant, agent, attorney, director, or other representative of Defendant; (c) all documents that reflect anything of value, whether monetary or in kind, requested by or on behalf of, given to, directed to, or made at the direction of Ms. Hundley, including consulting fees and payments and/or reimbursements for services rendered or for goods obtained/received, that were given and/or made either directly to Ms. Hundley or indirectly to Ms. Hundley through another person and/or entity, including MGC and/or WAP; (d) all documents that relate to the purpose of any payments made to, directed to, or requested by Ms. Hundley; and (e) all documents that relate to any payments received, requested, or solicited by you or on your behalf for purposes of paying Ms. Hundley, funding any activities to be undertaken by Ms. Hundley, or funding any activities relating to Defendant or any other circus, including but not limited to, IRS Forms 1099.

2.      All documents that refer, reflect, or relate to Robert Tom, Jr., including without limitation:  (a) all communications with or about Mr. Tom; (b) all documents reflecting Mr. Tom's statements or allegations concerning the Litigation, elephants in circuses, Defendant,

31351300.1                                  - 6 -

and/or any current or former employee, consultant, agent, attorney, director, or other representative of Defendant; (c) all documents that reflect anything of value, whether monetary or in kind, requested by or on behalf of, given to, directed to, or made at the direction of Mr. Tom, including consulting fees and payments and/or reimbursements for services rendered or for goods obtained/received, that were given and/or made either directly to Mr. Tom or indirectly to Mr. Tom through another person and/or entity, including MGC and/or WAP; (d) all documents that relate to the purpose of any payments made to, directed to, or requested by Mr. Tom; and (e) all documents that relate to any payments received, requested, or solicited by you or on your behalf for purposes of paying Mr. Tom, funding any activities to be undertaken by Mr. Tom, or funding any activities relating to Defendant or any other circus, including but not limited to, IRS Forms 1099.

3.    All documents that refer, reflect, or relate to Margaret Tom, including without limitation: (a) all communications with or about Mrs. Tom; (b) all documents reflecting Mrs. Tom's statements or allegations concerning the Litigation, elephants in circuses, Defendant, and/or any current or former employee, consultant, agent, attorney, director, or other representative of Defendant; (c) all documents that reflect anything of value, whether monetary or in kind, requested by or on behalf of, given to, directed to, or made at the direction of Mrs. Tom, including consulting fees and payments and/or reimbursements for services rendered or for goods obtained/received, that were given and/or made either directly to Mrs. Tom or indirectly to Mrs. Tom through another person and/or entity, including MGC and/or WAP; (d) all documents that relate to the purpose of any payments made to, directed to, or requested by Mrs. Tom; and (e) all documents that relate to any payments received, requested, or solicited by you or on your behalf for purposes of paying Mrs. Tom, funding any activities to be undertaken by Mrs. Tom, or

31351300.1                                    - 7 -

funding any activities relating to Defendant or any other circus, including but not limited to, IRS Forms 1099.

4.    All documents that refer, reflect, or relate to any other current or former employee, consultant, agent, attorney, director, or other representative of Defendant (including but not limited to Tom Rider, Glenn Ewell, Gerald Ramos, James Stechcon, Garrison Christianson, and/or Kelly Tansy [a.k.a. Kelly Tansey]), including without limitation: (a) all communications with or about such persons; (b) all documents reflecting any such person's statements or allegations concerning the Litigation, elephants in circuses, Defendant, and/or any other current or former employee, consultant, agent, attorney, director, or other representative of Defendant; (c) all documents that reflect anything of value, whether monetary or in kind, requested by or on behalf of, given to, directed to, or made at the direction of such persons, including consulting fees and payments and/or reimbursements for services rendered or for goods obtained/received, that were given and/or made either directly to such persons or indirectly to such persons through another person and/or entity, including MGC and/or WAP; (d) all documents that relate to the purpose of any payments made to, directed to, or requested by such persons; and (e) all documents that relate to any payments received, requested, or solicited by you or on your behalf for purposes of paying such persons, funding any activities to be undertaken by such persons or funding any activities relating to Defendant or any other circus, including but not limited to, IRS Forms 1099.

5.    All documents that refer, reflect, or relate to any solicitation of or request for donations, contributions, payments and/or any thing(s) of value concerning the Litigation, elephants in circuses, Defendant, and/or any current or former employee, consultant, agent, attorney, director, or other representative of Defendant (including but not limited to Tom Rider,

Glenn Ewell, Gerald Ramos, James Stechcon, Garrison Christianson, Kelly Tansy [a.k.a. Kelly Tansey], Archele Faye Hundley, Margaret Tom and/or Robert Tom, Jr.), by: (a) Plaintiffs; (b) MGC; and (c) WAP.

6.    All pictures and video or audio recordings (such as tapes, CDs or DVDs) (in complete and unedited form) that you or anyone else has taken of anything owned by Defendant (such as its boxcars or bullhooks), of any of Defendant's animals (such as its elephants), or of anyone who has ever worked for Defendant (such as Sacha Houcke, Alex Vargas, Carrie Coleman, Tom Rider, Glenn Ewell, Gerald Ramos, James Stechcon, Garrison Christianson, Kelly Tansy [a.k.a. Kelly Tansey], Archele Faye Hundley, Margaret Tom and/or Robert Tom, Jr.).

7.    All documents provided to, or communications with, plaintiffs or their counsel (including MGC) that refer, reflect or relate to Defendant's care or treatment of its elephants at issue in the Litigation.

31351300.1

- 9 -

LAW OFFICES

# HIRSCHKOP & ASSOCIATES, P.C.

PHILIP J. HIRSCHKOP
VA, D.C. & NY BARS

908 KING STREET, SUITE 200
ALEXANDRIA, VIRGINIA  22314-3013

WASHINGTON OFFICE
1920 N STREET, N.W, SUITE 300,
WASINGTON, D.C.  20036-1622

(703) 836-6595 & (703) 836-5555
FAX (703) 548-3181

December 14, 2007

**_VIA HAND-DELIVERY_**
George Gasper, Esquire
FULBRIGHT & JAWORSKI
801 Pennsylvania Avenue, N.W.
Washington, D.C.  20004

RE:   *ASPCA v. Ringling Bros, et al.*
          Subpoena *duces tecum* to PeTA

Dear Mr. Gasper:

In reply to your letter of December 7, 2007, I do not agree with a number of items. I understood that when we spoke you were traveling, so I'm a little surprised about the extensive detail, although a number of details are omitted that change the context of some of the things we discussed. In light of that, I would first request that you inform me if you have been recording our conversations, or did you record that or any other conversation. If you are recording conversations, you should first inform me. I probably would have agreed, but do insist that I be at a facility where I can also record and we can be on a level playing field. At any rate, I would require that you respond to this inquiry before anything further is done.

With regard to your letter, the major omission is that I was trying to work out the subpoena and our objections, and apparently it is your position that you are not going to settle anything, but rather press PeTA for anything they are willing to give, whether it's within or even exceeding the rulings of the magistrate and the judge, and then you will nonetheless drag us into court. For instance, your continued demand that PeTA produce for inspection every video it has ever taken or any footage it has of anything concerning Ringling Bros. or any other circus over the last ten years (or, perhaps, longer as you have yet to agree to the number of years), is not remotely within reason. Your letter does not suggest we were trying to resolve issues, but rather that it's all a one-way street with PeTA giving and Ringling not accommodating or compromising on anything.

I have reviewed the rulings of  Judge Sullivan and Judge Facciola in prior discovery and, after consultation with PeTA, while still maintaining our overall objections, PeTA is making a good faith attempt to produce documents I believe fall within the guidelines of those rulings. Specifically, as discussed in more detail elsewhere in this letter, PeTA is now producing

EXHIBIT
2

George Gasper, Esquire
Page 2
December 14, 2007

information on expenditures, all correspondence by any one of the nine individuals named in paragraphs 1-5 of the subpoena, and all correspondence by PeTA to any one of the nine individuals named in paragraphs 1-5 of the subpoena.

Thus, I have asked PeTA to prepare a table showing expenditures to, or on behalf of, the nine individuals mentioned in paragraphs 1-5 of your subpoena who you claim to be witnesses in this matter. At any rate, I enclose that table. The material it encompasses came from diverse entries which, if produced, would be cumbersome and not as readily identifiable. The preparation of the table is done at considerable effort as an accommodation to resolving disputes over the subpoena.

With regard to Glenn Ewell, you are correct in mentioning in your letter that I did tell you I would be shocked if Glenn Ewell is going to be a witness for plaintiffs, and my inquiries of the plaintiffs confirm that.

With regard to Frank Hagan, your letter is not clear that I protested to you in our conversations that you had not mentioned Hagan in our prior conversation or in the subpoena. You do point out that I did tell you that we had previously produced documents on Hagan. You have now sent those documents to me for review. I have asked PeTA to find the original documents that match the ones with the redactions, and I am awaiting those. However, I am concerned in that you told me that Hagan is going to be a witness and I have since discovered that Hagan is deceased. Accordingly, I'm not sure what good my reviewing these documents (if they can be located) will be, as you certainly can't put them in front of a deceased witness or seek to impeach a deceased witness, nor do they appear to lead to the discovery of admissible evidence. If PeTA cannot locate those documents, perhaps you would accept a table, like the one being produced for the other witnesses, showing expenditures to Hagan, but I would appreciate your input as to why these would be discoverable in light of the fact that he is deceased.

I am providing a number of documents where the nine individuals wrote to public officials. I believe they are within the scope of your subpoena and that the Court would want them produced, and I am thereby producing them, albeit we do have general objections that have not yet been dealt with, should you decide to go to court. Accordingly, I am not waiving those general objections, but am producing these in an effort to be cooperative.

Also, I have asked PeTA to provide all correspondence by any one of the nine individuals named in paragraphs 1-5 of the subpoena, and all correspondence by PeTA to any one of the nine individuals named in paragraphs 1-5 of the subpoena. That correspondence is being produced to you.

With regard to videos or photos, it is hard to try to identify those because of your overall request for any video PeTA has of any circus. That type of search is massive and cannot be done

George Gasper, Esquire
Page 3
December 14, 2007

repetitively. If we can narrow the request on videos, I could probably promptly produce those. Some videos have been located, which involve one or more of the nine people you identified, and they need to be reviewed to see if they meet your criteria and the guidelines set forth by the Court.

Lastly, I have just received some further documents which I do not think add anything, as they appear to be supporting chits for some of the financial expenses such as travel and meals. I will review them but cannot do so until this weekend. I believe, from a quick review, they are not of any note as the charges have already been produced.

With regard to some of the other recitations in your letter, I am just going to generally deny them, as I don't have time to get into a letter writing campaign with you and your massive law firm. Needless to say, our discussion, I assumed, was trying to settle these issues and not one for a court record, as apparently you are proposing. If that is what you want to do, then we shouldn't speak at all and should only deal in writing. It would make this whole process far more cumbersome. I am not interested in posturing, but in resolution. For instance, the recitation in your letter that you explained to me about the reason to believe that PeTA has provided certain videos to plaintiff and that I confirmed your suspicion, is inaccurate. My recollection of our conversation is that I told you that either the plaintiff got the videos from PeTA, or from public rsources, but that I had seen a list of the videos that the plaintiff had produced and I understood they were the videos of PeTA's that the plaintiffs had.

You raised some issue that maybe the plaintiff would get more videos from PeTA in the future, and I told you I didn't know anything about that and that was something for you to work out with the plaintiff and the court. That's not included in your letter. I understand your letter is not meant to be a transcript of our conversation, but I do feel that you have been adversarial in the portions reflecting our conversation that you seek to quote in your letter. I want to be very clear with regard to videos that it is my understanding that the plaintiffs have not come and reviewed all of PeTA's videos. It is PeTA's position that if specific videos are requested, they will deal with each such request. Nor do I know that the plaintiffs got all the videos directly from PeTA. They may, indeed, have gotten some from some of the witnesses you mentioned, but I have not requested of the plaintiffs how they went about handling their lawsuit and discovery.

You also requested information on contributions made to WAP and payments to the Meyer Glitzenstein law firm. I told you that the only knowledge I had regarding WAP after preliminary inquiry was that one grant for which you already have the documents. That is included in the enclosed table. Further inquiry of PeTA indicates there are no further grants. If any turn up, I will immediately inform you, but, as of this time, a search has been made and I am informed no others were made. With regard to Meyer Glitzenstein, I told you very clearly that they have represented PeTA over the years and I have had regular communications with them, as have other PeTA lawyers. We have had a working agreement with that firm, both on behalf of

George Gasper, Esquire
Page 4
December 14, 2007

myself and general counsel's office for PeTA, in the course of various legal efforts that the communications between counsel would remain privileged. I understood from our conversation that you were not seeking payments by PeTA to Meyer Glitzenstein. However, with regard to the lawsuit, PeTA has not paid any expenses, either for costs or legal fees. That should therefore resolve that issue.

With regard to the miscellaneous points in your letter, I do not recall what my comment was about "a living wage" to Frank Hagan. I know he was paid consulting fees and some costs for a period while he assisted PeTA, and whether it was a living wage or something else, I honestly don't know. Further, I don't recall saying that Garrison Christianson testified before the USDA. It was my understanding then, and it remains now, that he provided an affidavit or at some point drafted an affidavit, which is being supplied to you.

If I have omitted any details of your letter, take them as contested. My task is not to respond to all the details of your letter, but to try and respond to the subpoena within the guidelines set by the Court, and I am trying to do that.

Very truly yours,

PHILIP J. HIRSCHKOP

PJH:er
enclosures
cc:    Jeffrey S. Kerr, Esquire
       Bonnie Robson, Esquire
       Katherine Meyer, Esquire

LAW OFFICES
# HIRSCHKOP & ASSOCIATES, P.C.
908 KING STREET, SUITE 200
ALEXANDRIA, VIRGINIA  22314-3013

PHILIP J. HIRSCHKOP
VA, D.C. & NY BARS

WASHINGTON OFFICE
1920 N STREET, N.W, SUITE 300.
WASINGTON, D.C.  20036-1622

(703) 836-6595 & (703) 836-5555
FAX (703) 548-3181

December 17, 2007

_**VIA FACSIMILE (202-662-4643)**_
George Gasper, Esquire
FULBRIGHT & JAWORSKI
801 Pennsylvania Avenue, N.W.
Washington, D.C.  20004

> RE:    _ASPCA v. Ringling Bros, et al._
>          Subpoena _duces tecum_ to PeTA

Dear Mr. Gasper:

Enclosed are five additional pages (best copies available).

Very truly yours,

PHILIP J. HIRSCHKOP

PJH:er
enclosures
cc:    Jeff Kerr, Esquire
        Bonnie Robson, Esquire
        Katherine Meyer, Esquire

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

FELD ENTERTAINMENT, INC.          :
                                  :
              Plaintiff,          :
                                  :
      v.                          :          Case No.
                                  :
PEOPLE FOR THE ETHICAL            :
TREATMENT OF ANIMALS,             :
                                  :
              Defendant.          :
_____  :

## FELD ENTERTAINMENT'S MOTION TO COMPEL DOCUMENTS SUBPOENAED FROM PETA

Pursuant to Fed. R. Civ. P. 45(c)(2)(B), plaintiff Feld Entertainment, Inc. ("FEI") hereby moves to compel the production of documents subpoenaed from defendant People for the Ethical Treatment of Animals ("PETA"), awarding the following relief:

1.     An order requiring PETA to produce all documents responsive to Request Nos. 1-7 within 10 days of the date of this order;

2.     An order requiring PETA to produce all documents, in unredacted form, regarding FEI's former employee, Frank Hagan, who was a deponent in the underlying litigation and who is now deceased.

3.     An award of all costs incurred in this action by FEI, including reasonable attorneys' fees, as provided by Fed. R. Civ. P. 45(e) and any other applicable law;

4.     Such other relief as this Court deems proper.

A memorandum of law in support of FEI's motion is submitted herewith.

This, the 28th day of January 2008.

1

EXHIBIT
3

Respectfully submitted,

Christopher A. Abel, Esquire (VSB #31821)
Dawn L. Serafine, Esquire (VSB #48762)
Attorneys for Plaintiff Feld Entertainment, Inc.
TROUTMAN SANDERS L.L.P
150 W. Main Street
Norfolk, V.A. 23510
Telephone: (757) 687-7535
Fax: (757) 687-1535
E-mail: chris.abel@troutmansanders.com


Of Counsel:
John M. Simpson
Joseph T. Small, Jr.
Lisa Zeiler Joiner
Michelle C. Pardo
George A. Gasper

FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 662-0200
Facsimile: (202) 662-4643

*Counsel for Plaintiff Feld Entertainment, Inc.*

2

## CERTIFICATE OF SERVICE

I hereby certify on this 28th day of January, 2008 that I caused the foregoing Motion to be personally served upon People for the Ethical Treatment of Animals in the manner as follows:

**VIA FACSIMILE & HAND DELIVERY TO:**

Philip J. Hirschkop
Hirschkop & Associates, P.C.
908 King Street, Suite 200
Alexandria, V.A. 22314-3013
Facsimile: 703-548-3181

*Counsel for PETA*

**VIA PROCESS SERVER ON:**

Registered Agent
People for the Ethical Treatment of Animals
501 Front Street
Norfolk, V.A. 23510

**VIA FIRST CLASS MAIL**

Katherine A. Meyer, Esquire
Eric Robert Glitzenstein, Esquire
Howard M. Crystal, Esquire
Kimberly Denise Ockene, Esquire
Tanya Sanerib, Esquire
Meyer Glitzenstein & Crystal
1601 Connecticut Avenue, NW
Suite 700
Washington, DC 20009

*Counsel for Animal Protection Institute, American Society for the Prevention of Cruelty to Animals, Tom Rider, Animal Welfare Institute and Fund for Animals*

3

_____
Christopher A. Abel, Esquire (VSB #31821)
Dawn L. Serafine, Esquire (VSB #48762)
Attorneys for Plaintiff Feld Entertainment, Inc.
TROUTMAN SANDERS L.L.P
150 W. Main Street
Norfolk, V.A. 23510
Telephone: (757) 687-7535
Fax: (757) 687-1535
E-mail: chris.abel@troutmansanders.com


Of Counsel:
John M. Simpson
Joseph T. Small, Jr.
Lisa Zeiler Joiner
Michelle C. Pardo
George A. Gasper

FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 662-0200
Facsimile: (202) 662-4643

*Counsel for Plaintiff Feld Entertainment, Inc.*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

FELD ENTERTAINMENT, INC.          :
                                  :
            Plaintiff,            :
                                  :
    v.                            :          Case No.
                                  :
PEOPLE FOR THE ETHICAL            :
TREATMENT OF ANIMALS,             :
                                  :
            Defendant.            :
_____ :

## FELD ENTERTAINMENT, INC.'S MEMORANDUM IN SUPPORT OF IT'S MOTION TO COMPEL DOCUMENTS SUBPOENAED FROM PETA

Feld Entertainment, Inc. ("FEI") hereby respectfully moves pursuant to Fed. R. Civ. P. 45(c)(2)(B) to compel the production of documents subpoenaed from defendant People for the Ethical Treatment of Animals ("PETA"). See Ex. 1, FEI Subpoena to PETA (9/21/07) & Ex. 2, FEI Subpoena for Hagan Documents (1/21/05). FEI's subpoenas are narrowly focused upon documents and evidence in PETA's possession relating to the credibility of parties or witnesses, or refuting allegations of animal abuse made by plaintiffs in the litigation currently pending in federal court in the District of Columbia, captioned as *ASPCA, et al. v. Ringling Bros., et al.*, Civil Action No. 03-2006 (D.D.C.–EGS-JMF), and which was previously captioned as *ASPCA, et al. v. Ringling Bros., et al.*, Civil Action No. 00-1641 (D.D.C.) (hereinafter, "Litigation"). The documents commanded by FEI's subpoenas are not being withheld pursuant to any recognized claim of privilege or based upon any objection recognized under the Federal Rules of Civil Procedure. PETA, therefore, should be compelled by the Court to comply with FEI's subpoena immediately.

## I.    FACTUAL BACKGROUND

A.    **The Underlying Litigation and the Purpose of FEI's Subpoena**

In the Litigation, one individual, Tom Rider, a former barn man for FEI, and several "animal advocacy" organizations, The American Society for the Prevention of Cruelty to Animals ("ASPCA"), the Animal Welfare Institute ("AWI"), The Fund For Animals ("FFA") and the Animal Protection Institute ("API") (collectively referred to as the "Organizational Plaintiffs"), have sued FEI, d/b/a Ringling Bros. & Barnum and Bailey Circus, under the citizen-suit provision of the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 et seq. The plaintiffs allege that FEI's treatment of its Asian elephants violates the "taking" prohibitions of section 9 of the ESA.

Mr. Rider's credibility, both as a plaintiff and a witness, is at the center of the Litigation, as the Organizational Plaintiffs' standing depends *entirely* on Mr. Rider's allegations of emotional attachment to the Asian elephants and his alleged aesthetic injury resulting from FEI's purported ESA violation. Without Rider, there would be no Litigation. See American Society for the Prevention of Cruelty to Animals v. Ringling Bros., 317 F.3d 334, 338 (D.C. Cir. 2003) (Rider's standing allegations survive a Rule 12(b)(6) motion to dismiss).[1] The veracity of Rider's standing allegations has yet to be tested on summary judgment and/or at trial. Any evidence, therefore, that supports or rebuts those standing allegations – including whether they are credible – is relevant to such a standing challenge. Moreover, Rider's credibility will again be challenged in his role as an actual witness to alleged elephant "abuse." The allegations of abuse in plaintiffs' complaint are premised entirely on what Rider allegedly saw and heard while

---

[1]      The district court held that the Organizational Plaintiffs do not have standing to bring the ESA Action and that holding was not disturbed by the D.C. Circuit. See Performing Animal Welfare Society v. Ringling Bros., Civ. Act. No. 00-1641 (D.D.C. June 29, 2001) (slip op.) (Docket No. 20). In fact, the Court recently held that the plaintiffs only have standing as to the six elephants to which Mr. Rider alleged an emotional attachment and which are subject to the ESA. See American Society for the Prevention of Cruelty to Animals v. Ringling Bros., Civ. Act. No. 03-2006, 2007 U.S. Dist. LEXIS 78778, at *8 (D.D.C. Oct. 25, 2007).

working at FEI and Rider is expected to testify to the same at trial. Compl. ¶ 19. Therefore, any evidence tending to show Rider's *bias* – such as his receipt of "funding" from the other plaintiffs and from other "animal advocacy" organizations – will be paramount to FEI's defense.

Discovery in the Litigation to date demonstrates that the Organizational Plaintiffs, together with plaintiffs' counsel, Meyer, Glitzenstein & Crystal ("MGC"), the Wildlife Advocacy Project ("WAP"), a purported non-profit organization that is the alter-ego of plaintiffs counsel, and others have provided a substantial sum of money and other non-cash compensation – at least $150,000 – to Mr. Rider since the Litigation was filed. Some of the payments have been made directly from the Organizational Plaintiffs and MGC to Rider. Most of the payments, however, have been funneled from the Organizational Plaintiffs through WAP, who in turn sent the payments to Rider at MGC's expense. *PETA has made at least one such payment to WAP that was then funneled to Rider.*

The district court judge presiding over the Litigation has ruled that the payment documents *are relevant* to Rider's credibility and *ordered* not only the plaintiffs, but also third-party WAP to produce them. See Ex. 3, Discovery Order (8/23/07) (Docket No. 178) at 8 (WAP shall provide *any* non-privileged documents or information that it has not already provided ... related to payments or donations for or to and expenses of Tom Rider in connection with this litigation or his public education efforts related to the Circus's treatment of elephants ... .") (emphasis added). The magistrate judge now presiding over discovery in the Litigation has likewise ordered another third-party, the Humane Society of the United States ("HSUS"), to produce all of its Rider payment documents. Ex. 4, HSUS Order & Mem. Op. (12/3/07) (Docket Nos. 231 & 232) at 2 ("The HSUS will produce *all* documents that 'refer, reflect or relate' to Tom Rider, including all communications with or to him, and documents that pertain to

payments made to him ... .") (emphasis added).

The payment scheme does not end with Rider, however. PETA also made payments to one Frank Hagan, a former employee of FEI who was deposed in the Litigation and is now deceased. FEI previously subpoenaed documents from PETA regarding these payments, and PETA produced only redacted versions of some documents. See Ex. 2, FEI Subpoena for Hagan Documents. FEI also has learned that three other witnesses identified by plaintiffs, who also sought but were prohibited from joining the Litigation as plaintiffs (Archele Faye Hundley, Robert Tom, Jr. and Margaret Tom), have received compensation from PETA at least in the form of travel, lodging and cell phone payments. In fact, PETA has issued numerous press releases regarding these individuals' allegations of elephant "abuse." See, e.g., Ex. 11, PETA Press Release Regarding Archele Hundley. Any evidence relating to these individuals' prior statements about FEI or to payments made to or for them by animal advocacy organizations such as PETA, therefore would be, as in the case of Rider, relevant to their credibility as trial witnesses and therefore FEI's defense.

FEI also has learned that PETA has a number of videotapes and photographs of FEI's elephants and that PETA has shared that evidence with plaintiffs in the Litigation. This evidence is likewise important to FEI's defense in the Litigation, because at trial, FEI will be demonstrating a negative: that it *does not* abuse or mistreat its elephants. Any and all videotaped and photographic evidence of FEI's elephants, therefore, is relevant to FEI's defense. Evidence that shows what plaintiffs purport to be "abuse" may be relevant to their "taking" claim and FEI's rebuttal thereof that claim, just as evidence that shows no abuse or mistreatment of FEI's elephants will also be relevant.

Pursuant to Rule 45, FEI subpoenaed these documents from PETA on September 21,

2007. <u>See</u> Ex. 1, PETA Subpoena. Specifically, FEI requested: (1) videotapes and photographs of anything owned by FEI, including its elephants, and of any former FEI employees; (2) documents relating to former FEI employees, including Mr. Rider, who are parties or witnesses in the Litigation; (3) documents concerning plaintiffs and their counsel's request for funding relating to the Litigation or witnesses in it; and (4) documents provided to plaintiffs in the Litigation.

**B.    <u>PETA's Deficient Response to FEI's Subpoena</u>**

PETA has refused to comply fully with FEI's subpoena and, after much delay through correspondence, has posited no cognizable privilege claim or appropriate objection under the Federal Rules of Civil Procedure for its failure to do so. Instead, PETA has responded with carefully worded and purposefully evasive rhetoric and repeatedly asserted its political and philosophical adversity to FEI. <u>See, e.g.,</u> Ex. 5, Hirschkop Letter to Gasper (10/10/07). That the circus and PETA are at odds comes as no news to anybody, and does not resolve the real matter at hand – compliance with the subpoena. The few documents that PETA has produced are woefully insufficient as explained below.

FEI has made repeated attempts to reach an agreement with PETA regarding its subpoena. PETA first responded to FEI's subpoena with a misconceived, wordy and irrelevant "case history" of the Litigation, which it supposedly has no role in. <u>See</u> Ex. 5, Hirschkop Letter to Gasper (10/10/07) at 1-3. Although not a party, PETA somehow was able to proffer detailed – albeit inaccurate – knowledge of the Litigation.[2] PETA also made a number of frivolous objections. For example, PETA initially asserted that FEI should obtain information from parties to the Litigation, from the potential witnesses themselves and from public sources before it sought them from PETA. <u>See id.</u> at 4. All of these objections are without merit, <u>see</u> Ex. 6,

---

[2]        Plaintiffs' counsel in the Litigation has served as PETA's counsel in other matters.

Gasper Letter to Hirschkop (11/15/07) at 2-3, and were later abandoned by PETA. FEI's subpoena seeks documents that are solely in PETA's possession (internal e-mails, for example) and not documents that are in the Litigation plaintiffs' possession. Further, PETA cannot dictate which third party FEI should subpoena for documents, and more broadly, how it should defend itself in a lawsuit. Nor is there any provision in Rule 45 that permits a recipient of a subpoena to withhold documents simply because they are not the sole holder of them and because they may be otherwise publicly available. See, e.g., Gabby v. Maier, No. 04-04765, 2006 WL 2794316, at *3 (E.D. Wis. Aug. 31, 2006) ("[T]he fact that documents are available from another source is not a valid basis, by itself, for refusing to produce such documents."); Sabouri v. Ohio Bureau of Employment Svs., No. 97-715, 2000 WL 1620915, at * (S.D. Ohio Oct. 24, 2000) ("Fed. R. Civ. P. 34 requires production of a document that is in the 'possession custody or control' of a party; the fact that the document may also be available from another source is irrelevant."). Indeed, when the tables are turned, PETA has demanded – and succeeded – in other cases that FEI produce documents directly to PETA that were otherwise publicly available. Now that PETA is faced with a subpoena, it asks that the very relief it previously obtained from FEI be blocked.

Counsel for FEI and PETA then conferred via a telephone conference, the parameters of which FEI confirmed in a letter to PETA shortly thereafter. See Ex. 7, Gasper Letter to Hirschkop (12/7/07). That letter clearly articulated FEI's position on the document requests that are now at issue in this motion to compel. Specifically, FEI indicated that it expected PETA to produce "*all* documents" concerning certain former FEI employees who have or may testify in the ESA Action (including Frank Hagan and the three individuals who attempted to join the ESA Action as plaintiffs, Archele Faye Hundley, Robert Tom, Jr. and Margaret Tom) and are referenced in Request Nos. 1-4. See id. at 1. Specifically with respect to Hagan, FEI made clear

that the redacted documents produced in response to FEI's prior subpoena had since been deemed relevant by the Court and that it must produce unredacted copies of those documents. As a courtesy, FEI enclosed copies of PETA's prior production (i.e., the redacted documents) for its review.    FEI also stated that it expected to receive "documents concerning requests for funding that were made by *plaintiffs, WAP and/or plaintiffs' counsel* and that related to this litigation and/or FEI and its current or former employees." Id. at 2. Further, FEI indicated that it and PETA were at an impasse regarding the production of *all* of PETA's videotapes and photographs of FEI's elephants and all communications between PETA and plaintiffs, and that it would be moving to compel on those issues.

PETA then responded via letter and produced a limited number of documents on two occasions. Ex. 8, Hirschkop Letter to Gasper (12/14/07) & Ex. 9, Hirschkop Letter to Gasper (12/17/07).   For the first time in almost three months of correspondence over the subpoena, PETA announced that it was producing a "table" reflecting payments to former FEI employees instead of *all* of the payment documents.   PETA's approach is directly at odds with Judge Sullivan's order requiring the production of all payment documents.   Third-party WAP already attempted to produce such a "table" and its argument was flatly rejected. Ex. 3, Discovery Order at 8-9.  Moreover, PETA failed to provide a cogent reason for its failure to produce all of its payment documents, stating only that "[t]he material it encompasses came from diverse entries which, if produced, would be cumbersome and not as readily identifiable."   Ex. 8, Hirschkop Letter to Gasper (12/14/07) at 2.   The information was clearly compiled for purposes of producing a chart in lieu of the actual documents, so it would now not be difficult to produce the actual documents – as opposed to a chart that filters them from FEI – commanded by the subpoena. Further, PETA failed to produce *any* documents relating to Hagan.  PETA merely

acknowledged receipt of the redacted Hagan documents and indicated that it would search for and review the original, unredacted documents. PETA offered to produce a "table, like the one being produced for the other witnesses" if it could not locate the originals. Id. It is inexplicable how a "table" in lieu of the documents could be created while PETA simultaneously claims to be unable to locate the originals. In addition to its failure to produce all payment documents, PETA refused to produce *any* videotapes or photographs of FEI's elephants and *any* of its communications with plaintiffs regarding the ESA Action.

FEI responded by letter just one day after PETA's second inadequate production. Ex. 10, Gasper Letter to Hirschkop (12/18/07). FEI's letter set forth its objections to PETA's document production, which are now set forth in this motion to compel. PETA failed to make any further production of documents or contact with FEI regarding its subpoena. FEI, accordingly, has filed this action. Two judges presiding over the Litigation, Judge Sullivan and Magistrate Judge Facciola, have already held that this very type of payment documents sought by FEI's subpoena are relevant and must be produced. Ex. 3, Discovery Order at 8-9; Ex. 4, HSUS Order at 1-2. FEI has already been prejudiced by having to take depositions without the underlying documents from PETA's subpoena due to the upcoming close of discovery, and it should not be further prejudiced by PETA's failure to comply.

## II.    ARGUMENT

PETA's obligation to comply with FEI's discovery requests is the same as if it were a party to the Litigation. Castle v. Jallah, 142 F.R.D. 618 (E.D. Va. 1992) ("[T]he scope of discovery from a nonparty by means of a subpoena *duces tecum* under Rule 45 is coextensive with that of a motion for production from a party under Rule 34."); see also Wright & Miller, Federal Practice & Procedure § 2452 ("Rule 26 still governs the scope of discovery. This

applies, of course, to the discovery of documents, electronically stored information, and tangible things under Rule 34, which continues not to require a court order, a motion, or a showing of good cause."). FEI "may obtain discovery [from PETA] regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ... ." Fed. R. Civ. P. 26(b)(1). Its subpoena seeks just that: evidence which has already been ruled discoverable and relevant to the Litigation. It is PETA's burden to show that discovery should not be allowed, see Castle, 142 F.R.D. at 620, and its has failed to set forth any cognizable claim of privilege or any objection recognized under the Federal Rules for its non-compliance. Accordingly, PETA should be compelled to comply with FEI's subpoena immediately, and costs and fees should be awarded to FEI for the time and expense of filing this motion.

A.    **Videotapes and Photographs of FEI's Treatment of Elephants, Which Is the Central Focus of the Underlying Litigation (Request No. 6)**

Videotapes and photographs that evidence FEI's treatment of its elephants are highly relevant to the underlying Litigation; the Litigation is premised entirely upon plaintiffs' allegations that FEI is "taking" its elephants. PETA has taken video footage and photographs of FEI and the manner in which it treats its elephants. FEI requested from PETA *all* such evidence in its possession.[3] PETA admits that such video footage exists and that it is in its possession, custody and control, yet it has refused to comply with FEI's subpoena as overly burdensome.

PETA refuses to comply with the subpoena because it claims, without merit, that a search

---

[3]    See Request No. 6 ("All pictures and video or audio recordings (such as tapes, CDs or DVDs) (in complete and unedited form) that you or anyone else has taken of anything owned by Defendant (such as its boxcars or bullhooks), of any of Defendant's animals (such as its elephants), or of anyone who has ever worked for Defendant (such as Sacha Houcke, Alex Vargas, Carrie Coleman, Tom Rider, Glenn Ewell, Gerald Ramos, James Stechcon, Garrison Christianson, Kelly Tansy [a.k.a. Kelly Tansey], Archele Faye Hundley, Margaret Tom and/or Robert Tom, Jr.").

for and production of the requested materials would allegedly be too "burdensome."[4]  PETA has failed to explain – in any detail whatsoever – why such a search and production would be so "burdensome." In reality, the production of such material should present no burden at all: PETA took the videos and photos for a specific purpose, so it is inconceivable that these materials are not highly organized and that PETA cannot put its hands on them immediately by subject matter. PETA knows exactly what is on its videos and photos.  That is why the videotapes and photographs were taken in the first place and why PETA has failed to articulate why it would be "burdensome" for it to produce them.

The accessibility and relevance of PETA's videos and photographs is underscored by PETA's own admission that plaintiffs, in response to FEI's document requests, produced *some*, but not all, of PETA's videos in the Litigation. See Ex. 8, Hirschkop Letter to Gasper (12/14/07) at 3 ("I had seen a list of the videos that the plaintiff [sic] had produced and I understood they were videos of PeTA's that the plaintiffs had."). ***PETA has not denied that it provided those videos to plaintiffs.***[5]  This belies PETA's argument that it would be too "burdensome" to produce the rest of the videos and photographs requested by the subpoena.  If PETA cannot easily locate the videos, as it now claims, how could it have done so when it previously provided them to plaintiffs?  If it is not too "burdensome" for PETA to have provided the videos to plaintiffs, then it is not too "burdensome" for PETA to do the same for FEI.

Further, PETA's argument that it need not comply with FEI's request because FEI is already in possession of the handful of videos that plaintiffs produced is of no moment.  FEI has

---

[4]    PETA has incorrectly taken the position that FEI is seeking photographs and videotapes of "any" circus. PETA misconstrues FEI's request. Request No. 6 seeks only photographs and videotapes of: (1) anything owned by *FEI*; (2) *FEI's* animals; and (3) *FEI's* current and former employees. See supra note 3.

[5]    PETA maintains that it is not certain whether plaintiffs got the videos produced in the ESA Action directly from PETA or if they got them from "public r[e]sources." Ex. 8, Hirschkop Letter to Gasper (12/14/07) at 3.

no way to confirm that plaintiffs produced all of the videos that they received from PETA to FEI. This point is particularly significant because FEI must prove a negative – that its treatment of its elephants is not a "taking." Videos that do not show alleged elephant "abuse," therefore, are relevant to FEI's defense, which would include all footage of FEI's elephants. FEI has reasonable basis to believe that PETA has taken far more footage of FEI than what plaintiffs have actually produced in the Litigation, meaning that footage that is exculpatory or helpful to FEI is being ignored, weeded out or otherwise not produced by plaintiffs in the Litigation. Moreover, it is not for plaintiffs, or PETA, to decide unilaterally which videos and photographs are relevant to Litigation. FEI, and not plaintiffs or PETA, will determine what is relevant to *its* defense. The subpoena clearly calls for materials that are reasonably calculated to lead to the discovery of admissible evidence, and FEI will decide which, if any, such evidence it will ultimately use in its defense whether during summary judgment or at trial. PETA cannot have it both ways – providing materials to plaintiffs and at the same time denying FEI's request for the rest of it. PETA, therefore, should be ordered to produce *all* of the requested videos and photographs.

**B.** **Documents Concerning Former FEI Employees Who Are or Were Parties or Witnesses in the Underlying Litigation (Request Nos. 1-4)**

Plaintiffs in the Litigation are expected to rely heavily upon the testimony of former FEI employees. FEI's subpoena, accordingly, requests all documents relating to the former employees who plaintiffs have identified as parties or potential witnesses in the underlying litigation.[6] PETA, however, has yet to produce all documents relating to payments to former

---

[6]     See Request Nos. 1-4 "All documents that refer, reflect, or relate to" Archele Faye Hundley, Robert Tom., Jr., Margaret Tom, and/or any other current or former employee, consultant, agent, attorney, director, or other representative of Defendant (including but not limited to Tom Rider, Glenn Ewell, Gerald Ramos, James Stechcon, Garrison Christianson, and/or Kelly Tansy [a.k.a. Kelly Tansey]).

employees.[7]

All documents relating to payments to witnesses are relevant and must be produced. PETA's status as a third-party to the Litigation does not justify its refusal to comply with FEI's subpoena. The two judges presiding over the ESA Action specifically have held that two third-parties – WAP and HSUS – must, like the Organizational Plaintiffs, produce *all* payment documents.[8] See Ex. 3, Discovery Order at 8 (Judge Sullivan ordering WAP to produce *"all"* documents concerning payments to Rider); Ex. 4, HSUS Order at 2 (Magistrate Judge Facciola ordering HSUS to produce the same).

Despite these clear Court Orders on the very same issue, PETA produced, in the words of its counsel, a "table *showing* expenditures to, or on behalf of" witnesses in the ESA Action and only some, but not all, of the documents reflecting those payments. See Ex. 8, Hirschkop Letter to Gasper (12/14/07) at 2 (emphasis added). PETA unilaterally has interpreted the Orders of Judges Sullivan and Facciola to mean documents *"sufficient to show"* payments, when in fact those Orders require the production of *"all"* payment documents. For example, PETA's "table" reflects a payment by PETA for Rider's expenses, yet PETA produced no documents (emails, internal check requests, receipts, itineraries, etc.) regarding that payment. This is just one of many payments listed on PETA's "table" for which it has produced no documents. Where are

---

[7]   In addition to payment documents, PETA has failed to produce other categories of documents reflecting on the credibility of former FEI employees. For example, PETA has carefully stated that it searched for and produced "all correspondence by" former FEI employees and "all correspondence *by PETA* to" any of them. Thus, while PETA has produced correspondence by these individuals, regardless of the intended recipient, PETA has failed to produce correspondence to these individual that was created by someone other than PETA. PETA's production is inadequate and the Court should order its full compliance with FEI's subpoena.

[8]   Judges Sullivan and Facciola have held that FEI is entitled to discover documents concerning payments to or for witnesses by animal advocacy organizations, such as PETA. The Court permitted plaintiffs to redact the identity of donors who are not plaintiffs or counsel in the ESA Action, *but at the same time ordered that those redacted documents be produced.* The purpose of the redactions is to prevent the disclosure of an unknown donor's identity which could, according to plaintiffs, infringe on that donor's freedom of association. That purpose has no application here because PETA itself has publicly disclosed its association with plaintiffs, Rider and other witnesses. See Ex. 9, PETA Press Release Regarding Archele Hundley. Moreover, WAP disclosed PETA's identity as a donor to FEI. Ex. 12, WAP Deposit Ledger Showing Payment by PETA.

the documents for those payments? And what evidence is in those documents that PETA does not want produced? It is suspect that PETA expended "considerable effort," see Ex. 8, Hirschkop Letter to Gasper (12/14/07) at 2, compiling a "table" of payments when at the same time it claimed that it would be too "cumbersome" to produce the documents themselves because the documents are not "readily identifiable." Id. If PETA knows what payments it made, and purportedly created a table reflecting all of them, it is beyond credulity that it cannot locate the documents that support the calculations on the very same table, or that such a search would be unduly burdensome.

Putting the suspect nature of PETA's "table" aside, the real issue here is that PETA's actions are contrary to the rulings in the Litigation and PETA can offer no valid reason as to why it should be treated any differently than the other third parties in the Litigation. Two judges have ruled that the payment documents are relevant and must be produced. Third-party WAP, in fact, argued to Judge Sullivan that a "chart" of payments that it created was sufficient to comply with FEI's request for payment documents. *That argument was rejected.* Judge Sullivan ordered WAP to produce *all* payment documents except the few that WAP identified as technically responsive but onerous to produce and that had little value to FEI (i.e., phone bills and bank statements). See Ex. 3, Discovery Order at 8-9. PETA should be ordered to comply with the clear Orders of the Court and produce all documents responsive to Request Nos. 1-4: "all" payment documents means "all" payment documents.

Further, PETA should be ordered to produce all documents concerning former FEI employee Frank Hagan, who allegedly witnessed elephant "abuse" and has been deposed in this case. FEI's prior counsel subpoenaed PETA for all documents relating to Hagan after learning that PETA was making payments to him. Ex. 2, FEI Subpoena for Hagan Documents. PETA,

however, produced heavily redacted payment documents. FEI asked PETA to produce unredacted copies of those documents in view of the recent Court Orders and even sent PETA the redacted documents that it previously produced. As with the nine other individuals identified, PETA should be ordered to produce all documents it has concerning him, and it should also produce *unredacted* versions of all documents that it previously produced in redacted form. This is particularly imperative because Mr. Hagan is now deceased and, quite obviously, cannot be questioned now about the payments PETA made to him. Moreover, because Mr. Hagan is now deceased, plaintiffs may seek to admit his prior deposition testimony at trial in the Litigation, and FEI has a right to challenge Mr. Hagan's credibility, bias and motive based upon the payments made to him by PETA. Thus, it is even more imperative that PETA produce all documents concerning Hagan because he is no longer available for cross-examination. See Ex. 2, FEI Subpoena for Hagan Documents.

## C. Documents Concerning Plaintiffs and Their Counsel's Request for Funding Relating to this Lawsuit or Witnesses in This Case (Request No. 5)

The credibility of the Organizational Plaintiffs will also be at issue in the ESA Action. FEI's subpoena therefore sought documents concerning requests for funding that were made by plaintiffs, WAP, and/or plaintiffs' counsel that relate to the Litigation and/or FEI and its current or former employees.[9]

PETA has not produced any documents concerning requests for funding made by the plaintiffs for the Litigation, Tom Rider, or otherwise; nor has it even articulated a rationale for its refusal to comply with this portion of FEI's request. See Ex. 8, Hirschkop Letter to Gasper

---

[9]     See Request No. 5 ("All documents that refer, reflect, or relate to any solicitation of or request for donations, contributions, payments and/or any thing(s) of value concerning the Litigation, elephants in circuses, Defendant, and/or any current or former employee, consultant, agent, attorney, director, or other representative of Defendant (including but not limited to Tom Rider, Glenn Ewell, Gerald Ramos, James Stechcon, Garrison Christianson, Kelly Tansy [a.k.a. Kelly Tansey], Archele Faye Hundley, Margaret Tom and/or Robert Tom, Jr.), by: (a) Plaintiffs; (b) MGC; and (c) WAP.")

(12/14/07) at 3 ("You also requested information on contributions made to WAP and payments to the Meyer Glitzenstein law firm."). PETA's response to Request No. 5 was conspicuously limited to only WAP and MGC. See id. Even so, its response regarding MGC is evasive and inadequate. PETA has represented only that it has "not paid any *expenses*" to MGC for the lawsuit. See id. at 4 "([W]ith regard to the lawsuit, PeTA has not paid any expenses, either for costs or legal fees [to MGC]."). That hollow assertion fails to fully respond to FEI's question: whether MGC requested funding for this lawsuit, for Tom Rider, or for other potential witnesses. FEI is entitled to obtain documents to determine whether MGC solicited funding from PETA for Rider's "media campaign" or for the other potential plaintiffs and whether PETA was billed by MGC for Rider's "media campaign" as were the other Organizational Plaintiffs. Ex. 13, Example of Bills from MGC to Plaintiffs for Rider's "Media" Campaign. Documents relating to funding requests by plaintiffs, MGC and WAP are plainly relevant to the Litigation. Judge Sullivan has ruled that the Rider "funding" scheme is relevant to Rider's credibility and all documents regarding that scheme must be produced. PETA has not stated *any* reason for its refusal to comply with Request No. 5 and should be ordered to produce all responsive documents immediately.

**D.    Documents Provided to Plaintiffs in the Underlying Litigation (Request No. 7)**

Because FEI believes PETA has provided documents to plaintiffs that likely will be used as evidence in the Litigation, FEI's subpoena specifically requested the production of all documents given to and all communications with plaintiffs concerning FEI's care and treatment of its elephants.[10] PETA has failed to directly address FEI's request and has only vaguely referenced a mutual defense privilege as a basis for withholding documents responsive to this

---

[10]    See Request No. 7 ("All documents provided to, or communications with, plaintiffs or their counsel (including MGC) that refer, reflect or relate to Defendant's care or treatment of its elephants at issue in the Litigation.").

request. Nor has any privilege log been produced. See Ex. 8, Hirsckhop Letter to Gasper (12/14/07) at 3-4 ("We have had a working agreement with [MGC], both on behalf of myself and general counsel's office for PeTA, in the course of various legal efforts that the communication between counsel would remain privileged."). While a common interest or joint defense privilege may apply if PETA were adverse in a lawsuit involving FEI, that is not the case here. See In Re Grand Jury Subpoena, 415 F.3d 333, 341 (4th Cir. 2005) ("The joint defense privilege ... protects communications between *parties* who share a common interest in litigation. ... The purpose of the privilege is to allow persons with a common interest to communication with their respective attorneys and with each other to more effectively prosecute or defend their claims.") (citations and quotations omitted) (emphasis added). PETA is not "interested" in the ESA Action "in the sense that the outcome of the litigation would directly affect" it. Cf. Federal Election Comm'n v. The Christian Coalition, 178 F.R.D. 61, 73 (E.D. Va. 1998). Further, any documents exchanged or communications between PETA, plaintiffs and MGC certainly could not have involved a "common legal strategy" in the Litigation and there is "no evidence" that their communications and exchanges of information were "for the purpose of formulating a joint defense." Cf. In Re Grand Jury Subpoena, 415 F.3d at 341. Political and philosophical adversity do not satisfy the test for common interest privilege.

Moreover, the documents are relevant to FEI's defense of the Litigation. FEI is entitled to discovery of all evidence that would support or rebut plaintiffs' allegations of "abuse." To that end, FEI has subpoenaed PETA to discover the full set of documents, as that term is defined in the subpoena, relevant to the Litigation so that it can access such evidence directly without the filter and interference of plaintiffs in the Litigation. That is the purpose of Rule 45. It is neither unreasonable nor unexpected that FEI would seek discovery of not only every document PETA

has shared with plaintiffs in the Litigation, but also all documents that PETA has regarding the Litigation that the plaintiffs have declined to produce to FEI. PETA should be ordered to produce the documents, including communications, that FEI properly subpoenaed immediately.

### III.    LOCAL CIVIL RULE 7(E) CERTIFICATION

Pursuant to Local Civil Rule 7(E), FEI hereby certifies that it attempted in good faith to confer with PETA prior to filing this motion to compel. The parties exchanged written correspondence about the issues presented herein, see Exs. 5-10, and discussed this matter via telephone on December 5, 2007.

### IV.    CONCLUSION

The documents FEI has subpoenaed from PETA are relevant and must be produced. The judges presiding over the Litigation already have ordered the same with respect to two third-parties. FEI has conferred with PETA in good faith to no avail. PETA's only apparent interest is in attempting to escape production under the subpoena by engaging in protracted letter-writing and trickling out redacted documents, or even worse charts created in lieu of documents to stymie FEI's discovery. FEI already has had to depose trial witnesses without the benefit of a complete production by PETA, and PETA's interference with FEI's defense should not be permitted to continue. PETA has not articulated any claim of privilege and it has not offered any objection recognized under the Federal Rules to justify its non-compliance. For all the reasons stated above, FEI's motion to compel documents subpoenaed should be granted and FEI should be awarded its costs and fees for having to file this motion.

60059450

17.

This, the 28th day of January 2008.

Respectfully submitted,

Christopher A. Abel, Esquire (VSB #31821)
Dawn L. Serafine, Esquire (VSB #48762)
Attorneys for Plaintiff Feld Entertainment, Inc.
TROUTMAN SANDERS L.L.P.
150 W. Main Street
Norfolk, V.A. 23510
Telephone: (757) 687-7535
Fax: (757) 687-1535
E-mail: chris.abel@troutmansanders.com


Of Counsel:
John M. Simpson
Joseph T. Small, Jr.
Lisa Zeiler Joiner
Michelle C. Pardo
George A. Gasper

FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 662-0200
Facsimile: (202) 662-4643

*Counsel for Plaintiff Feld Entertainment, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify on this 28th day of January, 2008 that I caused the foregoing Memorandum to be personally served upon People for the Ethical Treatment of Animals in the manner as follows:

### **VIA FACSIMILE & HAND DELIVERY TO:**

Philip J. Hirschkop
Hirschkop & Associates, P.C.
908 King Street, Suite 200
Alexandria, V.A. 22314-3013
Facsimile: 703-548-3181

*Counsel for PETA*

### **VIA PROCESS SERVER ON:**

Registered Agent
People for the Ethical Treatment of Animals
501 Front Street
Norfolk, V.A. 23510

### **VIA FIRST CLASS MAIL**

Katherine A. Meyer, Esquire
Eric Robert Glitzenstein, Esquire
Howard M. Crystal, Esquire
Kimberly Denise Ockene, Esquire
Tanya Sanerib, Esquire
Meyer Glitzenstein & Crystal
1601 Connecticut Avenue, NW
Suite 700
Washington, DC 20009

*Counsel for Animal Protection Institute, American Society for the Prevention of Cruelty to Animals, Tom Rider, Animal Welfare Institute and Fund for Animals*

60059450                                                    19

_____

Christopher A. Abel, Esquire (VSB #31821)
Dawn L. Serafine, Esquire (VSB #48762)
Attorney for Plaintiff Feld Entertainment, Inc.
TROUTMAN SANDERS L.L.P
150 W. Main Street
Norfolk, V.A. 23510
Telephone: (757) 687-7535
Fax: (757) 687-1535
E-mail: chris.abel@troutmansanders.com


Of Counsel:
John M. Simpson
Joseph T. Small, Jr.
Lisa Zeiler Joiner
Michelle C. Pardo
George A. Gasper

FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 662-0200
Facsimile: (202) 662-4643

*Counsel for Plaintiff Feld Entertainment, Inc.*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

FELD ENTERTAINMENT, INC.     :
                             :
        Plaintiff,           :
                             :
    v.                       :     Case No.
                             :
PEOPLE FOR THE ETHICAL       :
TREATMENT OF ANIMALS,        :
                             :
        Defendant.           :
_____  :

## FELD ENTERTAINMENT'S MOTION TO COMPEL DOCUMENTS SUBPOENAED FROM PETA

## EXHIBIT LIST

| Number | Description |
|--------|-------------|
| 1. | FEI Subpoena to PETA (9/21/07) |
| 2. | FEI Subpoena for Hagan Documents (1/21/05) |
| 3. | Discovery Order (8/23/07) |
| 4. | HSUS Order & Mem. Op. (12/3/07) |
| 5. | Hirschkop Letter to Gasper (10/10/07) |
| 6. | Gasper Letter to Hirschkop (11/15/07) |
| 7. | Gasper Letter to Hirschkop (12/7/07) |
| 8. | Hirschkop Letter to Gasper (12/14/07) |
| 9. | Hirschkop Letter to Gasper (12/17/07) |
| 10. | Gasper Letter to Hirschkop (12/18/07) |
| 11. | PETA Press Release Regarding Archele Hundley |

12.                WAP Deposit Ledger Showing Payment by PETA

13.                Example of Bills from MGC to Plaintiffs for Rider's "Media" Campaign

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

FELD ENTERTAINMENT, INC.          :
                                  :
          Plaintiff,              :
                                  :
     v.                           :          Case No.
                                  :
PEOPLE FOR THE ETHICAL            :
TREATMENT OF ANIMALS,             :
                                  :
          Defendant.              :
_____ :

## FELD ENTERTAINMENT'S MOTION TO COMPEL DOCUMENTS SUBPOENAED FROM PETA

# EXHIBIT 1

AO88 (Rev. 12/06) Subpoena in a Civil Case

### Issued by the

## UNITED STATES DISTRICT COURT

| Eastern | | |
|---|---|---|
| | DISTRICT OF | Virginia |

ASPCA et al.

V.

Ringling Bros. et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 03-cv-2006 (D.D.C.)

TO: People for the Ethical Treatment of Animals
501 Front Street
Norfolk, VA 23510

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Appendix A

| PLACE    501 Front Street<br>Norfolk, VA 23510 | DATE AND TIME<br>10/12/2007 10:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *George Gasper* (Attorney for Defendant) | 9/20/2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
George Gasper, Fulbright & Jaworski L.L.P.
801 Pennsylvania Avenue, N.W., Washington, DC 20004  (202-662-4504)

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | September 21, 2007 | PETA<br>501 Front Street<br>Norfolk, VA 23510 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Jeff Kerr / General Counsel | Corporate |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Nancy G. Wood | Private Process Server |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on Sept. 21, 2007
DATE

SIGNATURE OF SERVER

Capitol Process Services, Inc.
ADDRESS OF SERVER        1827 18th Street, NW
Washington, DC 20009

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
    (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
    (2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
        (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
    (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
        (i) fails to allow reasonable time for compliance;
        (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
        (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
        (iv) subjects a person to undue burden.
    (B) If a subpoena
        (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
        (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
        (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
    (1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
        (B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
        (C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
        (D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
    (2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
        (B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## APPENDIX "A"

### DEFINITIONS

1.     "Animal Activist/Group" means any person or entity that advocates on behalf of animals and includes, but is not limited to, the American Society for the Prevention of Cruelty to Animals ("ASPCA") or any local or regional Society for the Prevention of Cruelty to Animals ("SPCA"), the Fund for Animals ("FFA"), the Animal Welfare Institute ("AWI"), the Performing Animal Welfare Society ("PAWS"), the Earth Liberation Front ("ELF"), the Animal Liberation Front ("ALF"), Animal Protection Institute ("API"), Captive Animals' Protection Society ("CAPS"), In Defense of Animals ("IDA"), Compassion over Killing, the Wildlife Advocacy Project ("WAP"), and any other local and/or regional grass roots group or local and/or regional animal activist organization.

2.     "Communication" means the transmittal or exchange of information of any kind in any form, including oral, written, or <u>electronic form</u>.

3.     "Complaint" refers to the Complaint filed by the ASPCA, AWI, FFA, and Tom Rider originally captioned as *American Society for the Prevention of Cruelty to Animals, et al. v. Ringling Bros. and Barnum & Bailey Circus et al.*, No. 03-2006 (EGS) (D.D.C.), dated September 23, 2003.

4.     "Defendant" means Feld Entertainment, Inc., any of its current or former employees, consultants, agents, attorneys, directors, other representatives, and all other persons acting under their control or on their behalf and includes the Ringling Bros. and Barnum and Bailey Circus as referred to in the Complaint.

5.     "Document" is defined to be synonymous and equal in scope to usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a), and shall include all Documents regardless of whether they exist in paper or electronic format.

A copy or duplicate of a document which has any non-conforming notes, marginal annotations, or other markings, and any preliminary version, draft, or revision of the foregoing is a separate document within the meaning of this term. Document(s) include, by way of example only, any memorandum, letter, envelope, correspondence, <u>electronic mail</u>, report, note, Post-It, message, telephone message, telephone log, diary, ledger, chart, journal, calendar, minutes, working paper, financial report, accounting report, account statement, check, work papers, teletype message, facsimile, directory, computer disk or tape, thumb or flash drive, or video or audio recording such as a tape, CD, or DVD. Document(s) also include the file, folder tabs, binders and labels appended to or containing any Documents.

6.     "Litigation" means this case, originally captioned as *American Society for the Prevention of Cruelty to Animals, et al. v. Ringling Bros. and Barnum & Bailey Circus, et al.*, No. 03-2006 (EGS) (D.D.C.), and/or its predecessor suit, captioned as *American Society for the Prevention of Cruelty to Animals, et al. v. Ringling Bros. and Barnum & Bailey Circus, et al.*, No. 00-1641 (EGS) (D.D.C.).

7.     "MGC" means the law firm of Meyer Glitzenstein & Crystal, formerly known as Meyer & Glitzenstein.

8.     "Person" means any natural persons, proprietorships, public or private corporations, partnerships, trusts, joint ventures, groups, associations, organizations, or other legal entities, including any representative of any such person or persons.

9.     "Plaintiffs" refers to the plaintiffs in the Litigation: ASPCA, FFA, AWI, API and Tom Rider.

10.    "Produce" or "Production" means to provide legible, complete, and exact copies of responsive documents to the undersigned counsel, or to make such documents available to the

31351300.1                          - 2 -

undersigned counsel for inspection and reproduction. Where the document is in the form of a computer program or computer data, production should include production of the responsive information in machine-readable format along with a description of the format and any other information necessary and sufficient to permit access to and an understanding of the information.

11.    The phrase "refer, reflect, or relate to" is used as a means of requesting information or documents that constitute, comprise, consist of, contain, evidence, set forth, propose, show, disclose, describe, discuss, mention, explain, summarize, reflect, deal with, identify, analyze, demonstrate, or in any way address, involve, regard, pertain to, touch upon, affect, or concern, in whole or in part, the subject matter of the relevant request for production.

12.    "Wildlife Advocacy Project" ("WAP") refers to an organization purporting to be a non-profit advocacy group that was founded by Katherine Meyer and Eric Glitzenstein of MGC. Any reference to WAP includes, but is not limited to, any persons that are partners, associates, employees, paralegals, interns, clerks, independent contractors or otherwise associated with MGC, including but not limited to Katherine Meyer, Eric Glitzenstein and Leslie Mink, that are acting on behalf of WAP.

13.    "You" and "Your" refer to the People for the Ethical Treatment of Animals ("PETA").

14.    To the extent not otherwise defined, all words shall have their usual and ordinary meaning as the context of the sentence would indicate.

## INSTRUCTIONS

1.     All documents shall be produced in the order they are kept in the ordinary course of business, and shall be produced in their original folders, binders, covers or containers, or facsimile thereof. Documents should be produced in a manner that ensures that the source of each document can be determined. Documents attached to each other should <u>not</u> be separated.

2.     These requests relate to all documents which are in Your possession, custody or control that are responsive to one or more of the document production requests contained herein.

3.     Unless otherwise noted, these requests shall apply to the period January 1, 1996 to the present.

4.     All uses of the conjunctive include the disjunctive and vise versa. Words in the singular include the plural and vice versa. Pronouns shall be construed as gender-neutral.

5.     Each document production request shall operate and be construed independently. Unless otherwise noted, no paragraph limits the scope of any other paragraph.

6.     For each document whose production is requested, produce the entire original document, along with all attachments, appendices, and exhibits, and any copies that are not identical to the original (whether because of notes made on, or attached to, such copy or otherwise) .

7.     You shall affix to every page of every document that You produce a Bates number or other unique identifier.

8.     Documents shall be produced in such fashion as to identify the department, branch, or office in whose possession they were located and, where applicable, the natural

person in whose possession they were found and the business address of each document's custodian(s).

9.      Electronically stored information should be produced in an intelligible format or together with a sufficient description of the system or program from which it was derived to permit rendering the material intelligible. As stated above, the term "documents" specifically includes, but is not limited to, e-mail communications and other electronic records.

10.     If any document responsive to any request is withheld, in whole or in part, from production under a claim of privilege (including, without limitation, attorney-client or work-product privilege) or otherwise, please provide a list identifying for <u>each</u> such withheld document the following:

a.      the type of document (e.g., memorandum, letter, report, chart, etc.), its general subject matter (without revealing the information as to which privilege is claimed), the date of the document, and the nature and length of any attachment or appendices;

b.      all author(s), addressee(s), distributee(s), and recipient(s);

c.      the date of the document; and

d.      the nature of the privilege or protection claimed, or any other basis on which the document has been withheld.

11.     If a document responsive to these requests was at any time in Your possession, custody or control but is no longer available for production, as to each document state the following information:

a.      whether the document is missing or lost;

b.      whether the document has been destroyed;

31351300.1                              - 5 -

c.    whether the document has been transferred or delivered to another person and, if so, at whose request;

d.    whether the document has been otherwise disposed of; and

e.    the circumstances surrounding the disposition of the document and the date of its disposition.

## REQUESTS FOR PRODUCTION

1.    All documents that refer, reflect, or relate to Archele Faye Hundley, including without limitation: (a) all communications with or about Ms. Hundley; (b) all documents reflecting Ms. Hundley's statements or allegations concerning the Litigation, elephants in circuses, Defendant, and/or any current or former employee, consultant, agent, attorney, director, or other representative of Defendant; (c) all documents that reflect anything of value, whether monetary or in kind, requested by or on behalf of, given to, directed to, or made at the direction of Ms. Hundley, including consulting fees and payments and/or reimbursements for services rendered or for goods obtained/received, that were given and/or made either directly to Ms. Hundley or indirectly to Ms. Hundley through another person and/or entity, including MGC and/or WAP; (d) all documents that relate to the purpose of any payments made to, directed to, or requested by Ms. Hundley; and (e) all documents that relate to any payments received, requested, or solicited by you or on your behalf for purposes of paying Ms. Hundley, funding any activities to be undertaken by Ms. Hundley, or funding any activities relating to Defendant or any other circus, including but not limited to, IRS Forms 1099.

2.    All documents that refer, reflect, or relate to Robert Tom, Jr., including without limitation: (a) all communications with or about Mr. Tom; (b) all documents reflecting Mr. Tom's statements or allegations concerning the Litigation, elephants in circuses, Defendant,

31351300.1                                  - 6 -

and/or any current or former employee, consultant, agent, attorney, director, or other representative of Defendant; (c) all documents that reflect anything of value, whether monetary or in kind, requested by or on behalf of, given to, directed to, or made at the direction of Mr. Tom, including consulting fees and payments and/or reimbursements for services rendered or for goods obtained/received, that were given and/or made either directly to Mr. Tom or indirectly to Mr. Tom through another person and/or entity, including MGC and/or WAP; (d) all documents that relate to the purpose of any payments made to, directed to, or requested by Mr. Tom; and (e) all documents that relate to any payments received, requested, or solicited by you or on your behalf for purposes of paying Mr. Tom, funding any activities to be undertaken by Mr. Tom, or funding any activities relating to Defendant or any other circus, including but not limited to, IRS Forms 1099.

3.    All documents that refer, reflect, or relate to Margaret Tom, including without limitation: (a) all communications with or about Mrs. Tom; (b) all documents reflecting Mrs. Tom's statements or allegations concerning the Litigation, elephants in circuses, Defendant, and/or any current or former employee, consultant, agent, attorney, director, or other representative of Defendant; (c) all documents that reflect anything of value, whether monetary or in kind, requested by or on behalf of, given to, directed to, or made at the direction of Mrs. Tom, including consulting fees and payments and/or reimbursements for services rendered or for goods obtained/received, that were given and/or made either directly to Mrs. Tom or indirectly to Mrs. Tom through another person and/or entity, including MGC and/or WAP; (d) all documents that relate to the purpose of any payments made to, directed to, or requested by Mrs. Tom; and (e) all documents that relate to any payments received, requested, or solicited by you or on your behalf for purposes of paying Mrs. Tom, funding any activities to be undertaken by Mrs. Tom, or

funding any activities relating to Defendant or any other circus, including but not limited to, IRS Forms 1099.

4.    All documents that refer, reflect, or relate to any other current or former employee, consultant, agent, attorney, director, or other representative of Defendant (including but not limited to Tom Rider, Glenn Ewell, Gerald Ramos, James Stechcon, Garrison Christianson, and/or Kelly Tansy [a.k.a. Kelly Tansey]), including without limitation: (a) all communications with or about such persons; (b) all documents reflecting any such person's statements or allegations concerning the Litigation, elephants in circuses, Defendant, and/or any other current or former employee, consultant, agent, attorney, director, or other representative of Defendant; (c) all documents that reflect anything of value, whether monetary or in kind, requested by or on behalf of, given to, directed to, or made at the direction of such persons, including consulting fees and payments and/or reimbursements for services rendered or for goods obtained/received, that were given and/or made either directly to such persons or indirectly to such persons through another person and/or entity, including MGC and/or WAP; (d) all documents that relate to the purpose of any payments made to, directed to, or requested by such persons; and (e) all documents that relate to any payments received, requested, or solicited by you or on your behalf for purposes of paying such persons, funding any activities to be undertaken by such persons or funding any activities relating to Defendant or any other circus, including but not limited to, IRS Forms 1099.

5.    All documents that refer, reflect, or relate to any solicitation of or request for donations, contributions, payments and/or any thing(s) of value concerning the Litigation, elephants in circuses, Defendant, and/or any current or former employee, consultant, agent, attorney, director, or other representative of Defendant (including but not limited to Tom Rider,

31351300.1                                    - 8 -

Glenn Ewell, Gerald Ramos, James Stechcon, Garrison Christianson, Kelly Tansy [a.k.a. Kelly Tansey], Archele Faye Hundley, Margaret Tom and/or Robert Tom, Jr.), by: (a) Plaintiffs; (b) MGC; and (c) WAP.

6.    All pictures and video or audio recordings (such as tapes, CDs or DVDs) (in complete and unedited form) that you or anyone else has taken of anything owned by Defendant (such as its boxcars or bullhooks), of any of Defendant's animals (such as its elephants), or of anyone who has ever worked for Defendant (such as Sacha Houcke, Alex Vargas, Carrie Coleman, Tom Rider, Glenn Ewell, Gerald Ramos, James Stechcon, Garrison Christianson, Kelly Tansy [a.k.a. Kelly Tansey], Archele Faye Hundley, Margaret Tom and/or Robert Tom, Jr.).

7.    All documents provided to, or communications with, plaintiffs or their counsel (including MGC) that refer, reflect or relate to Defendant's care or treatment of its elephants at issue in the Litigation.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

FELD ENTERTAINMENT, INC.          :
                                  :
            Plaintiff,            :
                                  :
    v.                            :          Case No.
                                  :
PEOPLE FOR THE ETHICAL            :
TREATMENT OF ANIMALS,             :
                                  :
            Defendant.            :
_____  :

FELD ENTERTAINMENT'S MOTION TO COMPEL DOCUMENTS SUBPOENAED
FROM PETA

# EXHIBIT 2

AO 88 (Rev. 1/94) Subpoena in a Civil Case - SDNY WEB 4/99

## Issued by the
## UNITED STATES DISTRICT COURT

| Eastern | DISTRICT OF | Virginia |

American Society for the Prevention of Cruelty to
Animals, et al.

### V.

Ringling Bros. and Barnum & Bailey Circus, et al.

## SUBPOENA IN A CIVIL CASE

CASE NUMBER: [1]    03-2006 (D.D.C.)

TO:  People for the Ethical Treatment of Animals
     501 Front St.
     Norfolk, VA 23510

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attached Schedule A

| PLACE | DATE AND TIME |
|---|---|
| Willcox & Savage, P.C. 222 Central Park Ave., Ste. 1500 Virginia Beach, VA   23462 (contact is Shirley Flint) | February 21, 2005, 10:00AM |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Maura A Dalton*        Attorney for Defendants | January 21, 2005 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Maura A. Dalton, Covington & Burling, 1201 Pennsylvania Avenue, N.W., Washington, D.C. 20004 (202) 662-6000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 1/94) Subpoena in a Civil Case - SDNY WEB 4/99

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | 1/25/05 | *501 Front Street Norfolk, VA 23510* |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| *Ms. Natalie Hawkins* | *Place of employment* |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| *Wanda Lee Beale* | *Bayside Process Server* |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ___1/25/05___
DATE

*Wanda Lee Beale*
SIGNATURE OF SERVER

*4824 Machen Ave*
ADDRESS OF SERVER

*VA Beach, VA 23455*

---

### Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that,

subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

# SCHEDULE A TO SUBPOENA

## I.     DEFINITIONS

1.     "Document" is defined to be synonymous and equal in scope to usage of this term in Federal Rule of Civil Procedure 34(a). A copy or duplicate of a document which has any non-conforming notes, marginal annotations, or other markings, and any preliminary version, draft, or revision of the foregoing is a separate document within the meaning of this term. Documents include, by way of example only, any memorandum, letter, envelope, correspondence, electronic mail, report, note, Post-It, message, telephone message, telephone log, diary, journal, calendar, minutes, working paper, financial report, accounting report, work papers, teletype message, facsimile, directory, computer disk or tape, or video or audio recording such as a tape, CD, or DVD.  Documents also include the file, folder tabs, and labels appended to or containing any documents.

2.     The phrase "refer, reflect, or relate to" is used as a means of requesting information or documents that constitute, comprise, consist of, contain, evidence, set forth, propose, show, disclose, describe, discuss, mention, explain, summarize, reflect, deal with, identify, analyze, demonstrate, or in any way address, involve, regard, pertain to, touch upon, affect, or concern, in whole or in part, the subject matter of the relevant request for production.

## II.     INSTRUCTIONS

1.     All documents shall be produced in the order they are kept in the ordinary course of business, and shall be produced in their original folders, binders, covers or containers, or facsimile thereof.

2.     These requests relate to all documents which are in your possession, custody or control.

3.     You shall produce the original of each document described below or if the original is not in your custody, then a copy thereof.

4.     If production of documents is withheld on the ground of privilege, please provide sufficiently particular information regarding the alleged privileged communication in a privilege log on the date on which the documents are produced.

5.     Whenever a document is not produced in full or is produced in redacted form, so indicate on the document and state with particularity the reason(s) it is not being produced in full and describe with particularity those portions of the document not being produced.

6.     If a document responsive to these requests was at any time in your possession, custody or control but is no longer available for production, as to each document state the following information:

      a.     whether the document is missing or lost;

      b.     whether the document has been destroyed;

      c.     whether the document has been transferred or delivered to another person and, if so, at whose request;

      d.     whether the document has been otherwise disposed of, and

      e.     the circumstances surrounding the disposition of the document and the date of its disposition.

## III.     REQUESTS FOR THE PRODUCTION OF DOCUMENTS

## REQUEST NO. 1:

All documents that refer, reflect, or relate to Frank E. Hagan.

2

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | | |
|---|---|---|
| FELD ENTERTAINMENT, INC. | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. |
| | : | |
| PEOPLE FOR THE ETHICAL | : | |
| TREATMENT OF ANIMALS, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## FELD ENTERTAINMENT'S MOTION TO COMPEL DOCUMENTS SUBPOENAED FROM PETA

# EXHIBIT 3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS, *et al.*,<br><br>     Plaintiffs,<br><br>     v.<br><br>RINGLING BROTHERS AND BARNUM & BAILEY CIRCUS, *et al.*,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civ. Action No. 03-2006 (EGS)<br>)<br>)<br>)<br>)<br>)<br>) |

<u>ORDER</u>

Pending before the Court are several discovery motions and motions for protective orders concerning communications between plaintiffs, Tom Rider, and other animal advocates, and funding of Tom Rider. Also pending before the Court is plaintiffs' motion to compel Rule 34 inspections. Upon consideration of the motions, responses and replies thereto, it is by the Court hereby

**ORDERED** that defendant's Motion to Compel Testimony of Plaintiff Tom Eugene Rider and for Costs and Fees [Dkt. No. 101] is **GRANTED IN PART AND DENIED IN PART** and Plaintiff Tom Rider's Motion for a Protective Order to Protect His Personal Privacy [Dkt. No. 106] is **GRANTED IN PART AND DENIED IN PART**. Defendant may not inquire into Rider's marital history or the substance of any prior proceedings involving marital or child custody disputes. The Court finds that Rider's marital history is

irrelevant to the claims and defenses presented in this case.
Defendant already has sufficient evidence of the existence of
these proceedings that it can use to challenge Rider's failure to
mention these proceedings in response to interrogatories.  As to
Rider's arrest record, misdemeanor convictions, and military
record, the Court finds that such information is "reasonably
calculated to lead to the discovery of admissible evidence"
regarding Rider's credibility and is therefore relevant.  *See*
Fed. R. Civ. P. 26(b)(1).  Because of the personal nature of this
information and in order to prevent defendant from using this
information solely to embarrass or oppress Rider in advance of
trial, however, such information shall be subject to a protective
order with the terms discussed below.

At a mutually agreeable time, Rider shall provide deposition
testimony to defendant concerning his military background, any
arrests for felony or misdemeanor crimes, and any felony or
misdemeanor convictions.  All such testimony shall be kept
confidential by defendant and not used for any purpose other than
this litigation without prior authorization from the Court.  Such
information shall not be disclosed in any way other than to
defendant, its counsel, and this Court under seal.

Neither party shall be awarded any costs or fees in
connection with these motions.

2

It is **FURTHER ORDERED** that defendant's Motion to Compel

Discovery from Plaintiff Tom Rider and For Sanctions, Including

Dismissal [Dkt. No. 126] is **GRANTED IN PART AND DENIED IN PART**.

To the extent not duplicative of what has already been produced

by Tom Rider or other plaintiffs, Rider shall produce to FEI by

no later than **September 24, 2007**:

- All responsive documents (with the exceptions discussed
  below) within his possession, custody, or control,
  including but not limited to, documents in the files of
  his attorneys;

- All responsive documents and information concerning his
  income and payments from other animal advocates and
  animal advocacy organizations, except that Rider may
  redact the names of individual donors or organizations
  unless they are parties to this litigation, attorneys
  for any of the parties, or employees or officers of any
  of the plaintiff organizations or WAP. Rider may also
  redact out any personal identifying information for
  himself beyond his name including, but not limited to,
  his social security number or home address;

- All responsive documents and information concerning
  relevant, non-privileged communications regarding the
  subject matter of this lawsuit between Rider, WAP,
  other plaintiffs, and plaintiffs' counsel, except that
  Rider need not produce documents or further information
  related to any media or legislative strategies or
  communications or any documents or information about
  litigation strategy or communications that are properly
  protected by the attorney-client or work product
  privileges, including under the "common interest
  doctrine" as defined by this Circuit;

- A sworn declaration or affidavit identifying, to the
  extent Rider can recall, any responsive documents that
  were once in Rider's possession (since July 11, 2000)
  but have been discarded, destroyed, or given to other
  persons or otherwise not produced, together with a
  description of each such document and an explanation of
  why it was discarded, destroyed, spoiled or otherwise
  disposed of;

3

- A precise identification, by bates number, of any documents produced by Rider or his co-plaintiffs that are incorporated by reference into his response to interrogatories or document requests;

- A privilege log that complies with the law of this Circuit, is consistent with the privilege log provided by defendant, and provides a description of the authors, addressees, and contents sufficient to adequately assess the claim of privilege. The privilege log need not include information determined by the Court to be irrelevant or over burdensome to produce;

- Complete and truthful answers to interrogatories 2, 4, 7, and 24 with the exception of any information the Court has already found to be irrelevant or otherwise not subject to discovery as outlined above.

The Court emphasizes that Rider need not produce any documents or information already produced by him or other plaintiffs. If documents have already been provided by him or other plaintiffs, however, Rider must identify (by bates number) which documents have already been produced that pertain to him. The Court finds that any documents or communications between Rider and others about media or legislative strategies is irrelevant to this litigation and would be over burdensome to produce. The Court finds that Rider's funding for his public education and litigation efforts related to defendants is relevant. However, the Court finds that the source of any such funding is irrelevant unless it is a party, any attorney for any of the parties, or any officer or employee of the plaintiff organizations or WAP. The Court does not find dismissal to be an

4

appropriate sanction in this case.  Neither party shall be awarded any costs or fees in connection with this motion.

It is **FURTHER ORDERED** that Plaintiff Tom Rider's Motion for a Protective Order with Respect to Certain Financial Information [Dkt. No. 141] is **DENIED**.  As Rider is a plaintiff in this case and the financing of his public campaign regarding the treatment of elephants is relevant to his credibility in this case, Rider's relevant financial information shall be produced without a protective order but with appropriate redactions approved by this Order.

It is **FURTHER ORDERED** that defendant's Motion to Compel Discovery from the Organizational Plaintiffs and API [Dkt. No. 149] is **GRANTED IN PART AND DENIED IN PART**.  As the Court has already indicated with reference to the motion to compel discovery from Tom Rider, any documents, communications, or information concerning the media and legislative strategies of the plaintiffs are irrelevant to the claims and defenses in this case and would be over burdensome to produce.  The Court finds that the supplemental responses to interrogatories provided by the ASPCA cures any deficiencies in not referring to bates numbers for documents incorporated by reference.  To the extent ASPCA or any other plaintiffs have not provided bates numbers when referencing documents incorporated by reference, they shall

provide supplemental responses to defendant's interrogatories by no later than **September 24, 2007**.

The Court finds that any inspections of FEI's circus performances or facilities conducted by ASPCA are highly relevant to this case. To the extent any such information exists as to inspections for which no report was generated, ASPCA shall supplement its response to defendant's interrogatories by **September 24, 2007** to provide the name of any inspectors, date of any inspections, details of how inspections were conducted, locations of such inspections, and results. To the extent no further information is available about inspections for which there are no reports, ASPCA shall provide sworn declarations or affidavits explaining why no such evidence exists.

To the extent any "confidential or proprietary" documents or information exist that are responsive to defendant's discovery requests, plaintiffs shall include an adequate description of such documents or information on their privilege log in compliance with the case law in this Circuit by no later than **September 24, 2007**.

In addition to the documents and information referenced above, plaintiffs shall produce all of the following to FEI by no later than **September 24, 2007**:

- All responsive documents and information concerning payments to Tom Rider, regardless of whether such payments were made directly to him or indirectly through other means such as WAP, except that plaintiffs

6

> may redact the names of individual donors or
> organizations unless they are parties to this
> litigation, attorneys for any of the parties, or
> employees or officers of any of the plaintiff
> organizations or WAP;

- All responsive documents and information concerning
  relevant, non-privileged communications regarding the
  subject matter of this lawsuit between plaintiffs,
  Rider, WAP, and plaintiffs' counsel, except that
  plaintiffs need not produce documents or further
  information related to any media or legislative
  strategies or communications or any documents or
  information about litigation strategy or communications
  that are properly protected by the attorney-client or
  work product privileges, including under the "common
  interest doctrine" as defined by this Circuit;

- A sworn declaration or affidavit identifying, to the
  extent plaintiffs can recall, any responsive documents
  that were once in plaintiffs' possession but have been
  discarded, destroyed, or given to other persons or
  otherwise not produced, together with a description of
  each such document and an explanation of why it was
  discarded, destroyed, spoilated or otherwise disposed
  of;

- A privilege log that complies with the case law of this
  Circuit, is consistent with the privilege log provided
  by defendant, and provides a description of the
  authors, addressees, and contents sufficient to
  adequately assess the claim of privilege. The
  privilege log need not include information determined
  by the Court to be irrelevant or over burdensome to
  produce.

As to defendant's request for all responsive documents and

information concerning communications with animal advocates and

animal advocacy organizations, the Court finds this request over

broad, over burdensome to produce and irrelevant to the claims

and defenses in this lawsuit.

It is **FURTHER ORDERED** that defendant's Motion to Compel
Documents Subpoenaed from the Wildlife Advocacy Project ("WAP")
[Dkt. No. 85] is **GRANTED IN PART AND DENIED IN PART**.  The Court
finds that defendant's subpoena is over broad and over burdensome
in its requests and seeks a lot of information that is completely
irrelevant to the "taking" claim in this lawsuit, the credibility
of Tom Rider, or any claimed defenses.  Defendant, however, is
entitled to information concerning the payments made to Tom Rider
and the role of the organizational plaintiffs and WAP in those
payments.

By no later than **September 24, 2007**, WAP shall provide any
non-privileged documents or information that it has not already
provided, with the exceptions discussed below, related to
payments or donations for or to and expenses of Tom Rider in
connection with this litigation or his public education efforts
related to the Circus's treatment of elephants in compliance with
Request No. 2 of the subpoena.  To the extent there are no such
documents that have not already been produced, WAP shall provide
a sworn declaration or affidavit to that effect.

In producing such information, WAP may redact the names and
identifying information of individual donors or organizations who
are not parties to this litigation, attorneys for any of the
parties or employees or officers of any of the plaintiff
organizations or WAP.  WAP shall also provide a sworn declaration

8

or affidavit indicating that any donors are not plaintiffs'
counsel, employees or officers of the organizational plaintiffs
or employees or officers of WAP, to the extent that is true.  The
Court finds that any further information about individual or
organizational donors would be irrelevant and would tread on core
First Amendment rights.  *See Wyoming v. U.S. Dep't of
Agriculture*, 208 F.R.D. 449, 454 (D.D.C. 2002).

        As to defendant's request for all communications between
plaintiffs, WAP, animal rights advocates, and animal rights
organizations generally, the Court finds that this request is
over broad and the information is irrelevant to the claims and
defenses in this litigation.  The Court also finds that
information about media and legislative contacts and strategies
specifically is not discoverable for the same reasons.

        The Court further finds that defendant's request for
additional financial records is over burdensome and duplicative.
WAP need not produce monthly financial reports, bank statements
or phone bills provided that WAP submits a sworn declaration or
affidavit indicating that the financial information underlying
the transaction detail reports exists and that the transaction
detail reports, cancelled checks, and 1099s already provided
detail every financial transaction made by WAP concerning
elephants, defendant, or Tom Rider.  WAP's other financial
information is irrelevant.

It is **FURTHER ORDERED** that Plaintiffs' Motion to Compel

Defendants to Comply with Plaintiffs' Rule 34 Request for

Inspections [Dkt. No. 99] is **GRANTED**.  The Court finds that such

inspections are highly relevant to the question of whether or not

defendant's treatment of its elephants constitutes a "taking"

under the Endangered Species Act.  The Court does not find that

the request for inspections qualifies as a "document request[],

interrogator[y], and/or request[] for admission" subject to the a

March 30, 2004 deadline pursuant to the parties December 5, 2003

Stipulated Pre-Trial Schedule.  Moreover, the Court finds that

plaintiffs' request for inspections at this time is reasonable

given the extraordinary delay in their receiving veterinary

records from defendants.  Finally, as defendant points out in its

reply in support of its motion for summary judgment, evidence on

how FEI's elephants are *currently* treated is "material in any

trial for the injunctive relief that plaintiffs seek."  Reply in

Support of Def.'s Mot. for Summ. J. at 2.  Consistent with the

Court's ruling on the motion for summary judgment, however,

plaintiffs are only entitled to inspect those elephants which are

not subject to a valid captive-bred wildlife permit.

Because defendants have raised valid concerns regarding

security for inspectors and animal safety and because there are

numerous issues that need to be resolved regarding the dates and

parameters of the inspections, as well as the individuals who

10

will be involved, the Court refers this case to Magistrate Judge

John Facciola pursuant to LCvR 72.2 for purposes of overseeing

the inspections, developing a framework under which such

inspections will be conducted, and resolving any disputes

concerning such inspections.

It is **FURTHER ORDERED** that fact and expert discovery in this

case shall close on **December 31, 2007.** This Court will view

requests for extension of this discovery deadline with disfavor

given that the parties have already been engaged in discovery for

more than three and a half years.

It is **FURTHER ORDERED** that this case is referred to

Magistrate Judge John Facciola for purposes of overseeing the

remainder of discovery pursuant to LCvR 72.2. Any further

discovery disputes should be presented to Magistrate Judge

Facciola.

It is **FURTHER ORDERED** that Plaintiffs' Motion Under Rule 11

Against Defendants and Their Counsel [Dkt. No. 163] and Defendant

Motion for Reimbursement of Excess Costs, Expenses and Attorneys'

Fees [Dkt. No. 171] are **DENIED.** As discovery on issues related

to payments of Tom Rider has not been completed, the Court cannot

assess the validity of accusations by either side on issues

related to these payments at this time. Moreover, all parties

have needlessly prolonged and multiplied the proceedings in this

case because of their constant filing of excessively large

11

motions, inability to resolve any disputes without assistance of the Court, and overall poisoned relationship and hostile attitude toward each other.  The Court reminds these parties that the purpose of this litigation is to determine whether or not defendant's treatment of elephants constitutes a "taking" under the ESA.  The remainder of discovery and briefing in this litigation should relate to the claims and defenses in this lawsuit rather than needlessly diverting the Court's attention away from the central issues in this case and the numerous other cases on its docket.

It is **FURTHER ORDERED** that the parties shall file a joint status report and recommendation for further proceedings by no later than **January 15, 2008**.  The Court strongly encourages the parties to agree on their proposals for how to proceed with this case and bring it to a resolution after discovery closes.

SO ORDERED.


Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **August 23, 2007**

12

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

FELD ENTERTAINMENT, INC.           :
                                   :
            Plaintiff,             :
                                   :
      v.                           :      Case No.
                                   :
PEOPLE FOR THE ETHICAL             :
TREATMENT OF ANIMALS,              :
                                   :
            Defendant.             :
_____:

**FELD ENTERTAINMENT'S MOTION TO COMPEL DOCUMENTS SUBPOENAED
FROM PETA**

# EXHIBIT 4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS *et al.*,<br><br>      **Plaintiffs,**<br><br>      v.<br><br>RINGLING BROTHERS AND BARNUM & BAILEY CIRCUS *et al.*,<br><br>      **Defendants.** | Civil Action No. 03-2006 (EGS/JMF) |

### ORDER

In accordance with the accompanying Memorandum Opinion, it is, hereby,

**ORDERED** that defendant Feld Entertainment, Inc.'s <u>Motion to Compel the Production of Documents Subpoenaed from the Humane Society of the United States</u> [#192] is **GRANTED** in part and **DENIED** in part as follows:

(1)    The HSUS will answer Request for Production 1(a).

(2)    The HSUS will produce all documents in its possession, control or custody that were created by any other party to this litigation in which that party discusses this litigation or any aspect of it. The HSUS is not obliged to produce communications protected by the attorney-client or work-product privileges. If it claims that any documents are so privileged, it must file a privilege log in compliance with Rule 26(b)(5) of the Federal Rules of Civil Procedure.

(3)    The HSUS will produce documents that pertain to Tom Rider's "funding for his public education and litigation efforts" provided the funding came from "a party, any attorney

for any of the parties, or any officer or employee of the plaintiff organizations or WAP" or that pertain to payments made to Rider by any such person, with the understanding that the names of donors will be redacted if the donor is not "a party, any attorney for any of the parties, or any officer or employee of the plaintiff organizations or WAP."

(4)    The HSUS will produce all documents that "refer, reflect or relate" to Tom Rider, including all communications with or to him, and documents that pertain to payments made to him.

(5)    The HSUS will produce any documents that fall within Judge Sullivan's August 23, 2007, order that pertain to WAP [EGS Order at 8] that are in HSUS's possession, custody or control.

All production must occur within 10 days of the date of this Order.

**SO ORDERED.**


_____/S/_____
JOHN M. FACCIOLA
Dated: December 3, 2007          UNITED STATES MAGISTRATE JUDGE

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN SOCIETY FOR THE
PREVENTION OF CRUELTY TO
ANIMALS *et al.*,

           **Plaintiffs,**

                v.

RINGLING BROTHERS AND BARNUM &
BAILEY CIRCUS *et al.*,

           **Defendants.**

Civil Action No. 03-2006 (EGS/JMF)

## MEMORANDUM OPINION

There is before me for resolution of defendant Feld Entertainment, Inc.'s ("FEI") <u>Motion to Compel the Production of Documents Subpoenaed from the Humane Society of the United States</u> ("Defs. Mot.").

There are seven demands within the subpoena that are in controversy among the parties. The first relates to documents that would disclose the nature of the relationship between the Humane Society ("HSUS") and the Fund for Animals ("FFA").

I.    <u>HSUS and FFA</u>

On November 22, 2004, the HSUS announced that a merger between itself and the FFA would occur on January 1, 2005. The press release announced that the two groups had joined forces and planned to operate their advocacy programs "under the banner of the HSUS." Defs. Mot. at Exhibit 2; The Humane Society of the United States, http:

//hsus.org/press_and_publications/press_releases/the_humane_society_of_the_united_states_and
_the_fund_for_animals_join_forces.html.

The FFA is a plaintiff in this action but the HSUS is not. Therefore, defendant FEI
served it with a subpoena *duces tecum* demanding the production of documents that (1)
memorialize the "transaction and/or merger between" the HSUS and the FFA; (2) show the
relationship between their advocacy programs, the ones in the press release referenced above;
and (3) show the relationship between the two entities' litigation dockets and legal departments.
Defs. Mot., Exhibit 1, ¶1 at 6.

The HSUS insists that it has voluntarily provided documents that clearly establish that
FFA "still survives as a viable entity." The Humane Society of the United States' Response to
Feld Entertainment, Inc.'s Motion to Compel the Production of Documents Subpoenaed from the
Humane Society from [sic] the United States ("HSUS's Response") at 6. Since there has been
no "merger" in fact between the two entities and FEI has received documents showing that this is
so, the HSUS resists the subpoena.

FEI answers that it must have the documents it seeks so that the "Court can determine
whether a de facto merger has occurred and whether HSUS should be added to this lawsuit."
Reply in Support of Defendant's Motion to Compel the Production of Documents Subpoenaed
From the Humane Society of the United States at 6-7.

While HSUS has represented there has been no merger, their own press release used that
very word. I believe that it is therefore appropriate that it produce the documents that are the
best and unequivocal evidence of what occurred between the FFA and the HSUS that led to the
announcement of their merger in the press release. I will therefore compel the HSUS to answer
Request for Production 1(a).

This request also demands documents that show the relationship between the two entities'
advocacy programs (as that term is used in the press release), their litigation dockets, and their
legal departments. I do not believe that this information is likely to reveal information that bears
on whether the legal relationship between the two entities is such that they have or should be
deemed to have merged. I therefore will not compel any additional information as to Requests
for Production.

II.     Documents about the Litigation

FEI also seeks "all documents that refer, reflect or relate to the Litigation." Defs. Mot.,
Exhibit 1, ¶ 2 at 6. Documents within the possession of a party to this litigation that pertain to
the litigation might be admissible at trial as admissions under Rule 801 of the Federal Rules of
Evidence, but the HSUS is not a party to this litigation and its statements about it are hearsay and
irrelevant. I will therefore only order the HSUS to produce documents in its possession, control
or custody that were created by any other party to this litigation in which that party discusses this
litigation or any aspect of it.

I will superimpose on this obligation a limitation imposed by Judge Sullivan in a previous
order regarding a similar disclosure.[1] The HSUS is not obliged to produce communications
protected by the attorney-client or work-product privileges. If it claims that any documents are
so privileged, it must file a privilege log in compliance with Rule 26(b)(5) of the Federal Rules
of Civil Procedure.

III.    Documents that Relate to Fund Raising Activities

FEI wants documents pertaining to a specific benefit (the "2005 Benefit For the Asian
Elephants") and "any other fund-raising and/or benefits referring to or relating to the Litigation,

---

[1] American Society for the Prevention of Cruelty to Animals v. Feld Entertainment, Civ. Action No. 03-2006, Order of August 23, 2007 ("EGS Order") at 3.

3

the presentation of elephants in circuses, Tom Rider, Defendant and/or WAP."[2] Defs. Mot.,

Exhibit 1, ¶ 3 at 7. Similarly, they seek all documents that reflect solicitations of donations for

this litigation, "the presentation of elephants in circuses, Tom Rider, Defendant, and/or WAP, by

Plaintiffs, MGC and/or WAP." Id., ¶ 8 at 10.

  Judge Sullivan has concluded that the only information that should be compelled

pertaining to fund raising are documents that pertain to Tom Rider's "funding for his public

education and litigation efforts," if the funding came from "a party, any attorney for any of the

parties, or any officer or employee of the plaintiff organizations or WAP" or to donations that

pertain to payments made to Rider by any such person. Judge Sullivan further indicated that the

names of the donors would be redacted if the donor is not "a party, any attorney for any of the

parties, or any officer or employee of the plaintiff organizations or WAP." EGS Order at 4, 6, 8.

I will therefore order the HSUS to do the same exact thing, i.e., produce documents that pertain

to Tom Rider's "funding for his public education and litigation efforts" provided the funding

came from "a party, any attorney for any of the parties, or any officer or employee of the plaintiff

organizations or WAP" or that pertain to payments made to Rider by any such person. HUSU

will also provide documents that pertain to donations relating to payments made to Rider by any

such person. The names of donors must be redacted if the donor is not "a party, any attorney for

any of the parties, or any officer or employee of the plaintiff organizations or WAP."

  In all other respects, FEI's motion to compel will be denied.

IV. <u>Documents that Relate to Media and Public Relations Campaigns</u>

  FEI seeks documents pertaining to media or public relations campaigns regarding the

litigation, elephants in circuses, Tom Rider, FEI itself, and WAP. Judge Sullivan has concluded,

---

[2] "WAP" refers to the Wildlife Advocacy Project.

4

however, that these topics are irrelevant. EGS Order at 3-5 (information pertaining to media and

legislative strategies deemed irrelevant).

V.    Tom Rider

FEI seeks all documents that "refer, reflect or relate" to Tom Rider, including all

communications with or to him, and documents that pertain to payments made to him. Like

Judge Sullivan, I find that Rider is a central player in this litigation and I will compel what FEI

seeks.

VI.    Former Employees

FEI seeks documents that pertain to any "other [other than Rider] current or former

employee." Defs. Mot., Exhibit 1, ¶ 6. I know of no reason why this information would be

relevant.

VII.    Wildlife Advocacy Project

FEI seeks documents that relate to this entity, said by FEI to be "an organization

purporting to be a non-profit advocacy group that was founded by Katherine Meyer and Eric

Glitzenstein of MGC [the law firm of Meyer Glitzenstein & Crystal]." Defs. Mot., Exhibit 1, ¶ 7

at 9 & "Definitions" ¶ 8 at 2.

In his order of August 23, 2007, Judge Sullivan ordered WAP to produce non-privileged

documents related to "payments or donations for or to and expenses of Tom Rider in connection

with this litigation or his public relations efforts in connection with this litigation or his public

education efforts related to the Circus's treatment of elephants." EGS Order at 8. Judge Sullivan

permitted WAP to redact "names and identifying information of individual donors or

organizations who are not parties to this litigation, attorneys for any of the parties or employees

of officers of any of the plaintiff organizations or WAP." Id. at 8. Finally, Judge Sullivan

permitted WAP to provide a sworn declaration "[t]o the extent that there are no such documents that have not already been produced." Id.

Consistent with that obligation, Glitzenstein, the President of WAP, submitted a declaration in which he described the documents he made available to the defendant[3] pursuant to the subpoenas that had been served upon WAP and attested that he located no additional documents responsive to Judge Sullivan's order. Notice of Filing, dated September 24, 2007; Declaration of Glitzenstein.

FEI's motion to compel was filed on September 21, 2007, three days before the Notice of Filing, and it would appear that WAP's production of documents and Glitzenstein's declaration now render this request moot. I suppose, however, that there is a theoretical possibility that HSUS may have a document that falls within Judge Sullivan's order but that WAP did not keep a copy. I will therefore order the HSUS to produce any documents pertaining to WAP that fall within Judge Sullivan's August 23, 2007, order that are in its possession, custody or control.

An Order accompanies this Memorandum Opinion.


                                          _____/S/_____
                                          JOHN M. FACCIOLA
Dated: December 3, 2007                   UNITED STATES MAGISTRATE JUDGE


---

[3] It is unclear to me to which defendant Glitzenstein is referring.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | | |
|---|---|---|
| FELD ENTERTAINMENT, INC. | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. |
| | : | |
| PEOPLE FOR THE ETHICAL | : | |
| TREATMENT OF ANIMALS, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**FELD ENTERTAINMENT'S MOTION TO COMPEL DOCUMENTS SUBPOENAED FROM PETA**

# EXHIBIT 5

OCT-10-2007  15:29     LAW OFFICES                     703 548 3181    P.01/07

LAW OFFICES
### HIRSCHKOP & ASSOCIATES, P.C.
908 King Street, Suite 200
ALEXANDRIA, VIRGINIA  22314
———
(703) 836-6595 and (703) 836-5555
FAX (703) 548-3181

PHILIP J. HIRSCHKOP
VA, D.C & NY BARS

# *FACSIMILE COVER SHEET*

To:        George Gasper (202-662-4643)
           Katherine Meyer (202-588-5049)
           Jeffrey S. Kerr
From:      Philip J. Hirschkop
Date:      October 10, 2007

This facsimile is 6 pages, not including this cover sheet.

This facsimile contains privileged and confidential information intended only for the use of the person named above.
If you are not the intended recipient or an agent or employee responsible for delivering this document to the intended recipient,
you are notified that any dissemination or copying of this document or the information contained therein is strictly prohibited.
If you have received this facsimile in error, please notify us immediately by telephone at (703) 836-6595 and
return the original facsimile to us by mail at the above Virginia address.

LAW OFFICES
## HIRSCHKOP & ASSOCIATES, P.C.
908 KING STREET, SUITE 200
ALEXANDRIA, VIRGINIA  22314-3013

PHILIP J. HIRSCHKOP
VA, D.C. & NY BARS

WASHINGTON OFFICE
1250 N STREET, N.W. SUITE 300
WASHINGTON, D.C.  20005-1622

(703) 836-6595 & (703) 836-5555
FAX (703) 548-3181

October 10, 2007

_VIA FACSIMILE & FIRST CLASS MAIL_
George Gasper, Esquire
FULBRIGHT & JAWORSKI
801 Pennsylvania Avenue, N.W.
Washington, D.C.  20004

> RE:    _ASPCA v. Ringling Bros. et al._
> _____ Subpoena _duces tecum_ to PeTA

Dear Mr. Gasper:

In accordance with our discussion of September 28, 2007, I hereby file with you the following objections, pursuant to Rule 45 of the Federal Rules of Civil Procedure, on behalf of People for the Ethical Treatment of Animals (PeTA). As stated in our September 28th conversation, I will be happy to discuss these with you.

**General Objections Applicable to All Seven Requests for Production Included in**
**September 20, 2007 Subpoena _Duces Tecum_ Served on PeTA Under Federal Civil Rule 45**

### A. Case History, Prior Orders

Plaintiffs American Society for the Prevention of Cruelty to Animals, Animal Welfare Institute, The Fund for Animals, Tom Rider, and Animal Protection Institute filed the above-referenced lawsuit under the Endangered Species Act ("ESA"), 16 U.S.C. §1531 _et seq._, against Ringling Brothers and Barnum & Bailey Circus and Feld Entertainment, Inc. (collectively referred to as "Ringling") for "taking" Asian elephants in violation of the ESA. _See_ Memorandum Opinion entered in same action, August 23, 2007, Docket No. 173, p. 1. Specifically, Plaintiffs allege that Ringling routinely beats elephants, chains them for long periods of time, hits them with sharp bull hooks, breaks baby elephants with force to make them submissive, and forcibly removes baby elephants from their mothers before they are weaned, thus "taking" them in violation of law. _Id._ at p. 2.

The central issue of whether Ringling has taken elephants in violation of the ESA was first brought to the court's attention seven years ago in a companion case, ASPCA v. Ringling Bros. and Barnum and Bailey Circus, U.S.D.C., Dist. of Columbia, Case No. 00-1641. _See_

George Gasper, Esquire
Page 2
October 10, 2007

Memorandum Opinion, August 23, 2007, Docket No. 176, p. 1. This action regarding the same issue was filed in 2003. Fact discovery in this case was originally scheduled to close years ago, on December 20, 2004, with expert discovery to close on March 4, 2005. *Id.* at p. 5. However, apparently as a result of Ringling's failure to timely produce documents, the court allowed discovery to continue. *Id.* Discovery now has been going on for more than three and a half years, with the new date for closure less than three months away—December 31, 2007. *Id.* at p. 4; Memorandum Opinion, August 23, 2007, Docket No. 178, p. 11. The court expects only "very limited discovery" at this stage, and "only as a result of the parties' failure to be able to resolve discovery disputes without intervention of the Court." Memorandum Opinion, August 23, 2007, Docket No. 176, p. 4.

Ringling has already filed a motion for summary judgment in this action, which has been decided. *Id.* at p. 4. The issues in the case have been narrowed. *Id.* The focus of the only remaining claim in this case is whether or not Ringling's treatment of certain of its elephants constitutes a taking within the meaning of the ESA. *Id.* at p. 5. The litigation continues only on this "very narrow issue." *Id.* at p. 8. Ringling's attempts at this late stage to add defenses, issues, and parties have been denied. *Id.* at pp. 9, 11. The court's intolerance for attempts to expand the issues, add parties, or engage in new, far-reaching discovery has been made abundantly clear: "The Court reminds these parties that the purpose of this litigation is to determine whether or not [Ringling's] treatment of elephants constitutes a 'taking' under the ESA. The remainder of discovery and briefing in this litigation should relate to the claims and defenses in this lawsuit rather than needlessly diverting the Court's attention away from the central issues in this case and the numerous other cases on its docket." Memorandum Opinion, August 23, 2007, Docket No. 178, p. 12. The court will view requests for the extension of discovery with disfavor, given that the parties have already been engaged in discovery for more than three and a half years. *Id.* at p. 11.

Even discovery related to the remaining "very narrow issue" has been limited by court order. Documents already produced from other sources need not be produced. *See Id.* at pp. 3, 4. Documents or communications between the plaintiffs and others about media or legislative strategies has been found irrelevant and over burdensome to produce. *Id.* at pp. 4, 5, 7. Discovery aimed at communications between plaintiffs and non-party animal rights advocates and animal rights organizations have been ruled overbroad and the information irrelevant. *Id.* at p. 9. The court has found that any further information about individual or organization donors would be irrelevant and would tread on core First Amendment rights. *Id.* Even as to documents produced by parties, plaintiffs may redact the names of individual donors and organizations, (unless they are parties to the litigation). *Id.* at pp. 3, 4, 6-7, 8.

Despite these very explicit court orders, Ringling apparently persists in its efforts to add parties and engage in new, far-reaching discovery, including discovery precluded by these orders. Ringling recently served a 67 page subpoena *duces tecum* on non-party Humane Society of the

George Gasper, Esquire
Page 3
October 10, 2007

United States (HSUS). *See* Docket No. 192-2. filed September 21, 2007. Ringling admits that one of the purposes of serving that subpoena on HSUS is to determine whether HSUS should be made a party to this litigation. See Ringling's Motion to Compel the Production of Documents Subpoenaed from HSUS, Docket No. 192, filed September 21, 2007, at pp. 2, 4, 6.

It is against this backdrop that Ringling served its subpoena *duces tecum* on non-party PeTA on September 20, 2007.

### B. General Objections

1. **Subpoena for Improper Purpose.** Ringling has admittedly used service of a subpoena *duces tecum* on non-party HSUS to determine whether to move to add HSUS as a party, PeTA questions whether Ringling is using service of a subpoena *duces tecum* on non-party PeTA to determine whether to move to add PeTA as a party, or to otherwise delay, hinder, and complicate this litigation and prejudice the plaintiffs. If so, then this is an improper use of a subpoena *duces tecum*, and subjects PeTA to expedited, unilateral discovery on a tight schedule and without reciprocal rights in a way that would not be allowed were PeTA a party. Plaintiffs' claim of Ringling's abuse of the judicial process in this action and the long-history of acrimony and litigation between Ringling and PeTA make it all the more likely that Ringling's service of a subpoena *duces tecum* on PeTA at a very late stage of this now-narrowed litigation is for an improper purpose. If so, no discovery from PeTA should be allowed.

2. **Irrelevant, Overly Broad, Burdensome.** Ringling served non-party PeTA with an 11 page subpoena *duces tecum* on September 20, 2007. This subpoena includes seven requests for production of documents and other tangible items. These requests are collectively irrelevant, overly broad, burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. For example, Request No. 1 asks for "[a]ll documents [from January 1, 1996 to present] that refer, reflect, or relate to ... funding any activities relating to [Ringling] or any other circus," even though a cursory review of one of PeTA's web site, **www.circuses.com**, shows that PeTA has investigated and reports on the activities of at least 30 circuses other than Ringling. Similarly, Request No. 4 seeks "[a]ll documents [from January 1, 1996 to present] that refer, reflect, or relate to any solicitation of or request for donations, contributions, payments and/or any things(s) of value concerning ... elephants in circuses." Again, this Request covers numerous circuses other than Ringling. And these two Requests, like the other five Requests, would require PeTA to search electronic, hard-copy, archived, web, and even destroyed records created or maintained at any time in the last twelve years, regardless of what time period (if any time period) is the relevant time period for each individual Request. These are but examples of the irrelevant, overly broad, and burdensome nature of Ringling's seven requests.

3. **Precluded Information Sought.** Ringling seeks more information than allowed under prior court orders, which orders limit the issues, claims, defense, and discovery in this

George Gasper, Esquire
Page 4
October 10, 2007

litigation, as discussed earlier in this letter. For example, Ringling requests documents from
PeTA showing payments (if any) by PeTA to plaintiffs, even though Memorandum Opinion,
August 23, 2007, Docket No. 178, at pp. 3, 4, 6-7, 8, provides for the redaction of identifying
information about non-party animal advocacy organizations that have made payments to
plaintiffs. In blatant disregard for this prior court order, Ringling's subpoena served on PeTA—a
non-party animal advocacy organization—would require production of information on payments,
if any, PeTA made to plaintiffs, which would have the effect of revealing information—namely
PeTA's identity—that the court has already ruled could be redacted and is protected by the First
Amendment to the United States Constitution. *Id.*

    4. **Duplicative Requests.** The requests served on PeTA ask for documents previously
produced in this litigation, despite the language of one of the judicial orders discussed above to
the effect that documents already produced from other sources need not be produced again. For
example, as reflected in Memorandum Opinion, August 23, 2007, Docket No. 178, at pp. 3-4,
plaintiff Tom Rider has already produced or is required to produce relevant, non-privileged, non-
precluded documents pertaining to this litigation and payments from animal advocacy
organizations (with the names of those non-party organizations redacted). Yet Ringling asks
again for many of those same documents that may be in PeTA's possession in its Request No. 4.

    5. **Get Information From Parties First.** Ringling's subpoena served on PeTA seeks
from a non-party information and documentation that it could and should seek from parties first.
Non-party status is to be considered by courts in weighting burdens imposed in providing
requested discovery. The standards for nonparty discovery requires a stronger showing of
relevance than for simple party discovery. PeTA should not be required to produce documents
where Ringling can obtain the same documents or similar information from any of the five
named plaintiffs (American Society for the Prevention of Cruelty to Animals, Animal Welfare
Institute, The Fund for Animals, Animal Protection Institute, or Tom Rider) or the three
individuals previously designated as fact witnesses who have moved to become plaintiffs
(Archele Faye Hundley, Robert Tom Jr., or Margaret Tom). Only after Ringling has established
that there are relevant, non-duplicative, non-precluded documents, photographs, videos, or sound
recordings that it cannot obtain from any existing or imminent party should the court consider
allowing discovery from non-party PeTA, especially in light of the totality of circumstances
surrounding this litigation and the history of other litigation between Ringling and PeTA.

    6. **Get Information From Public Sources First.** Ringling also should be required to
obtain documents and other tangible items from readily-accessible public sources where they are
available, rather than seeking them from PeTA under a subpoena *duces tecum* at substantial
expense to non-party PeTA. For example, where PeTA itself has obtained public records from
the federal government though numerous freedom of information act requests over the past
twelve years, with the totality of the requests potentially pertaining to up to 31 circuses, Ringling
should be required to follow the same procedure as PeTA has, submitting its own public record

George Gasper, Esquire
Page 5
October 10, 2007

requests, rather than seeking those documents from non-party PeTA. And where PeTA-
originated information is readily-accessible from a public source at no incremental cost to PeTA,
Ringling should be required to seek it there. For example, information, photographs, and videos
available on the World Wide Web at a website established or maintained by PeTA should be
obtained from the Web, not using the burdensome and expensive process of service of a
subpoena *duces tecum* on non-party PeTA.

7. **Privileged Information or Log Sought.** Based on counsel's general familiarity with
PeTA and long-time representation of PeTA, counsel believes that if the overly broad,
duplicative, irrelevant, precluded, and improperly-motivated discovery requested by Ringling
were in fact undertaken, PeTA's twelve years of records would include documentation reflecting
attorney work product, attorney-client privilege, trade secrets, and confidential research,
development, and commercial information, as well as information entitled to privacy under the
United States Constitution (*e.g.*, identification of news sources, membership information,
associational information). PeTA would be required to pull from hard-copy, electronic, web, and
archived sources; search; review; redact; and catalog twelve years of extensive documentation,
all on account of Ringling's excessively burdensome, irrelevant, and precluded discovery
requests.

8. **Definitions Objectionable.** PeTA objects to the definitions as exceeding the
requirements of Federal Civil Rule 45, and as being, in part, over broad and vague. *See* ¶¶ 1, 4,
and 10, particularly.

9. **Instructions Objectionable.** PeTA objects to the instructions as exceeding the
requirements of Rule 45.

10. **Service Deficit.** PeTA objects generally to Request Nos. 1-7 in that the subpoena
was not appropriately served upon defense counsel in this case.

## Additional Objections Specific to Individual Requests for Production

For each of the seven requests for production included in September 20, 2007 subpoena
*duces tecum* served on PeTA under Federal Civil Rule 45, PeTA raises all of the general
objections set forth above, and further objects to the seven Requests for Production as set forth
below:

1. PeTA specifically further objects to the broadness and undue burdensome nature of
Request Nos. 1-3. PeTA also objects to those paragraphs in that they may include material that is
either protected by work product doctrine or by the attorney-client privilege. PeTA further
objects to the scope of these requests, where they involve trade secrets of PeTA. Lastly, PeTA

George Gasper, Esquire
Page 6
October 10, 2007

objects to the scope of these requests, where they go beyond the limitations of this lawsuit or the scope of the recent rulings of the United States District Court.

2. With respect to Request No. 4, PeTA makes the same objections as for Request Nos. 1-3, and would ask the relevance to the current lawsuit of each of the individuals named therein. PeTA objects specifically to documents relating to "any other current or former employee, consultant, agent, attorney, director, or other representative of defendant." PeTA would further object as invading the privacy of individuals, in addition to all the other objections set forth above.

3. PeTA objects to Request No. 5 for the reasons set forth in the general objections above, and particularly as it is over broad and thereby highly burdensome.

4. PeTA objects to Request Nos. 6 and 7, please see the general objections above.

After your review of this letter and reexamination of the subpoena *duces tecum* served on PeTA, I am available to discuss this matter further.

Very truly yours,

PHILIP J. HIRSCHKOP

PJH:er
cc:    Katherine Meyer, Esquire
       Jeffrey S. Kerr, Esquire

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

FELD ENTERTAINMENT, INC.      :
                                      :
            Plaintiff,        :
                                      :
      v.                      :        Case No.
                                        :
PEOPLE FOR THE ETHICAL      :
TREATMENT OF ANIMALS,      :
                                      :
            Defendant.     :
_____:

## FELD ENTERTAINMENT'S MOTION TO COMPEL DOCUMENTS SUBPOENAED FROM PETA

# EXHIBIT 6

# FULBRIGHT & JAWORSKI L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
801 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, D.C. 20004-2623
WWW.FULBRIGHT.COM

GGASPER@FULBRIGHT.COM
DIRECT DIAL: (202) 662-4504

TELEPHONE:  (202) 662-0200
FACSIMILE:  (202) 662-4643

November 15, 2007

**VIA FACSIMILE AND FIRST-CLASS MAIL**

Philip J. Hirschkop
Hirschkop & Associates, P.C.
908 King Street, Suite 200
Alexandria, VA 22314-3013

Re:  ASPCA v. Feld Entertainment, Inc. (Subpoena *duces tecum* to PETA)

Dear Mr. Hirschkop:

I am writing in response to PETA's October 10, 2007 objections to the subpoena served by Feld Entertainment, Inc. ("FEI") in connection with the above-referenced litigation in the District of Columbia. FEI takes issue with your one-sided recitation of the "case history" and "prior order," but none of that has anything to do with the subpoena served upon PETA. Quite ironically, upon receiving your response, we agreed that the Court's prior orders meant that discovery was limited. Plaintiffs, however, have disagreed and the Court has ruled that discovery would not be limited as your letter suggests. Notwithstanding your efforts to characterize the proceedings in this case, several of your points are incorrect. For example, FEI is entitled to discover documents relating to payments by an animal advocacy group such as PETA to a witness in this case. FEI also is entitled to discover evidence, such as PETA's videotapes of FEI's operations, that would refute plaintiffs' allegations of animal abuse.

Each of PETA's general objections are addressed in turn below.[1]

1.  FEI's subpoena is not for an improper purpose and PETA's speculation to the contrary is completely unfounded. Unlike HSUS, PETA has not merged or otherwise combined with an existing plaintiff. FEI has no intention of joining PETA to the ongoing litigation. FEI's subpoena commands nothing but discoverable information relating to the claims and defenses in the current litigation and to the credibility of its parties and witnesses.

2.  FEI's subpoena is narrowly focused upon documents relating to the credibility of parties or witnesses in the underlying litigation or upon evidence in PETA's possession that would refute plaintiffs' allegations of animal abuse. PETA's objection that the subpoena is over-

---

[1] PETA's specific objections simply duplicate issues raised in its general objections and, thus, will not be addressed separately here.

Philip J. Hirschkop
November 15, 2007
Page 2

broad conveniently misconstrues the requests at issue and misrepresents what it is that FEI has actually asked for. FEI has not requested all documents concerning the funding of any activities relating to any circus; rather, FEI has requested only those such documents that *also* pertain to a handful of individuals, all of whom are witnesses in the underlying litigation. FEI has no interest in receiving all of PETA's documents concerning www.circuses.com, only those presumably few documents that *also* concern individuals such as Archele Hundley and Tom Rider. The subpoena's first four requests are clear: PETA must produce all documents relating to certain individuals who are witnesses in this case. PETA cannot misconstrue such requests and then complain that they are overbroad when read only in part.

3.    FEI's subpoena does not seek more documents or information than allowed under prior court orders. The court presiding over the underlying litigation already has ruled that FEI is entitled to discover documents concerning payments to or for witnesses by animal advocacy organizations (such as PETA). That the court permitted plaintiffs to redact the *identity* of donors who are not plaintiffs or counsel in this case does not mean that relevant documents need not be produced. In fact, the Court ordered that all documents relating to such payments be *produced*. PETA's objection also conveniently ignores that the purpose of redacting the identity of certain donors is to prevent the disclosure of an unknown donor's identity, which could potentially infringe (according to plaintiffs) on the donor's freedom of association. Any such concern has no relevance here because FEI knows that PETA has made payments for Rider and other potential witnesses. PETA's association with plaintiffs, Rider, and other witnesses is no secret. *See, e.g.,* PETA Press Release Regarding Archele Hundley (3/13/07) (available at http://www.peta.org/mc/NewsItem.asp?id=9591).

4.    PETA's objection that FEI's subpoena contains "duplicative requests" is premised upon a conveniently incomplete recitation of the court's prior order. Plaintiff Tom Rider was permitted to exclude from his production any documents previously produced to FEI *provided* that he submit to FEI a list of specific responsive documents in his possession, custody, or control that were previously produced by others. If PETA would like to provide such a list, it too may exclude from production any *identical* copies of documents previously produced to FEI.

5.    FEI's subpoena requests documents and information that are solely in the possession of PETA, such as internal e-mails relating to the allegations or credibility of certain witnesses. It is irrelevant, therefore, whether FEI could obtain *some* responsive documents that also are in the files of existing plaintiffs. As stated above, PETA need not produce documents FEI already has received from plaintiffs *provided* that it submits a list of such responsive documents that are in its possession, custody, or control. There, moreover, is no basis for PETA to insist that FEI request the documents at issue from three individuals who are not parties to the underlying litigation. PETA may not dictate which third party FEI elects to subpoena in order to discover relevant evidence.

6.    PETA may not avoid FEI's subpoena simply because it has previously gathered publicly available documents or because it has made certain documents publicly available by

Philip J. Hirschkop
November 15, 2007
Page 3

posting them on a website. Nothing in Rule 45 permits the recipient of a subpoena to withhold documents simply because they are not the sole holder of them. In prior litigation involving FEI, you have insisted – and prevailed on your demand – that FEI produce publicly available documents to PETA. FEI asks no more than what PETA has demanded from it in the past.

       7.     PETA's objection that the subpoena commands the production of documentation reflecting privileged material is completely unfounded. Instruction No. 10 specifically permits PETA to withhold such documents provided that it submits, instead, basic information about them, which is commonly required by courts to enable the requesting party to assess the validity of any alleged privilege. You can log privileged documents just as you would in any other case.

       8.     FEI's definitions neither exceed the requirements of Rule 45 nor are they "over broad and vague." As PETA does not actually identify the specific definitions (and portions thereof) to which it objects, FEI has nothing further to consider on this and expects responsive documents to be produced.

       9.     FEI's instructions do not exceed the requirements of Rule 45. As PETA does not actually identify the specific instructions to which it objects, FEI has nothing further to consider on this and expects responsive documents to be produced.

      10.     FEI has served all parties with the subpoena it ultimately was able to serve upon PETA. PETA's objection that "defense counsel" was not served is false. "Defense counsel" issued the subpoena and plaintiffs were served with the subpoena on the same day that FEI received the executed affidavit of service and more than a week in advance of the production deadline established by the subpoena. All parties have been given sufficient notice of the commanded document production. *See* 1991 Adv. Comm. Notes to Fed. R. Civ. P. 45(b) ("The purpose of such notice is to afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things."). FEI served plaintiffs after confirming that PETA had been served, which is precisely the manner in which plaintiffs have served prior subpoenas upon FEI. Plaintiffs apparently forgot to advise you of this when conferring with you about PETA's response to FEI's subpoena. The only complaint that can be made regarding service is by FEI. PETA went to great lengths to avoid service of FEI's subpoena and did so for a week before unilaterally pronouncing the date and time on which it would appear at its front desk to accept service. The process server was apparently familiar with such shenanigans from PETA. Your evasion of service required FEI to extend its response date in a re-issued subpoena.

      I trust this letter addresses PETA's objections and indicates FEI's willingness to consider modifications to alleviate any well-grounded complaints of undue burden. You will recall that during our conversation on September 28, 2007, you stated that PETA could produce certain documents in response to FEI's subpoena without much discussion, e.g., documents relating to individuals who have been identified as witnesses in the underlying litigation. Please produce all documents that PETA is willing to produce voluntarily by the close of business on Wednesday,

Philip J. Hirschkop
November 15, 2007
Page 4


November 21, 2007. Please also call me before then to discuss whether any outstanding issues remain with regard to the subpoena in light of our response provided herein.

<div style="margin-left: 50%;">

Very truly yours,

*George Gasper*

George A. Gasper
</div>

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

FELD ENTERTAINMENT, INC.          :
                                  :
            Plaintiff,            :
                                  :
      v.                          :      Case No.
                                  :
PEOPLE FOR THE ETHICAL            :
TREATMENT OF ANIMALS,             :
                                  :
            Defendant.            :
_____   :

**FELD ENTERTAINMENT'S MOTION TO COMPEL DOCUMENTS SUBPOENAED
FROM PETA**

# EXHIBIT 7

FULBRIGHT & JAWORSKI L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
801 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, D.C. 20004-2623
WWW.FULBRIGHT.COM

GGASPER@FULBRIGHT.COM                                    TELEPHONE:    (202) 662-0200
DIRECT DIAL:  (202) 662-4504                             FACSIMILE:    (202) 662-4643

December 7, 2007

**VIA FACSIMILE AND FIRST-CLASS MAIL**

Philip J. Hirschkop
Hirschkop & Associates, P.C.
908 King Street, Suite 200
Alexandria, VA 22314-3013

Re:    ASPCA v. Feld Entertainment, Inc. (Subpoena *duces tecum* to PETA)

Dear Mr. Hirschkop:

Thank you for speaking with me on December 5, 2007 regarding the above-referenced subpoena. This letter will confirm our discussions concerning PETA's proposed response to the subpoena and will set forth FEI's positions on the various issues that remain.

1.    Documents Concerning the Credibility of Witnesses (Request Nos. 1-4)

You stated that PETA is searching for documents concerning the nine individuals specifically mentioned in FEI's subpoena (Tom Rider, Archelle Hundley, Robert Tom, Margaret Tom, James Stechcon, Glenn Ewell, Garrison Christianson, Kelly Tansy, and Gerald Ramos). You stated that PETA is scheduled to give you all "financial records" concerning these individuals and all "communications with" them by Monday, December 10, 2007. You stated that you intend to produce all of the "financial records" and to review the communications to determine whether they will be produced as well. Finally, you stated that you expect to produce documents by the end of next week (i.e., December 14, 2007).[1] It is, of course, our position that *all* documents concerning the nine individuals referenced above must be produced.

In addition, I asked you whether PETA was searching for documents concerning its payment(s) to the Wildlife Advocacy Project ("WAP") as part of its search for all documents concerning payments to Mr. Rider. You indicated that you were aware of at least one payment to WAP and that you would ask PETA to search for documents concerning payment(s) to WAP.

---

[1]    You also requested that the parties execute a protective order prior to the production of documents, but I explained that the Court has already entered a protective order for all discovery produced after September 25, 2007.

60057688.1

AUSTIN • BEIJING • DALLAS • DENVER • DUBAI • HONG KONG • HOUSTON • LONDON • LOS ANGELES • MINNEAPOLIS
MUNICH • NEW YORK • RIYADH • SAN ANTONIO • ST. LOUIS • WASHINGTON DC

Philip J. Hirschkop
December 7, 2007
Page 2

I also told you that we consider any video or photo taken by any of the nine individuals identified above to be responsive to the subpoena. You stated that you would ask PETA if any such videos or photos exist.

Finally, I also asked you whether PETA was searching for documents concerning Frank Hagan, another former FEI employee who is addressed by this subpoena (even though he is not named specifically). You stated that PETA already searched for files concerning Mr. Hagan in connection with a separate subpoena served by FEI's prior counsel. I explained that I am aware of that production but that PETA redacted information that has since been deemed relevant by the Court. Specifically, PETA has redacted information concerning the amount of money that has been paid by an animal advocacy organization to a witness in this case. In response to your statement that you would not advise PETA to conduct a new search, I told you that I would send you copies of PETA's prior production so that we could discuss whether you and PETA would be willing to lift the redactions. Accordingly, the redacted documents are enclosed for your review. Furthermore, there may have been payments to Mr. Hagan by PETA or communications with him after the date of PETA's initial document production on June 20, 2005 so there needs to be a search for documents generated after that date.

We will await your production of documents late next week. In connection with that production, please explain precisely any documents that concern the nine individuals identified above and that PETA refuses to produce so that we may seek the Court's assistance to resolve our disagreement. Please also state whether PETA will lift the redactions contained in the enclosed documents concerning Frank Hagan. If so, please provide unredacted copies of those documents at that time. If not, please provide PETA's authority for redacting such information.

2.    Plaintiffs' Requests Concerning the Funding of this Lawsuit (Request No. 5)

You stated that Request No. 5 seems overbroad because you interpret it to request the production of all documents concerning PETA's fund-raising efforts related to FEI. I explained that your interpretation is not correct. Request No. 5 is limited to documents concerning requests for funding that were *made by plaintiffs, WAP, and/or plaintiffs' counsel* and that relate to this litigation and/or FEI and its current or former employees. In light of that explanation, you stated that you would discuss this request with PETA.

We will expect to receive by the end of next week, all documents responsive to this narrowly-tailored request.

3.    Evidence Concerning FEI's Treatment of its Elephants (Request Nos. 6-7)

You stated that PETA will not permit FEI to review all of its videos and photographs concerning FEI or its elephants, but that you would consider requests for videos or photographs concerning specific "incidents" or dates. I explained to you that "all" videos and pictures concerning FEI's elephants are relevant because we must "prove a negative" in the underlying

60057688.1

Philip J. Hirschkop
December 7, 2007
Page 3

litigation. Specifically, videos and photos that show the lack of abuse are just as relevant as any videos and photos that PETA or plaintiffs allege to show abuse. You responded that the underlying litigation does not involve allegations that FEI uses bullhooks and hits its elephants all the time, thus, videos and photos that show no abuse would not disprove plaintiffs' allegations. I explained, however, that those are precisely the allegations that have been made under oath in connection with this case.

I also explained to you that we have reason to believe that PETA has given plaintiffs certain videos and photos. I believe you then confirmed our suspicion, at which time I stated that PETA is putting itself in a position that will be difficult to defend in Court. Specifically, PETA has given plaintiffs videos that they requested while denying FEI's request for the same. Although you stated that plaintiffs asked for specific videos, not "all" of them, I told you that it is not for PETA to decide which videos are relevant to this case and to grant or deny parties access to them based on PETA's interests in the underlying litigation.

Finally, you stated that we already got from plaintiffs all of the videos that PETA has given to plaintiffs. I explained, however, that we have no way of knowing whether plaintiffs have produced them all and that, even if plaintiffs have produced all of the videos they have received thus far, PETA and plaintiffs will not be permitted to surprise FEI at trial with materials that PETA has in its possession now but elects to wait until after the close of discovery to give to plaintiffs. Most importantly, however, I explained that it is not a sufficient response to FEI's inquiry that PETA has given some tapes to plaintiffs who allegedly have given them to FEI. It is not for PETA to determine which photos and videos concerning FEI's elephants will be produced or used in this litigation.

The parties have reached an impasse on the issue of whether FEI is entitled to "all" videotapes and photographs of its employees and/or animals. We will proceed, therefore, to seek the Court's assistance on this issue at the appropriate time.

With respect to Request No. 7, you stated that PETA and plaintiffs are operating under a mutual defense agreement and that, therefore, communications between the parties are privileged and will not be produced. We are unaware of any privilege that attaches to communications or documents exchanged between a party and a non-party. We will expect PETA to produce all documents responsive to Request No. 7 by the end of next week. If PETA persists in its refusal to produce such documents, please immediately provide the authority for PETA's privilege claim so that we may consider it carefully.

4.    Miscellaneous Points

At various times during our conversation you stated the following: (a) PETA paid a "living wage" to Frank Hagan, (b) you would be "shocked" if plaintiffs call Glenn Ewell as a witness in this case based on your dealings with him seven or eight years ago, (c) PETA paid for Tom Rider's expenses to testify in New York, (d) you are aware that Garrison Christianson has

Philip J. Hirschkop
December 7, 2007
Page 4

testified before the USDA, (e) plaintiffs, their counsel, and/or attorneys for Archelle Hundley and Mr. and Mrs. Tom requested from PETA documents concerning Tom Rider, Ms. Hundley, and the Toms, and (f) PETA provided to plaintiffs, their counsel, and/or attorneys for Archelle Hundley and Mr. and Mrs. Tom documents concerning expenses being paid for Mr. Rider and "pay stubs and expense vouchers" concerning Ms. Hundley and the Toms.

Please let me know immediately if any of the above is incorrect. Please also let me know if PETA intends not to produce documents at the end of next week.

Very truly yours,

George A. Gasper

60057688.1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | | |
|---|---|---|
| FELD ENTERTAINMENT, INC. | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. |
| | : | |
| PEOPLE FOR THE ETHICAL | : | |
| TREATMENT OF ANIMALS, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**FELD ENTERTAINMENT'S MOTION TO COMPEL DOCUMENTS SUBPOENAED FROM PETA**

# EXHIBIT 8

December 14, 2007


*VIA HAND-DELIVERY*
George Gasper, Esquire
FULBRIGHT & JAWORSKI
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

<div style="text-align:center">

RE:   *ASPCA v. Ringling Bros, et al.*
      Subpoena *duces tecum* to PeTA
</div>

Dear Mr. Gasper:

In reply to your letter of December 7, 2007, I do not agree with a number of items. I understood that when we spoke you were traveling, so I'm a little surprised about the extensive detail, although a number of details are omitted that change the context of some of the things we discussed. In light of that, I would first request that you inform me if you have been recording our conversations, or did you record that or any other conversation. If you are recording conversations, you should first inform me. I probably would have agreed, but do insist that I be at a facility where I can also record and we can be on a level playing field. At any rate, I would require that you respond to this inquiry before anything further is done.

With regard to your letter, the major omission is that I was trying to work out the subpoena and our objections, and apparently it is your position that you are not going to settle anything, but rather press PeTA for anything they are willing to give, whether it's within or even exceeding the rulings of the magistrate and the judge, and then you will nonetheless drag us into court. For instance, your continued demand that PeTA produce for inspection every video it has ever taken or any footage it has of anything concerning Ringling Bros. or any other circus over the last ten years (or, perhaps, longer as you have yet to agree to the number of years), is not remotely within reason. Your letter does not suggest we were trying to resolve issues, but rather that it's all a one-way street with PeTA giving and Ringling not accommodating or compromising on anything.

I have reviewed the rulings of Judge Sullivan and Judge Facciola in prior discovery and, after consultation with PeTA, while still maintaining our overall objections, PeTA is making a good faith attempt to produce documents I believe fall within the guidelines of those rulings. Specifically, as discussed in more detail elsewhere in this letter, PeTA is now producing

George Gasper, Esquire
Page 2
December 14, 2007

information on expenditures, all correspondence by any one of the nine individuals named in paragraphs 1-5 of the subpoena, and all correspondence by PeTA to any one of the nine individuals named in paragraphs 1-5 of the subpoena.

Thus, I have asked PeTA to prepare a table showing expenditures to, or on behalf of, the nine individuals mentioned in paragraphs 1-5 of your subpoena who you claim to be witnesses in this matter. At any rate, I enclose that table. The material it encompasses came from diverse entries which, if produced, would be cumbersome and not as readily identifiable. The preparation of the table is done at considerable effort as an accommodation to resolving disputes over the subpoena.

With regard to Glenn Ewell, you are correct in mentioning in your letter that I did tell you I would be shocked if Glenn Ewell is going to be a witness for plaintiffs, and my inquiries of the plaintiffs confirm that.

With regard to Frank Hagan, your letter is not clear that I protested to you in our conversations that you had not mentioned Hagan in our prior conversation or in the subpoena. You do point out that I did tell you that we had previously produced documents on Hagan. You have now sent those documents to me for review. I have asked PeTA to find the original documents that match the ones with the redactions, and I am awaiting those. However, I am concerned in that you told me that Hagan is going to be a witness and I have since discovered that Hagan is deceased. Accordingly, I'm not sure what good my reviewing these documents (if they can be located) will be, as you certainly can't put them in front of a deceased witness or seek to impeach a deceased witness, nor do they appear to lead to the discovery of admissible evidence. If PeTA cannot locate those documents, perhaps you would accept a table, like the one being produced for the other witnesses, showing expenditures to Hagan, but I would appreciate your input as to why these would be discoverable in light of the fact that he is deceased.

I am providing a number of documents where the nine individuals wrote to public officials. I believe they are within the scope of your subpoena and that the Court would want them produced, and I am thereby producing them, albeit we do have general objections that have not yet been dealt with, should you decide to go to court. Accordingly, I am not waiving those general objections, but am producing these in an effort to be cooperative.

Also, I have asked PeTA to provide all correspondence by any one of the nine individuals named in paragraphs 1-5 of the subpoena, and all correspondence by PeTA to any one of the nine individuals named in paragraphs 1-5 of the subpoena. That correspondence is being produced to you.

With regard to videos or photos, it is hard to try to identify those because of your overall request for any video PeTA has of any circus. That type of search is massive and cannot be done

George Gasper, Esquire
Page 3
December 14, 2007

repetitively. If we can narrow the request on videos, I could probably promptly produce those. Some videos have been located, which involve one or more of the nine people you identified, and they need to be reviewed to see if they meet your criteria and the guidelines set forth by the Court.

Lastly, I have just received some further documents which I do not think add anything, as they appear to be supporting chits for some of the financial expenses such as travel and meals. I will review them but cannot do so until this weekend. I believe, from a quick review, they are not of any note as the charges have already been produced.

With regard to some of the other recitations in your letter, I am just going to generally deny them, as I don't have time to get into a letter writing campaign with you and your massive law firm. Needless to say, our discussion, I assumed, was trying to settle these issues and not one for a court record, as apparently you are proposing. If that is what you want to do, then we shouldn't speak at all and should only deal in writing. It would make this whole process far more cumbersome. I am not interested in posturing, but in resolution. For instance, the recitation in your letter that you explained to me about the reason to believe that PeTA has provided certain videos to plaintiff and that I confirmed your suspicion, is inaccurate. My recollection of our conversation is that I told you that either the plaintiff got the videos from PeTA, or from public rsources, but that I had seen a list of the videos that the plaintiff had produced and I understood they were the videos of PeTA's that the plaintiffs had.

You raised some issue that maybe the plaintiff would get more videos from PeTA in the future, and I told you I didn't know anything about that and that was something for you to work out with the plaintiff and the court. That's not included in your letter. I understand your letter is not meant to be a transcript of our conversation, but I do feel that you have been adversarial in the portions reflecting our conversation that you seek to quote in your letter. I want to be very clear with regard to videos that it is my understanding that the plaintiffs have not come and reviewed all of PeTA's videos. It is PeTA's position that if specific videos are requested, they will deal with each such request. Nor do I know that the plaintiffs got all the videos directly from PeTA. They may, indeed, have gotten some from some of the witnesses you mentioned, but I have not requested of the plaintiffs how they went about handling their lawsuit and discovery.

You also requested information on contributions made to WAP and payments to the Meyer Glitzenstein law firm. I told you that the only knowledge I had regarding WAP after preliminary inquiry was that one grant for which you already have the documents. That is included in the enclosed table. Further inquiry of PeTA indicates there are no further grants. If any turn up, I will immediately inform you, but, as of this time, a search has been made and I am informed no others were made. With regard to Meyer Glitzenstein, I told you very clearly that they have represented PeTA over the years and I have had regular communications with them, as have other PeTA lawyers. We have had a working agreement with that firm, both on behalf of

George Gasper, Esquire
Page 4
December 14, 2007

myself and general counsel's office for PeTA, in the course of various legal efforts that the communications between counsel would remain privileged. I understood from our conversation that you were not seeking payments by PeTA to Meyer Glitzenstein. However, with regard to the lawsuit, PeTA has not paid any expenses, either for costs or legal fees. That should therefore resolve that issue.

With regard to the miscellaneous points in your letter, I do not recall what my comment was about "a living wage" to Frank Hagan. I know he was paid consulting fees and some costs for a period while he assisted PeTA, and whether it was a living wage or something else, I honestly don't know. Further, I don't recall saying that Garrison Christianson testified before the USDA. It was my understanding then, and it remains now, that he provided an affidavit or at some point drafted an affidavit, which is being supplied to you.

If I have omitted any details of your letter, take them as contested. My task is not to respond to all the details of your letter, but to try and respond to the subpoena within the guidelines set by the Court, and I am trying to do that.

Very truly yours,


PHILIP J. HIRSCHKOP

PJH:er
enclosures
cc:    Jeffrey S. Kerr, Esquire
       Bonnie Robson, Esquire
       Katherine Meyer, Esquire

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

FELD ENTERTAINMENT, INC.    :
    :
    Plaintiff,    :
    :
    v.    :    Case No.
    :
PEOPLE FOR THE ETHICAL    :
TREATMENT OF ANIMALS,    :
    :
    Defendant.    :
    :

**FELD ENTERTAINMENT'S MOTION TO COMPEL DOCUMENTS SUBPOENAED
FROM PETA**

# EXHIBIT 9

DEC-17-2007  13:50        LAW OFFICES                      703 548 3181    P.02/07

LAW OFFICES
# HIRSCHKOP & ASSOCIATES, P.C.
508 KING STREET, SUITE 200
ALEXANDRIA, VIRGINIA  22314-3013

PHILIP J. HIRSCHKOP
VA, D.C. & NY BARS

WASHINGTON OFFICE
1920 N STREET, N.W, SUITE 300,
WASHINGTON, D.C.  20036-1622

(703) 836-6595 & (703) 836-5555
FAX (703) 548-3181


December 17, 2007


*VIA FACSIMILE (202-662-4643)*
George Gasper, Esquire
FULBRIGHT & JAWORSKI
801 Pennsylvania Avenue, N.W.
Washington, D.C.  20004

RE:   *ASPCA v. Ringling Bros, et al.*
      Subpoena *duces tecum* to PeTA

Dear Mr. Gasper:

Enclosed are five additional pages (best copies available).

Very truly yours,   -

PHILIP J. HIRSCHKOP

PJH:er
enclosures
cc:   Jeff Kerr, Esquire
      Bonnie Robson, Esquire
      Katherine Meyer, Esquire

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

FELD ENTERTAINMENT, INC.          :
                                  :
              Plaintiff,          :
                                  :
       v.                         :          Case No.
                                  :
PEOPLE FOR THE ETHICAL            :
TREATMENT OF ANIMALS,             :
                                  :
              Defendant.          :
_____ :

<u>FELD ENTERTAINMENT'S MOTION TO COMPEL DOCUMENTS SUBPOENAED
FROM PETA</u>

# EXHIBIT 10

# FULBRIGHT & JAWORSKI L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
801 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, D.C. 20004-2623
WWW.FULBRIGHT.COM

GGASPER@FULBRIGHT.COM
DIRECT DIAL: (202) 662-4504

TELEPHONE:     (202) 662-0200
FACSIMILE:     (202) 662-4643

December 18, 2007

**VIA FACSIMILE AND FIRST-CLASS MAIL**

Philip J. Hirschkop
Hirschkop & Associates, P.C.
908 King Street, Suite 200
Alexandria, VA 22314-3013

Re:     ASPCA v. Feld Entertainment, Inc. (Subpoena *duces tecum* to PETA)

Dear Mr. Hirschkop:

Thank you for your letter dated December 14, 2007. This letter will address the issues that continue to remain outstanding.

1.     Documents Concerning the Credibility of Witnesses (Request Nos. 1-4)

As we have discussed, FEI's position is that *all* documents concerning the nine individuals referenced in the subpoena must be produced. PETA may not, as it suggests, refuse to produce documents concerning payments to or for these individuals merely because it has produced a chart containing the date and amount of such payments. Indeed, both Judge Sullivan and Magistrate Judge Facciola have rejected this very approach by two other organizations that FEI has been forced to subpoena in this case. *See* Discovery Order (8/23/07) at 8 (Judge Sullivan ordering WAP to produce "all" documents concerning payments to Rider); Order (12/3/07) at 2 (Judge Facciola ordering HSUS to produce the same). The two judges presiding over this case have ruled that a chart of payments is insufficient and that all documents concerning payments must be produced. PETA, similarly, must produce all documents concerning its payments to these individuals.

Also, you represented that PETA has been asked to search for "all correspondence by" these nine individuals and "all correspondence by PETA to" any of them. Indeed, it appears that such documents have been produced. However, it seems odd that PETA has produced all correspondence by these individuals (regardless of the intended recipient) but has produced only the correspondence to these individuals that was prepared by PETA. Please let me know whether PETA has copies of any correspondence to these individuals that was created by someone else. If so, such correspondence also must be produced.

60060063.1
AUSTIN • BEIJING • DALLAS • DENVER • DUBAI • HONG KONG • HOUSTON • LONDON • LOS ANGELES • MINNEAPOLIS
MUNICH • NEW YORK • RIYADH • SAN ANTONIO • ST. LOUIS • WASHINGTON DC

Philip J. Hirschkop
December 18, 2007
Page 2

You also represented that some videos have been located involving these nine individuals and that they will be reviewed for possible production. Please produce all such videos immediately, including any undercover video taken of FEI or its employees by these individuals. They are responsive to the subpoena, relevant to the litigation, and not unduly burdensome to produce.

In addition to the nine individuals specifically mentioned in the subpoena, you and I have discussed documents concerning payments to Frank Hagan, which are responsive to Request No. 4 of the subpoena. To be clear, I never told you that Mr. Hagan "is going to be a witness" in this case. That is because Mr. Hagan already has been a witness in this case, having been deposed by plaintiffs several years ago. As you know, Mr. Hagan is now deceased which makes it all the more imperative that PETA produce its documents concerning him since he is no longer available for cross-examination on issues that have to come light since he was deposed in this case. As with the nine individuals above, please produce unredacted copies of all documents PETA has concerning Mr. Hagan, including all documents concerning payments to or for him.

2.     <u>Plaintiffs' Requests Concerning the Funding of this Lawsuit (Request No. 5)</u>

As explained in my prior letter, Request No. 5 is limited to documents concerning requests for funding that were *made by plaintiffs, WAP, and/or plaintiffs' counsel* and that relate to this litigation and/or FEI and its current or former employees. Your letter of December 14, 2007 is conspicuously limited to payments by PETA to WAP and payments by PETA to MGC for this lawsuit. You did not address, and PETA has not produced documents concerning, any requests for funding made by the plaintiffs – whether for this litigation, Tom Rider, or otherwise. You, moreover, did not answer the applicable question with respect to WAP or MGC. Has WAP or MGC requested funding from PETA for this lawsuit, for Tom Rider, or for other potential witnesses in this case? Your representation that PETA has "not paid any expenses" in this lawsuit does not answer the applicable questions, nor does it explain PETA's refusal to comply with this request. PETA must produce all documents responsive to Request No. 5.

3.     <u>Evidence Concerning FEI's Treatment of its Elephants (Request Nos. 6-7)</u>

It is clear that PETA refuses to produce all of its videos and photos of FEI, yet it fails to explain in detail why such a search and production would be so burdensome. Indeed, the production of such material should present no burden at all. PETA took the videos and photos for a specific purpose, so it is inconceivable that these materials are not highly organized and that PETA cannot put its hands on them immediately by subject matter. PETA knows exactly what is on its videos and photos; that is why they made them.

PETA has left us no choice but to seek Court assistance on the issue of whether it must produce "all" videos and photos. In the meantime, however, since PETA has offered to deal with specific requests for specific videos, we hereby request copies of all videos and photos given to, or discussed with, plaintiffs or MGC and, as discussed above, all videos and photos of

60060063.1

Philip J. Hirschkop
December 18, 2007
Page 3

(or taken by) the ten former FEI employees at issue in the subpoena. Please provide such videos and photos immediately.

Finally, you have not addressed, and PETA has not produced documents concerning, Request No. 7, which seeks all documents relating to FEI's treatment of its elephants that were given to plaintiffs (or their counsel) and all documents reflecting communications with plaintiffs (or their counsel) concerning the same. Although you have vaguely referenced some form of mutual defense privilege, you have not provided any authority for this position, as requested in my previous letter. Indeed, while a common interest privilege might attach if PETA were actually adverse in a lawsuit involving FEI, that is not the case. Neither political nor philosophical adversity satisfies the applicable test, although I suppose that such a privilege could attach if the facts showed that PETA were actively involved in this case (enough to essentially be a co-plaintiff). If that is the case, please let me know immediately. Otherwise, PETA should produce the documents it has given to plaintiffs or their counsel concerning FEI's treatment of its elephants and PETA should produce its communications with plaintiffs or their counsel concerning the same.

As this letter addresses many issue we already have discussed, please produce the documents and videos discussed above by Thursday, December 20, 2007.

Very truly yours,

George Gasper

George A. Gasper

60060063.1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

FELD ENTERTAINMENT, INC.         :
                                 :
            Plaintiff,           :
                                 :
    v.                           :      Case No.
                                 :
PEOPLE FOR THE ETHICAL           :
TREATMENT OF ANIMALS,            :
                                 :
            Defendant.           :
_____:

**FELD ENTERTAINMENT'S MOTION TO COMPEL DOCUMENTS SUBPOENAED
FROM PETA**

# EXHIBIT 11




Home  |  Get Active  |  Media Center  |  TV  |  Cruelty-Free Living  |  Shop  |  About PETA  |  Donate Now

SUBSCRIBE

Search
[        ]  [Go]

**Contact Media Liaison**

**Contact Ad/PSA Manager**

**Advertising**
- Billboards
- Print Ads
- Radio Advertising
- TV Advertising
- Web Banners

**PETA in the News**

**PETA TV**

**More Resources**
- Action Alerts
- Breaking News E-Mail
- Factsheets
- FAQs
- Features
- Literature
- Multimedia
- Photos
- RSS
- Victories
- Videos
- Web Sites

Media Center > News Releases

---

### FORMER RINGLING EMPLOYEE ASKS ATLANTIC CITY TO BAN BULLHOOKS, CHAINS

---

#### Whistleblower Goes Public With Beatings She Witnessed

**For Immediate Release:**
March 13, 2007

**Contact:**
RaeLeann Smith 757-622-7382

**Atlantic City, N.J.** – This morning, PETA and former Ringling Bros. and Barnum & Bailey Circus employee Archele Hundley sent letters to Atlantic City Mayor Robert W. Levy Sr. urging him to enact legislation that would ban the use of bullhooks, chains, and other devices commonly used to restrain elephants or inflict pain on them. The request comes just ahead of Ringling's scheduled visit to Atlantic City next week. **The U.S. Department of Agriculture—after urging from PETA—has launched five separate investigations of Ringling over the last two years.**

Hundley reports that trainers and handlers struck and prodded elephants with steel-tipped bullhooks on a daily basis. One of the worst incidents that she witnessed occurred in Tulsa, Okla., where, she says, Ringling's head animal trainer beat an elephant with two bullhooks for more than 30 minutes, sinking the bullhooks' sharp tips into the sensitive skin behind her ear. The handler then swung one of the bullhooks like a baseball bat into the elephant's ear canal and pulled the handle using both arms. "She squealed in pain three or four times and let out a loud, shrill shriek," says Hundley. She reports that during the beating, the elephant bled profusely from her wounds.

Hundley quit the circus in disgust after her complaints about this and other incidents—including one in which a trainer whipped a camel during rehearsals and another in which a trainer punched a miniature horse in the face—were ignored. In fact, Hundley reports that no one was ever disciplined for abusing animals.

"Archele Hundley has seen firsthand how animals used in circuses are forced to perform under threat of punishment," says PETA Director Debbie Leahy. "We hope that her moving letter convinces Atlantic City to ban bullhooks and other torture devices."

Video footage of elephant beatings can be seen on PETA's Web site Circuses.com. Hundley's letter to Mayor Levy follows.

Camp








New A


Ha
Pro
for


"It
Me




March 13, 2007

The Honorable Robert W. Levy Sr.
Mayor of Atlantic City
1301 Bacharach Blvd., Rm. 706
Atlantic City, NJ 08401

Dear Mayor Levy:

I worked on Ringling Bros. and Barnum & Bailey Circus' animal crew from April through June 2006. I grew up around horses, and when I was with Ringling, I primarily cared for the horses and miniature horses. My duties included feeding, watering, cleaning, and grooming the horses; setting up the compounds; and escorting animals on the animal walk. I quit the circus because the animal abuse was too upsetting. The abuse didn't occur every once in a while; it occurred every day. Witnessing this abuse was traumatic and left me a nervous wreck.

One incident I will never forget happened during our two-week layover at the Tulsa, Okla., fairgrounds. I observed Ringling's head elephant trainer as he tried to make the elephants lie on their bellies and put up their trunks. One elephant was distressed and kept getting up. He smacked her with a sharp metal bullhook repeatedly behind the ear and on the leg. He hooked her behind the ear, holding the bullhook with both hands, and pulled with all his body weight. When the elephant still did not go down, he then swung the bullhook into the elephant's ear canal like a baseball bat and—grasping the bullhook handle with both hands—again pulled down with all his weight. This incident lasted for approximately 30 to 45 minutes, resulting in severe wounds. The elephant bled profusely from inside her ear and from behind her earflap. Blood was covering the whole side of her face. She squealed in pain three or four times and let out a loud, shrill shriek.

It is not just one bad trainer or handler; it's Ringling's culture. Handlers are taught to keep the animals afraid. Instead of reprimanding abusers, management warned handlers not to punish animals in view of the public. When I voiced concerns to Ringling management, I was either ignored or told, "If you don't like it, pack your bags." What few laws exist are not protecting these animals from inhumane treatment. The circus always knows in advance when it is being inspected, and authorities only spend a few minutes on what is basically a guided tour.

Whenever the public is not around, the elephants are chained. The animal crew is not allowed to carry cameras because Ringling does not want photos circulating of the elephants while they are chained in the boxcars and at arenas. I have seen horses beaten with leads and slugged in the face and elephants abusively hooked. I have seen many bloody wounds and elephants limp in pain. I urge you to do everything in your power to protect animals from this abuse. Banning bullhooks and chains in Atlantic City would bring an end to the mistreatment that I witnessed on a daily basis but was powerless to stop.

Sincerely,

Archele Hundley

Enclosure: USDA affidavit

« Previous    Next »


Sign Up
for E-News


Join Our
Activist
Network


Forward to
a Friend

Back to Top ↑

I   Printer-Friendly   I   E-Mail This Page   I   Subsc

**About PETA    Donate Now    Privacy Policy    Disclaimer    Pr**

PEOPLE FOR THE ETHICAL TREATMENT OF ANIMA
501 FRONT ST, NORFOLK, VA 23510; 757-622-PE

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

FELD ENTERTAINMENT, INC.    :
    :
    Plaintiff,    :
    :
v.    :   Case No.
    :
PEOPLE FOR THE ETHICAL    :
TREATMENT OF ANIMALS,    :
    :
    Defendant.    :
    :

**FELD ENTERTAINMENT'S MOTION TO COMPEL DOCUMENTS SUBPOENAED FROM PETA**

# EXHIBIT 12

2:## PM
09/17/07
Cash Basis

**The Wildlife Advocacy Project**
**Transaction Detail By Account**
**All Transactions**

| Type | Date | Num | Name | Memo | Class | Split | Paid Amount |
|---|---|---|---|---|---|---|---|
| Deposit | 11/9/2000 | | GLASER FAMILY FOUNDATION | excess grant allocated to Elephants | Elephants | CASH - WILDLIFE ADVO... | 1,990.31 |
| Deposit | 1/26/2001 | | ASPCA | Grant from ASPCA to WAP for Tom Rider | Elephants | CASH - WILDLIFE ADVO... | 6,000.00 |
| Deposit | 7/16/2003 | 1938 | | | Elephants | CASH - WILDLIFE ADVO... | 5,000.00 |
| Deposit | 11/24/2003 | 2096 | | | Elephants | CASH - WILDLIFE ADVO... | 100.00 |
| Deposit | 11/24/2003 | 261 | | | Elephants | CASH - WILDLIFE ADVO... | 25.00 |
| Deposit | 11/24/2003 | 3807 | | | Elephants | CASH - WILDLIFE ADVO... | 50.00 |
| Deposit | 11/24/2003 | 2239 | | | Elephants | CASH - WILDLIFE ADVO... | 50.00 |
| Deposit | 12/9/2003 | cash | | | Elephants | CASH - WILDLIFE ADVO... | 5.00 |
| Deposit | 12/9/2003 | 2404 | | | Elephants | CASH - WILDLIFE ADVO... | 5.00 |
| Deposit | 12/9/2003 | 2487 | | | Elephants | CASH - WILDLIFE ADVO... | 5,000.00 |
| Deposit | 12/9/2003 | 2487 | | | Elephants | CASH - WILDLIFE ADVO... | 25.00 |
| Deposit | 12/9/2003 | 658 | | | Elephants | CASH - WILDLIFE ADVO... | 50.00 |
| Deposit | 12/9/2003 | 1187 | | | Elephants | CASH - WILDLIFE ADVO... | 50.00 |
| Deposit | 12/9/2003 | 136 | | | Elephants | CASH - WILDLIFE ADVO... | 10.00 |
| Deposit | 12/15/2003 | | African Elephant Conservation Trust | Tom Rider contributions | Elephants | CASH - WILDLIFE ADVO... | 3,000.00 |
| Deposit | 12/15/2003 | | | Tom Rider contribution | Elephants | CASH - WILDLIFE ADVO... | 50.00 |
| Deposit | 12/15/2003 | | | Tom Rider contribution | Elephants | CASH - WILDLIFE ADVO... | 100.00 |
| Deposit | 1/6/2004 | 4347 | Deposit | | Elephants | CASH - WILDLIFE ADVO... | 15.00 |
| Deposit | 2/17/2004 | 6411 | Deposit | From ___ for Tom | Elephants | CASH - WILDLIFE ADVO... | 20.00 |
| Deposit | 2/19/2004 | | Deposit | Grant from AWI for Elephant Education – Tom Rider | Elephants | CASH - WILDLIFE ADVO... | 2,500.00 |
| Deposit | 3/1/2004 | | Deposit | Grant from AWI for Elephants - Tom Rider | Elephants | CASH - WILDLIFE ADVO... | 0.00 |
| Deposit | 4/2/2004 | | Deposit | Tom Rider donation - ___ | Elephants | CASH - WILDLIFE ADVO... | 20.00 |
| Deposit | 6/2/2004 | | Deposit | | Elephants | CASH - WILDLIFE ADVO... | 20.00 |
| Deposit | 6/2/2004 | | Deposit | Donation from ___ | Elephants | CASH - WILDLIFE ADVO... | 20.00 |
| Deposit | 6/2/2004 | | Deposit | Donation from ___ for Tom Rider | Elephants | CASH - WILDLIFE ADVO... | 5,000.00 |
| Deposit | 7/8/2004 | | Deposit | Check #2001 | Elephants | CASH - WILDLIFE ADVO... | 20.00 |
| Deposit | 8/2/2004 | | Deposit | ___ for Tom Rider | Elephants | CASH - WILDLIFE ADVO... | 20.00 |
| Deposit | 8/10/2004 | 2888 | Deposit | donation for Tom Rider & the Elephants | Elephants | CASH - WILDLIFE ADVO... | 5,000.00 |
| Deposit | 9/9/2004 | | Deposit | From ___ contribution for Elephant-media | Elephants | CASH - WILDLIFE ADVO... | 20.00 |
| Deposit | 10/6/2004 | | Deposit | Donation from AWI - Cathy Liss | Elephants | CASH - WILDLIFE ADVO... | 1,500.00 |
| Deposit | 10/12/2004 | | Deposit | ___ donation 9/30/04 | Elephants | CASH - WILDLIFE ADVO... | 20.00 |
| Deposit | 11/22/2004 | | Deposit | check from PETA | Elephants | CASH - WILDLIFE ADVO... | 2,000.00 |
| Deposit | 11/24/2004 | Deposit | Deposit | ___ donation | Elephants | CASH - WILDLIFE ADVO... | 20.00 |
| Deposit | 12/1/2004 | 2900 | Deposit | AWI donation to T.Rider | Elephants | CASH - WILDLIFE ADVO... | 1,500.00 |
| Deposit | 12/16/2004 | | Deposit | From ___ | Elephants | CASH - WILDLIFE ADVO... | 20.00 |
| Deposit | 1/19/2005 | deposit | Deposit | Elephant media donation | Elephants | CASH - WILDLIFE ADVO... | 5,000.00 |
| Deposit | 2/3/2005 | | Deposit | | Elephants | CASH - WILDLIFE ADVO... | 20.00 |
| Deposit | 3/9/2005 | | Deposit | ___ for T. Rider | Elephants | CASH - WILDLIFE ADVO... | 20.00 |
| Deposit | 3/9/2005 | | Deposit | | Elephants | CASH - WILDLIFE ADVO... | 20.00 |
| Deposit | 3/13/05-06 | | Deposit | AWI | Elephants | CASH - WILDLIFE ADVO... | 20.00 |
| Deposit | 4/4/2005 | | Deposit | Contribution from HSUS to Elephant media campaign | Elephants | CASH - WILDLIFE ADVO... | 1,500.00 |
| Deposit | 4/4/2005 | | Deposit | AWI donation for Tom Rider | Elephants | CASH - WILDLIFE ADVO... | 500.00 |
| Deposit | 4/12/2005 | | Deposit | | Elephants | CASH - WILDLIFE ADVO... | 3,500.00 |
| Deposit | 4/18/2005 | | Deposit | From ___ rental car for T.Rider | Elephants | CASH - WILDLIFE ADVO... | 5,000.00 |
| Deposit | 5/10/2005 | | Deposit | Donation from HSUS | Elephants | CASH - WILDLIFE ADVO... | 2,000.00 |
| General Journal | 6/27/2006 | tran grant$ | | transfer funds to Elephants media | Elephants | HAWLEY-ENVIRON ACT... | 20.00 |
| Deposit | 6/15/2006 | | Deposit | Donation from HSUS for media in Elephants | Elephants | HAWLEY-ENVIRON ACT... | 2,500.00 |
| Deposit | 6/15/2006 | | Deposit | Donation from ___ | Elephants | CASH - WILDLIFE ADVO... | 3,000.00 |
| Deposit | 7/13/2005 | | Deposit | Elephants | Elephants | CASH - WILDLIFE ADVO... | 20.00 |
| General Journal | 7/25/2005 | Tran grant$ | | transfer funds to Elephant media | Elephants | HAWLEY-ENVIRON ACT... | 20.00 |
| Deposit | 8/18/2005 | | Deposit | ___ contribution | Elephants | CASH - WILDLIFE ADVO... | 2,500.00 |
| General Journal | 8/22/2005 | Tran grant$ | | transfer funds into Elephant media | Elephants | HAWLEY-ENVIRON ACT... | 20.00 |
| Deposit | 9/12/2005 | | Deposit | | Elephants | CASH - WILDLIFE ADVO... | 2,500.00 |
| General Journal | 9/20/2005 | Transfer$ | | Transfer funds to Elephant media | Elephants | HAWLEY-ENVIRON ACT... | 500.00 |

**5:48 PM**
**09/17/07**
**Cash Basis**

## The Wildlife Advocacy Project
### Transaction Detail By Account
### All Transactions

| Type | Date | Num | Name | Memo | Class | Split | Paid Amount |
|---|---|---|---|---|---|---|---|
| General Journal | 10/3/2005 | Transfers | | Transfer funds to Elephant media | Elephants | HAWLEY-ENVIRON ACT... | 500.00 |
| General Journal | 10/6/2005 | Transfers | | Transfer funds to Elephant media | Elephants | HAWLEY-ENVIRON ACT... | 500.00 |
| Deposit | 10/7/2005 | | | AWI - From fundraiser in LA | Elephants | CASH - WILDLIFE ADVO... | 20.00 |
| Deposit | 11/16/2005 | | | AWI - From fundraiser - Elephant | Elephants | CASH - WILDLIFE ADVO... | 8,000.00 |
| Deposit | 11/23/2005 | | | Grant $ from AWI (from Fundraiser in CA) | Elephants | CASH - WILDLIFE ADVO... | 20.00 |
| Deposit | 11/23/2005 | | | Reimbursement from cell phone | Elephants | CASH - WILDLIFE ADVO... | 5,427.57 |
| Deposit | 12/20/2006 | | | donation | Elephants | CASH - WILDLIFE ADVO... | 145.27 |
| Deposit | 1/18/2006 | | | | Elephants | CASH - WILDLIFE ADVO... | 20.00 |
| Deposit | 2/6/2006 | | | for Tom | Elephants | CASH - WILDLIFE ADVO... | 20.00 |
| Deposit | 3/1/2006 | | | AWI contribution | Elephants | CASH - WILDLIFE ADVO... | 20.00 |
| Deposit | 3/20/2006 | | | | Elephants | CASH - WILDLIFE ADVO... | 20.00 |
| General Journal | 3/24/2006 | | | AWI Contribution | Elephants | CASH - WILDLIFE ADVO... | 2,000.00 |
| Deposit | 4/7/2006 | | | transfer funds to Elephant media | Elephants | CASH - WILDLIFE ADVO... | 2,000.00 |
| Deposit | 4/20/2006 | | | AWI Contribution | Elephants | CASH - WILDLIFE ADVO... | 1,000.00 |
| Deposit | 4/20/2006 | 103542 | | contribution | Elephants | HAWLEY-ENVIRON ACT... | 20.00 |
| Deposit | 4/24/2006 | 32759 | | Donation from HSUS | Elephants | CASH - WILDLIFE ADVO... | 2,000.00 |
| Deposit | 4/24/2006 | 3313 | | Donation from API | Elephants | CASH - WILDLIFE ADVO... | 3,000.00 |
| Deposit | 6/19/2006 | 2310 | | | Elephants | CASH - WILDLIFE ADVO... | 20.00 |
| Deposit | 6/19/2006 | | | - June 08 | Elephants | CASH - WILDLIFE ADVO... | 20.00 |
| Deposit | 6/27/2006 | | | Donation from AWI | Elephants | CASH - WILDLIFE ADVO... | 1,000.00 |
| Deposit | 7/17/2006 | | | Donation from AWI | Elephants | CASH - WILDLIFE ADVO... | 2,000.00 |
| Deposit | 7/17/2006 | | | AWI contribution to Media | Elephants | CASH - WILDLIFE ADVO... | 4,000.00 |
| Deposit | 7/19/2006 | | | -July contribution | Elephants | CASH - WILDLIFE ADVO... | 20.00 |
| Deposit | 7/27/2006 | 33039 | | AWI donation to TRider van | Elephants | CASH - WILDLIFE ADVO... | 1,902.60 |
| Deposit | 8/18/2006 | | | check from API | Elephants | CASH - WILDLIFE ADVO... | 3,361.30 |
| Deposit | 8/18/2006 | | | HSUS - elephant media | Elephants | CASH - WILDLIFE ADVO... | 2,000.00 |
| Deposit | 9/1/2006 | | | | Elephants | CASH - WILDLIFE ADVO... | 20.00 |
| General Journal | 9/28/2006 | Transfers | | transfer funds from Family to Elephant media | Elephants | PIUZE FAMILY TRUST -... | 6,000.00 |
| Deposit | 11/21/2006 | | | - 11/06 | Elephants | CASH - WILDLIFE ADVO... | 20.00 |
| Deposit | 11/21/2006 | 2820 | | AWI | Elephants | CASH - WILDLIFE ADVO... | 3,000.00 |
| Deposit | 12/15/2006 | | | | Elephants | CASH - WILDLIFE ADVO... | 20.00 |
| Deposit | 12/15/2006 | | | AWI contribution | Elephants | CASH - WILDLIFE ADVO... | 40.00 |
| Deposit | 1/4/2007 | | | API grant towards Media | Elephants | CASH - WILDLIFE ADVO... | 3,000.00 |
| Deposit | 1/18/2007 | | | | Elephants | CASH - WILDLIFE ADVO... | 20.00 |
| General Journal | 3/8/2007 | Transfers | | transfer funds from Family to Elephant media | Elephants | PIUZE FAMILY TRUST -... | 3,000.00 |
| Deposit | 3/12/2007 | | | donation | Elephants | CASH - WILDLIFE ADVO... | 20.00 |
| Deposit | 3/26/2007 | | | Grant from HSUS | Elephants | CASH - WILDLIFE ADVO... | 40.00 |
| Deposit | 4/8/2007 | | | HSUS Contribution | Elephants | CASH - WILDLIFE ADVO... | 1,000.00 |
| Deposit | 4/8/2007 | | | - March 2007 | Elephants | CASH - WILDLIFE ADVO... | 2,500.00 |
| Deposit | 5/17/2007 | | | AWI Contribution | Elephants | CASH - WILDLIFE ADVO... | 2,000.00 |
| Deposit | 5/17/2007 | | | AWI contribution | Elephants | CASH - WILDLIFE ADVO... | 20.00 |
| Deposit | 5/25/2007 | | | API donation | Elephants | CASH - WILDLIFE ADVO... | 6,000.00 |
| Deposit | 6/27/2007 | | | - May 2007 | Elephants | CASH - WILDLIFE ADVO... | 20.00 |
| Deposit | 7/23/2007 | | | | Elephants | CASH - WILDLIFE ADVO... | 3,000.00 |
| Deposit | 8/4/2007 | | | | Elephants | CASH - WILDLIFE ADVO... | 20.00 |
| Deposit | 9/12/2007 | | | | Elephants | CASH - WILDLIFE ADVO... | 20.00 |
| Deposit | 9/12/2007 | | | AWI contribution | Elephants | CASH - WILDLIFE ADVO... | 20.00 |
| | | | | | | | 3,000.00 |
| **Total** | | | | | | | **140,327.05** |

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

FELD ENTERTAINMENT, INC.          :
                                  :
          Plaintiff,              :
                                  :
     v.                           :     Case No.
                                  :
PEOPLE FOR THE ETHICAL            :
TREATMENT OF ANIMALS,             :
                                  :
          Defendant.              :
_____ :

## FELD ENTERTAINMENT'S MOTION TO COMPEL DOCUMENTS SUBPOENAED FROM PETA

# EXHIBIT 13

# Meyer & Glitzenstein

1601 Connecticut Ave., N.W.
Suite 700
Washington, DC 20009
(202) 588-5206

American Society for the Prevention
of Cruelty to Animals
Attn: Lisa Weisberg
424 E.92nd Street
New York, NY 10128

July 20, 2001

Invoice # 3819
In reference to: Ringling Brothers Elephants

**Professional services:**

| | Hours |
|---|---|
| Shared Expense | |



Redacted - Non Responsive

**Additional charges:**

Shared Expense

Redacted - Non Responsive

- Tom Rider travel expenses $1,100.00.                                    600.00
  ($600.00 to be shared between ASPCA, AWI, and The Fund. Remaining
  $500.00 to be paid by The Fund).

AWI 09934

American Society for the Preve... on
July 20, 2001



Redacted - Non Responsive

AWI 09935

# Meyer & Glitzenstein

1601 Connecticut Ave., N.W.
Suite 700
Washington, DC 20009
(202) 588-5206

Animal Welfare Institute
Attn: Cathy Liss
1686 34th Street, N.W.
Washington, DC 20007

September 27, 2001

Invoice # 3942
In reference to: Ringling Brothers

**Professional services:**

Hours



Redacted - Non Responsive

AWI 09938

American Society for the Prevention
September 27, 2001                                                                                    Page      2

**Additional charges:**

Amount

Shared Expense _____

Redacted - Non Responsive

  - Wire transfer fee for $500.00 wire to Tom Rider on 8/16/01                53.00
  - Fee for wire transfer on 8/30/01 - to be divided by all 3 groups            53.00


SUBTOTAL:                                                                           Redacted - Non Responsive

Special Expense _____

- Wire transfer to Tom Rider to be paid by ASPCA                                       500.00
- Wire transfer to Tom Rider on 8/16/01 to be paid by ASPCA                            500.00
- Wire $500.00 to Tom Rider on 8/30/01.  ASPCA to pay this wire transfer               500.00


SUBTOTAL:                                                                            [ 1,500.00]



Redacted - Non Responsive

AWI 09939



# Meyer & Glitzenstein

1601 Connecticut Ave., N.W.
Suite 700
Washington, DC 20009
(202) 588-5206

American Society for the Prevention
of Cruelty to Animals
Attn: Lisa Weisberg
424 E.92nd Street
New York, NY 10128

January 3, 2002

Invoice # 4070
In reference to: Ringling Brothers Elephants Appeal

**Professional services:**



Redacted - Non-Responsive

**Additional charges:**

Shared Expense

Redacted - Non-Responsive
- $500.00 (w/fee $553.00) Wire transfer to Tom Rider on 11/5/01        553.00

Redacted - Non-Responsive

- Wire transfer to Tom Rider in Redwood City, CA.  $500.00 + $49.00        549.00
  transaction fee.



Redacted - Non-Responsive

F 04509



American Society for the Prevention
January 3, 2002



Redacted - Non-Responsive

LAW OFFICES
## HIRSCHKOP & ASSOCIATES, P.C.

PHILIP J. HIRSCHKOP
VA, D.C. & NY BARS

908 KING STREET, SUITE 200
ALEXANDRIA, VIRGINIA  22314-3013

WASHINGTON OFFICE
1920 N STREET, N.W, SUITE 300.
WASHINGTON, D.C.  20036-1622

(703) 836-6595 & (703) 836-5555
FAX (703) 548-3181

November 20, 2007

***VIA FIRST CLASS MAIL AND FACSIMILE (202) 662-4643***
George A. Gasper, Esquire
FULBRIGHT & JAWORSKI LLP
801 Pennsylvania Avenue, N.W.
Washington, D.C.   20004-2623

RE:   *ASPCA v. Feld Entertainment*
Subpoena *duces tecum* to PeTA

Dear Mr. Gasper:

Your letter faxed late on November 15 was directed to me on Friday, November 16th, but I have had no chance to delve into the extensive factual claims or disputes that it addresses. It is five weeks since I wrote to you on October 10th, and your reply coming to me, basically on Thanksgiving week when I will be with my family and grandchildren, makes it impossible to adequately look into these matters and respond by the day before Thanksgiving deadline that you set in your letter. I will contact you after the holiday to see if we can resolve these matters, but I feel I must first consult with plaintiff's counsel, to whom you did not send a copy of your letter. It would be irresponsible of me to just accept your position as to what is the status of the various issues.

I would like to clear up something which may help short-circuit this whole matter, or at least seriously narrow the issues. You state in Paragraph 2 that "FEI's subpoena is narrowly focused upon documents relating to the credibility of parties or witnesses in the underlying litigation . . . ." If the subpoena was limited to that, a search could be made for those documents and we would deal with that probably in a much more expedited basis. However, you include in that very same sentence, "or upon evidence in PeTA's possession that would refute plaintiffs' allegations of animal abuse." It seems that you are trying to discover anything PeTA has about animal abuse against Feld Entertainment. That is not a narrowly-focused subpoena. I doubt PeTA would have anything refuting the claims of the plaintiffs in your case, because it is PeTA's position that FEI does abuse their animals and that the suit is completely correct. If you could explain to me how that latter request is narrowly focused, perhaps we could get some more progress with this. In that same paragraph, you also discuss that you are only looking for


EXHIBIT
4

George A. Gasper, Esquire
Page 2
November 20, 2007

documents pertaining to a handful of individuals, and then limit it to documents that also concern individuals such as Archele Hundley and Tom Rider. I could use some clarification on this paragraph with regard to the very broad phrase in the first sentence about "allegations of animal abuse."

As indicated, I haven't been able to fully review or investigate the issues in your letter, and cannot give you a full reply at the present time, but we certainly take exception to some of your statements, including the completely false allegation that "PeTA went to great lengths to avoid service of FEI's subpoena." As I recall, PeTA accepted service. When the process server originally went to PeTA on a Friday, the person to be served by law was traveling and had to be consulted to accept service. PeTA immediately contacted me. I recalled there was a prior Ringling subpoena from Covington & Burling and it seemed to overlap to some degree. I had to pull the old files to determine what this was really about and secure authority to accept service. PeTA then voluntarily accepted the subpoena within several days of being contacted and I called you. It is particularly ironic that you raise this where PeTA accepted the subpoena in several days from notice, but it took four months to serve a lawsuit on Mr. Feld in Virginia. I don't know what disputes you are having with plaintiffs' counsel, but your hyperbole about PeTA going to "great lengths" to avoid service is an unnecessary invective and we need not get into those kind of matters, if you are going to try to realistically resolve the subpoena.

Again, given the timing of your letter to me in response to my letter to you of five weeks ago, I shall get back to you as soon as I can.

Very truly yours,

PHILIP J. HIRSCHKOP

PJH:er
cc:    Kathryn Meyer, Esquire
       Jeffrey S. Kerr, Esquire

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMERICAN SOCIETY FOR THE PREVENTION :
      OF CRUELTY TO ANIMALS,      :
FUND FOR ANIMALS,      :
ANIMAL WELFARE INSTITUTE,      :
ANIMAL PROTECTION INSTITUTE,      :
TOM RIDER,      :    MISC. NO. _____
      :
      Plaintiffs      :    **[RELATED TO:**
      :    **Civ. No. 03-02006 (EGS/JMF)]**
v.      :
      :
RINGLING BROS. AND BARNUM & BAILEY  :
      CIRCUS,      :
FELD ENTERTAINMENT, INC.,      :
      :
      Defendants      :

## ORDER

THIS MATTER came before the Court upon nonparty People for the Ethical Treatment of Animals' ("PeTA") Motion for Protective Order Regarding Defendant Feld Entertainment's Subpoena to PeTA, and the Court having considered the matter, it is hereby

ORDERED that the subpoena *duces tecum* dated September 20, 2007 served upon PeTA by defendant Feld Entertainment is beyond the scope of this Court's rulings and is hereby quashed. It is further

ORDERED that defendant Feld Entertainment is ordered to discontinue and withdraw its Motion to Compel Documents Subpoenaed from PeTA filed in the United States District Court, Eastern District of Virginia, Norfolk Division.

ENTERED this _____ day of February, 2008.


_____
JUDGE, United States District Court