UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS | : | |
| | : | |
| v. | : | Misc. Case:  1:08-mc-00069 (EGS) |
| | : | |
| FELD ENTERTAINMENT, INC. | : | |

-------------------------------------------------------

Related Case No.  03-2006 (EGS/JMF)

| | | |
|---|---|---|
| AMERICAN SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| FELD ENTERTAINMENT, INC., | : | |
| | : | |
| Defendant. | : | |

## RESPONSE IN OPPOSITION TO PETA'S MOTION FOR PROTECTIVE ORDER

Defendant Feld Entertainment, Inc. ("FEI") hereby responds in opposition to PETA's Motion for Protective Order Regarding Defendant Feld Entertainment's Subpoena to PETA (2/8/08) ("Motion").  As grounds therefore, FEI states as follows:

### INTRODUCTION

For over five months now, People for the Ethical Treatment of Animals ("PETA") has managed to delay and avoid making complete production pursuant to the document subpoena that Defendant Feld Entertainment, Inc. ("FEI") issued out of the United States District Court for the Eastern District of Virginia and served on PETA.  PETA was served at its headquarters in Norfolk, Virginia with FEI's subpoena on September 21, 2007.  At no time since the service of

60051555

1

that subpoena did PETA ever complain or object to the subpoena issuing from the Eastern District, nor did PETA ever offer to accept or ask FEI to re-issue the subpoena out of the District of Columbia.  Now that FEI has filed a motion to compel, however, PETA has responded as if FEI were seeking the production of materials from the Manhattan Project rather than videotapes and documents related to this case.  To date, PETA has proliferated the motions practice over a simple document subpoena by filing dual-tracked motions in two federal courts, writing a letter directly to Judges Sullivan and Facciola demanding an expedited hearing or status conference over a document subpoena, filing not one but *two* oppositions to a motion for extension of time, and resorting, without any leave of or permission from the Court, to self-proclaim and purport to set oral arguments on March 6.

All of this hyperbolic posturing is entirely unnecessary, and FEI's counsel believes that it has been done for several reasons that have nothing to do with the underlying subpoena:  (1) PETA is desperate to avoid its home forum; (2) PETA is acting in concert with and trying to assist plaintiffs' counsel in their issuance of sham subpoenae on PETA, see Plaintiffs' Motion to Compel Compliance with a Third Party Subpoena Served on People for the Ethical Treatment of Animals (2/15/08), ASPCA, et al. v. Feld Entertainment, Inc., Civ. Action No. 03-2006 ("ASPCA case") (Docket No. 260); and (3) PETA is harassing FEI by papering the file and trying to disparage FEI and its counsel.  Having litigated directly against PETA and its counsel for years, however, the undersigned are familiar with PETA's futile tactics.  The Motion is without merit and should be denied.

## BACKGROUND

Not surprisingly, FEI does not agree with PETA's version of events. PETA did not exactly "agree to accept service." (Motion at 2). Rather, PETA avoided service for several days until it apparently finally realized that the process server was not going to give up. Thus, when FEI first issued the subpoena to PETA, it had a return date of September 28, 2007. Ex. 1, PETA Subpoena Issued on 9/13/07. The process server went to PETA's headquarters **three** separate times trying to serve this subpoena before PETA then advised the process server of when PETA would make somebody available to accept service. See Ex. 2, Gasper Decl. ¶¶ 1-5.[1] Because of this run-around, FEI had to re-issue the subpoena with a revised return date. Id. at 6; Ex. 3, PETA Subpoena Re-Issued on 9/20/07. Given PETA's lack of cooperation, it was clear to FEI that PETA would not have responded to anything other than a subpoena arising from the jurisdiction that has absolute control over PETA to enforce it, i.e., the Eastern District of Virginia where PETA is headquartered and where the subpoenaed materials are found.

Ironically, PETA now retroactively criticizes FEI for what it incorrectly perceives as "delay" during October. This adds nothing to the analysis at hand: FEI could just as easily say that PETA should have been using that time to prepare its documents and videos for production. What PETA omits from its brief, but what this Court is familiar with, is that at the time FEI had filed a motion with this Court to make the scope of discovery comport with the summary judgment rulings in the ASPCA case. See Motion for a Protective Order and Expedited Briefing Schedule (10/31/07), ASPCA case, (Docket No. 216) (requesting an order terminating discovery pertaining to, *inter alia*, the Red Unit). This motion was stricken by the Court for failure to obtain leave prior to filing. See Order (11/5/07), ASPCA case, (Docket No. 221). Later, once

---

[1]    As an entity with a registered agent for service of process, it is not entirely clear how that registered agent is "unavailable" for service and also able to dictate to a process server if and when it will materialize to be served.

leave was granted at the November 20, 2007 status conference, FEI again filed a brief seeking limitations on the scope of discovery in accordance with the summary judgment rulings in this case. See Ex. 4, Notice of Points and Authorities Regarding the Scope of Further Discovery in This Case (11/30/07), ASPCA case, (Docket No. 230).

Specifically, FEI asked that discovery related to anything other than the Blue Unit or CEC not be had. See id. This motion was denied, and FEI had to proceed with discovery on Red Unit employees and other elephants. Indeed, FEI had to depose four former employees of its Red Unit, including Archele Hundley, Robert Tom and Margaret Tom, because plaintiffs demanded, and the Court agreed, that the scope of discovery include them. See Ex. 5, Order Regarding Discovery ¶ 2 (12/18/07), ASPCA case, (Docket No. 239). Thus, PETA's current complaint that the subpoena is "outrageous" and "abusive" because it seeks material related to Archele Hundley, Robert Tom, Margaret Tom (whom PETA has also used for legislative purposes), and is not limited to the Blue Unit is utterly without merit. See Motion at 4. FEI is not "circumventing" this Court's prior orders. To the contrary, the subpoena tracks the rulings of this Court on the scope of discovery. See 12/18/07 Order ¶ 2.

It was also at that November 20, 2007 status hearing that FEI's counsel advised the Court that it was having a discovery dispute with PETA over a subpoena that issued out of the Eastern District of Virginia, and that FEI likely would be forced to file a motion to compel compliance with that subpoena. See Ex. 6, Hearing Tr. at 30 (11/20/07) ("[T]he subpoena hearkens out of the Norfolk Division, so if it comes to that we'll have to go down there and deal with it … ."). Thus, while PETA whines about alleged "judge-shopping" by FEI in order to avoid "this Court's prior rulings," (Motion at 2, 8), it is clear that FEI was entirely forthright with this Court about the necessity of having to proceed against PETA in Virginia. There was nothing untoward about

FEI's adherence to the Federal Rules of Civil Procedure, Rules 45(a)(2)(C) and 37(a)(2) to be precise. The only "judge-shopping" (or judge avoidance) that has occurred here has been by PETA. While PETA seems to have a burning desire to flee from its home jurisdiction over this subpoena dispute, FEI has simply followed the procedural rules for taking evidence located outside of the trial court's district.

Similarly, PETA complains that the subpoena also seeks discovery regarding another former FEI employee named Frank Hagan. See Motion at 5. Documents related to Mr. Hagan were the subject of an earlier subpoena that FEI had served on PETA. See Ex. 7, Hagan Subpoena. PETA produced only redacted documents. Current counsel has conferred with FEI's prior counsel, and the subpoena was not "amicably resolved" nor were the redactions made with "agreement of FEI's then-counsel" as PETA claims. Cf. Motion at 5. Furthermore, FEI's current counsel has checked the case files and can find no such correspondence on this issue to corroborate PETA's retroactive version of events. PETA attaches nothing to its Motion to support this claim. Likewise, we are not aware of any rule of law that terminates discovery on an individual in the event of death, and PETA cites no authority (nor could it) for this far-out notion. Such a rule of law would surely come as a great surprise to the torts bar.

Finally, the Court should know that Mr. Hagan was not just any former employee of FEI. He never worked with elephants, yet somehow wound up with PETA making claims about elephants. FEI's counsel has independent evidence indicating to us that he was simply a pawn to PETA, who was either paid or promised payment to tout PETA's line regarding elephants even though he did not have such personal knowledge. Mr. Hagan was not only a witness who was deposed on behalf of plaintiffs in the ASPCA case but he also filed (and then non-suited) a separate employment lawsuit against FEI in Virginia. Remarkably, PETA now indicates that it

no longer has the Hagan documents: "Regardless, those documents no longer exist." (Motion at 5). On what grounds PETA thought it had the right to discard the originals of documents that it produced in only redacted form pursuant to subpoena is unclear, and indeed, PETA glosses over this without identifying any legal basis for its conduct. This sudden revelation, which FEI is now hearing about for the first time, is more appropriately addressed by the court in the Eastern District, which has uncontested jurisdiction over PETA and is quite capable of determining what the implications of such spoliation are.

While PETA claims it seeks a "protective order," its Motion offers precious little on the issues that normally would be addressed in such a motion. Thus, while PETA suggests that the subpoena is overly broad and burdensome, PETA does not provide any evidence of why this is so. PETA does not submit an affidavit or any other proof to support the apparent claim that it cannot comply with FEI's subpoena.

PETA protests loudly that it must produce its videotapes of Ringling's circus, but it does not tell the Court what kind of tapes it has. (Motion at 3-4). For example, PETA has had videographers following and taping the Red Unit animal walks for the last few years. FEI does not just walk elephants from the train to the venue – it also walks other animals. PETA has mastered the art of selectively, and from FEI's perspective, misleadingly editing video footage. One need only visit their website to see this. Thus, FEI wants the complete unedited footage of anything relating to its elephants regardless of whether that footage may also contain some other animals. This is precisely what FEI has had to do with its own videos – produce all footage of anything that may contain an elephant notwithstanding that other animals may appear in the footage. That this footage "of countless hours of elephants does not show abuse" is precisely why FEI wants it. (Cf. Motion at 7-8). Moreover, both Nicole Paquette (API) and Tracy

Silverman (AWI) have indicated that they are in contact with PETA, and indeed, plaintiffs have produced selective videos taken by PETA in the ASPCA case. If plaintiffs can have access to PETA's videos, then FEI has the right to the same also.

Finally, PETA claims FEI's motion to compel that was filed in Norfolk on January 28, 2008 is untimely. This is false. The discovery cutoff as set by the Court was January 30, 2008. See 12/18/07 Order ¶ 5. While PETA was clearly hoping that FEI would let that date lapse without acting on the subpoena, FEI was not so inclined. PETA also neglects to mention to this Court that FEI wrote to PETA on December 18, 2007 and stated it would begin by reviewing the videos that had been provided to plaintiffs. PETA never bothered to respond to this letter, yet it now feigns indignation and "outrage" that FEI filed its motion to compel rather than sending PETA even more letters for PETA to ignore. Compare Motion at 7 with Ex. 8, Gasper Letter to Hirschkop (12/18/07).

The only timing that this Court needs to be concerned with is the sequence of events that led to PETA's newly proclaimed desire to submit to the jurisdiction of this Court. During the months of correspondence with FEI, PETA failed to make any objection to FEI's issuance of the subpoena out of the Eastern District of Virginia, and in so doing, it has waived any such objection. 9A Wright & Miller, Federal Practice & Procedure, Civil 3d § 2463 (2008) ("A failure to object within the fourteen day period usually results in waiver of the contested issue."); see also In re DG Acquisition Corp. v. Dabah, 151 F.3d 75, 81 (2d Cir. 1998) ("We believe that Rule 45(c)(2)(B) does require the recipient of a subpoena to raise all objections at once, rather than in staggered batches so that discovery does not become a 'game.'") ("[W]e think it is clear that Rule 45 contemplates assertion of all objections to document production within 14 days . . . ."). See also Fed.R.Civ.P. 45(c)(2)(B). Rather, PETA's desire to come to this District arose only

after plaintiffs' counsel issued a pair of sham subpoenae to PETA on January 23 and January 24, 2008 in a half-baked effort to obtain transcripts of deposition testimony sealed by other courts that Mr. Hirschkop – not PETA – retains. See Ex. 9, Notice of Objection to Subpoenae (1/25/08). PETA's counsel then announced in its briefing with this Court and in a telephone conference with FEI's Norfolk counsel that the motion to compel should be transferred on grounds of forum *non conveniens*. See Motion at 10 n.3. Just this afternoon, PETA has now filed yet its third round of motions, the latest being a Motion in the Alternative to Transfer This Matter for Forum *Non Conveniens* with the Eastern District. Suffice it to say that when the motion has been filed in a court that is *less than 1 mile away* from PETA's headquarters and the documents are located there, this proposition is not persuasive.

## LEGAL ARGUMENT

Since PETA's Motion is factually and legally lacking, PETA resorts instead to disparaging FEI's counsel and claiming that this Court "has also had occasion to criticize FEI counsel's conduct." (Motion at 6-7). The accusation is unfounded. FEI's counsel has proceeded diligently and professionally throughout this case. While plaintiffs, and now PETA, clearly do not like the fact that FEI is bothering to defend this case by taking the discovery it needs, there is no basis for the hollow attacks PETA makes. Indeed, we have litigated against PETA long enough to know that the louder they scream, the more likely it is that we are on to something valid – a suspicion that PETA's fomenting over a simple document subpoena confirms.

PETA relies upon In re Sealed Case, 141 F.3d 337 (D.C. Cir. 1998) to claim that the Court "clearly has jurisdiction to grant this motion." (Motion). Yet the Motion is not entirely clear as to what it seeks. This Court, the trial court, has no jurisdiction to quash the Eastern District court's subpoena to PETA. Any motion to quash or modify the subpoena must be

brought in the Eastern District of Virginia, which is the issuing court.  Id. at 341; 9A Wright &

Miller, Federal Practice & Procedure, Civil 3d § 2463.1 (2008) ("The 1991 amendments to 45(c)

now make it clear that motions to quash, modify, or condition the subpoena are to be made in the

district court of the district from which the subpoena issued. … It is the issuing court that has the

necessary jurisdiction over the party issuing the subpoena and the person served with it to

enforce the subpoena.").

   Nor is there any legitimate basis for PETA's attempt to interrupt the proceedings in the

Eastern District.  The Eastern District of Virginia's local rules require that a hearing be set

***within 30 days after the motion's filing or it is deemed withdrawn***.  See Ex. 10, E.D. Va. Local

Rule 7(E).  FEI filed its motion to compel on January 28, 2008 and then complied with Local

Rule 7(E) by seeking a hearing date on February 25, 2008.  See Ex. 11, Abel Letter to Clerk of

Court.  As the concurring opinion in In re Sealed Case recognizes, any transfer of a subpoena

motion must happen sparingly and only for the "extraordinary, complex case."  Transfer is not

appropriate for run-of-the-mill discovery disputes such as the type PETA raises here:

> The respondent has made no showing that the reasons cited for quashing the
> subpoena—that it is overbroad and covers information that is privileged, not
> relevant to the underlying lawsuit and sought "for improper purposes"—cannot be
> readily assessed by the [subpoena-issuing] district court here as such arguments
> routinely are.

In re Sealed Case, 141 F.3d at 343 (Henderson, J.) (concurring).  As we have previously advised

PETA's counsel, we see no reason why the Eastern District cannot adjudicate this dispute.  See

Ex. 12, Joiner Letter to Hirschkop (2/12/08).  Moreover, there have been no discovery orders in

the ASPCA case involving PETA, so the entire argument regarding FEI's supposed "desire to

create contrary rulings" is a red herring.

Simply because PETA now wants to stipulate to jurisdiction in this District does not mean that FEI must acquiesce or that this Court must bless PETA's actions. Indeed, PETA failed to object to the subpoena issuing from the Eastern District and has thus waived the objection now. Moreover, PETA was content to sit around for months and try to see if the discovery cutoff clock would run out before it had to take any action. PETA could have moved for a protective order but chose not to. As a result of PETA's conduct throughout, FEI was forced to go to the time and expense of finding Norfolk counsel who could then prosecute FEI's rights in the proper forum. FEI was the first to file. Its motion to compel was filed ten business days before PETA filed this miscellaneous action. And there is no reason to believe that PETA's miscellaneous action was anything other than a tactical counterploy that has had no effect other than to proliferate the proceedings. PETA now essentially asks this Court to ignore all of that, tell FEI to drop its Virginia action, and ship everything up to this Court so that PETA can play more games. FEI is not interested in playing any more games, expending any more money needlessly, or wasting any more time with PETA. It just wants its subpoena enforced, and this Court should decline to take any steps that would impair the Eastern District from so acting. Now that the Eastern District proceeding has been set for a hearing (on March 7),[2] it apparently has become an "emergency" for PETA to get this Court to interfere with a valid, previously filed case. The Court should decline PETA's invitation.

---

[2]    Notably, PETA has now requested that its motion to transfer also be set for hearing on March 7 in Norfolk. See Ex. 13, Plumlee Letter to Clerk of Court (2/29/08).

FEI therefore requests that the Court deny PETA's motion for protective order, and grant FEI any additional relief that it deems just and proper.

Dated this 29th day of February, 2008.

Respectfully submitted,

John M. Simpson (D.C. Bar #256412)
Joseph T. Small, Jr. (D.C. Bar #926519)
Lisa Zeiler Joiner (D.C. Bar #465210)
Michelle C. Pardo (D.C. Bar #456004)
George A. Gasper (D.C. Bar #488988)

FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 662-0200
Facsimile: (202) 662-4643

Counsel for Feld Entertainment, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PEOPLE FOR THE ETHICAL | : | |
|     TREATMENT OF ANIMALS | : | |
| | : | |
| v. | : | Misc. Case: 1:08-mc-00069 (EGS) |
| | : | |
| FELD ENTERTAINMENT, INC. | : | |

------------------------------------------------------

**Related Case No. 03-2006 (EGS/JMF)**

| | |
|---|---|
| AMERICAN SOCIETY FOR THE | : |
| PREVENTION OF CRUELTY TO | : |
| ANIMALS, et al., | : |
| | : |
|       Plaintiffs, | : |
| | : |
|     v. | : |
| | : |
| FELD ENTERTAINMENT, INC., | : |
| | : |
|       Defendant. | : |

------------------------------------------------------

### ORDER

Upon consideration of PETA's Motion for Protective Order Regarding Feld Entertainment's Subpoena to PETA, the filings related thereto, and for good cause shown, it is this _____ day of _____, 2008,

ORDERED that the Motion is DENIED.

_____
U.S. MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PEOPLE FOR THE ETHICAL | : | |
|     TREATMENT OF ANIMALS | : | |
| | : | |
| v. | : | Misc. Case:  1:08-mc-00069 (EGS) |
| | : | |
| FELD ENTERTAINMENT, INC. | : | |

-------------------------------------------------------

**Related Case No.  03-2006 (EGS/JMF)**

| | |
|---|---|
| AMERICAN SOCIETY FOR THE | : |
| PREVENTION OF CRUELTY TO | : |
| ANIMALS, <u>et al.</u>, | : |
| | : |
|        Plaintiffs, | : |
| | : |
| v. | : |
| | : |
| FELD ENTERTAINMENT, INC., | : |
| | : |
|        Defendant. | : |
| | : |

<u>**RESPONSE IN OPPOSITION TO PETA'S MOTION FOR PROTECTIVE ORDER**</u>

# EXHIBIT 1

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

| Eastern | DISTRICT OF | Virginia |
|---|---|---|

ASPCA et al.

V.

Ringling Bros. et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  03-cv-2006 (D.D.C.)

TO:  People for the Ethical Treatment of Animals
501 Front Street
Norfolk, VA 23510

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Appendix A

| PLACE     501 Front Street    Norfolk, VA 23510 | DATE AND TIME    9/28/2007 10:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)    *George Gasper (Attorney for Defendant)* | DATE    9/13/2007 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
George Gasper, Fulbright & Jaworski L.L.P.
801 Pennsylvania Avenue, N.W., Washington, DC 20004 (202-662-4504)

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO 88  (Rev. 12/06) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

**APPENDIX "A"**

**DEFINITIONS**

1.     "Animal Activist/Group" means any person or entity that advocates on behalf of animals and includes, but is not limited to, the American Society for the Prevention of Cruelty to Animals ("ASPCA") or any local or regional Society for the Prevention of Cruelty to Animals ("SPCA"), the Fund for Animals ("FFA"), the Animal Welfare Institute ("AWI"), the Performing Animal Welfare Society ("PAWS"), the Earth Liberation Front ("ELF"), the Animal Liberation Front ("ALF"), Animal Protection Institute ("API"), Captive Animals' Protection Society ("CAPS"), In Defense of Animals ("IDA"), Compassion over Killing, the Wildlife Advocacy Project ("WAP"), and any other local and/or regional grass roots group or local and/or regional animal activist organization.

2.     "Communication" means the transmittal or exchange of information of any kind in any form, including oral, written, or electronic form.

3.     "Complaint" refers to the Complaint filed by the ASPCA, AWI, FFA, and Tom Rider originally captioned as *American Society for the Prevention of Cruelty to Animals, et al. v. Ringling Bros. and Barnum & Bailey Circus et al.*, No. 03-2006 (EGS) (D.D.C.), dated September 23, 2003.

4.     "Defendant" means Feld Entertainment, Inc., any of its current or former employees, consultants, agents, attorneys, directors, other representatives, and all other persons acting under their control or on their behalf and includes the Ringling Bros. and Barnum and Bailey Circus as referred to in the Complaint.

5.     "Document" is defined to be synonymous and equal in scope to usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a), and shall include all Documents regardless of whether they exist in paper or electronic format.

A copy or duplicate of a document which has any non-conforming notes, marginal annotations, or other markings, and any preliminary version, draft, or revision of the foregoing is a separate document within the meaning of this term. Document(s) include, by way of example only, any memorandum, letter, envelope, correspondence, underline electronic mail, report, note, Post-It, message, telephone message, telephone log, diary, ledger, chart, journal, calendar, minutes, working paper, financial report, accounting report, account statement, check, work papers, teletype message, facsimile, directory, computer disk or tape, thumb or flash drive, or video or audio recording such as a tape, CD, or DVD. Document(s) also include the file, folder tabs, binders and labels appended to or containing any Documents.

6.      "Litigation" means this case, originally captioned as *American Society for the Prevention of Cruelty to Animals, et al. v. Ringling Bros. and Barnum & Bailey Circus, et al.*, No. 03-2006 (EGS) (D.D.C.), and/or its predecessor suit, captioned as *American Society for the Prevention of Cruelty to Animals, et al. v. Ringling Bros. and Barnum & Bailey Circus, et al.*, No. 00-1641 (EGS) (D.D.C.).

7.      "MGC" means the law firm of Meyer Glitzenstein & Crystal, formerly known as Meyer & Glitzenstein.

8.      "Person" means any natural persons, proprietorships, public or private corporations, partnerships, trusts, joint ventures, groups, associations, organizations, or other legal entities, including any representative of any such person or persons.

9.      "Plaintiffs" refers to the plaintiffs in the Litigation: ASPCA, FFA, AWI, API and Tom Rider.

10.     "Produce" or "Production" means to provide legible, complete, and exact copies of responsive documents to the undersigned counsel, or to make such documents available to the

undersigned counsel for inspection and reproduction. Where the document is in the form of a computer program or computer data, production should include production of the responsive information in machine-readable format along with a description of the format and any other information necessary and sufficient to permit access to and an understanding of the information.

11.   The phrase "refer, reflect, or relate to" is used as a means of requesting information or documents that constitute, comprise, consist of, contain, evidence, set forth, propose, show, disclose, describe, discuss, mention, explain, summarize, reflect, deal with, identify, analyze, demonstrate, or in any way address, involve, regard, pertain to, touch upon, affect, or concern, in whole or in part, the subject matter of the relevant request for production.

12.   "Wildlife Advocacy Project" ("WAP") refers to an organization purporting to be a non-profit advocacy group that was founded by Katherine Meyer and Eric Glitzenstein of MGC. Any reference to WAP includes, but is not limited to, any persons that are partners, associates, employees, paralegals, interns, clerks, independent contractors or otherwise associated with MGC, including but not limited to Katherine Meyer, Eric Glitzenstein and Leslie Mink, that are acting on behalf of WAP.

13.   "You" and "Your" refer to the People for the Ethical Treatment of Animals ("PETA").

14.   To the extent not otherwise defined, all words shall have their usual and ordinary meaning as the context of the sentence would indicate.

## INSTRUCTIONS

1.    All documents shall be produced in the order they are kept in the ordinary course of business, and shall be produced in their original folders, binders, covers or containers, or facsimile thereof. Documents should be produced in a manner that ensures that the source of each document can be determined. Documents attached to each other should <u>not</u> be separated.

2.    These requests relate to all documents which are in Your possession, custody or control that are responsive to one or more of the document production requests contained herein.

3.    Unless otherwise noted, these requests shall apply to the period January 1, 1996 to the present.

4.    All uses of the conjunctive include the disjunctive and vise versa. Words in the singular include the plural and vice versa. Pronouns shall be construed as gender-neutral.

5.    Each document production request shall operate and be construed independently. Unless otherwise noted, no paragraph limits the scope of any other paragraph.

6.    For each document whose production is requested, produce the entire original document, along with all attachments, appendices, and exhibits, and any copies that are not identical to the original (whether because of notes made on, or attached to, such copy or otherwise) .

7.    You shall affix to every page of every document that You produce a Bates number or other unique identifier.

8.    Documents shall be produced in such fashion as to identify the department, branch, or office in whose possession they were located and, where applicable, the natural

person in whose possession they were found and the business address of each document's custodian(s).

9.    Electronically stored information should be produced in an intelligible format or together with a sufficient description of the system or program from which it was derived to permit rendering the material intelligible. As stated above, the term "documents" specifically includes, but is not limited to, e-mail communications and other electronic records.

10.    If any document responsive to any request is withheld, in whole or in part, from production under a claim of privilege (including, without limitation, attorney-client or work-product privilege) or otherwise, please provide a list identifying for <u>each</u> such withheld document the following:

a.    the type of document (e.g., memorandum, letter, report, chart, etc.), its general subject matter (without revealing the information as to which privilege is claimed), the date of the document, and the nature and length of any attachment or appendices;

b.    all author(s), addressee(s), distributee(s), and recipient(s);

c.    the date of the document; and

d.    the nature of the privilege or protection claimed, or any other basis on which the document has been withheld.

11.    If a document responsive to these requests was at any time in Your possession, custody or control but is no longer available for production, as to each document state the following information:

a.    whether the document is missing or lost;

b.    whether the document has been destroyed;

c.      whether the document has been transferred or delivered to another person and, if so, at whose request;

d.      whether the document has been otherwise disposed of; and

e.      the circumstances surrounding the disposition of the document and the date of its disposition.

## REQUESTS FOR PRODUCTION

1.      All documents that refer, reflect, or relate to Archele Faye Hundley, including without limitation:  (a) all communications with or about Ms. Hundley; (b) all documents reflecting Ms. Hundley's statements or allegations concerning the Litigation, elephants in circuses, Defendant, and/or any current or former employee, consultant, agent, attorney, director, or other representative of Defendant; (c) all documents that reflect anything of value, whether monetary or in kind, requested by or on behalf of, given to, directed to, or made at the direction of Ms. Hundley, including consulting fees and payments and/or reimbursements for services rendered or for goods obtained/received, that were given and/or made either directly to Ms. Hundley or indirectly to Ms. Hundley through another person and/or entity, including MGC and/or WAP; (d) all documents that relate to the purpose of any payments made to, directed to, or requested by Ms. Hundley; and (e) all documents that relate to any payments received, requested, or solicited by you or on your behalf for purposes of paying Ms. Hundley, funding any activities to be undertaken by Ms. Hundley, or funding any activities relating to Defendant or any other circus, including but not limited to, IRS Forms 1099.

2.      All documents that refer, reflect, or relate to Robert Tom, Jr., including without limitation:  (a) all communications with or about Mr. Tom; (b) all documents reflecting Mr. Tom's statements or allegations concerning the Litigation, elephants in circuses, Defendant,

and/or any current or former employee, consultant, agent, attorney, director, or other representative of Defendant; (c) all documents that reflect anything of value, whether monetary or in kind, requested by or on behalf of, given to, directed to, or made at the direction of Mr. Tom, including consulting fees and payments and/or reimbursements for services rendered or for goods obtained/received, that were given and/or made either directly to Mr. Tom or indirectly to Mr. Tom through another person and/or entity, including MGC and/or WAP; (d) all documents that relate to the purpose of any payments made to, directed to, or requested by Mr. Tom; and (e) all documents that relate to any payments received, requested, or solicited by you or on your behalf for purposes of paying Mr. Tom, funding any activities to be undertaken by Mr. Tom, or funding any activities relating to Defendant or any other circus, including but not limited to, IRS Forms 1099.

3.     All documents that refer, reflect, or relate to Margaret Tom, including without limitation:  (a) all communications with or about Mrs. Tom; (b) all documents reflecting Mrs. Tom's statements or allegations concerning the Litigation, elephants in circuses, Defendant, and/or any current or former employee, consultant, agent, attorney, director, or other representative of Defendant; (c) all documents that reflect anything of value, whether monetary or in kind, requested by or on behalf of, given to, directed to, or made at the direction of Mrs. Tom, including consulting fees and payments and/or reimbursements for services rendered or for goods obtained/received, that were given and/or made either directly to Mrs. Tom or indirectly to Mrs. Tom through another person and/or entity, including MGC and/or WAP; (d) all documents that relate to the purpose of any payments made to, directed to, or requested by Mrs. Tom; and (e) all documents that relate to any payments received, requested, or solicited by you or on your behalf for purposes of paying Mrs. Tom, funding any activities to be undertaken by Mrs. Tom, or

funding any activities relating to Defendant or any other circus, including but not limited to, IRS Forms 1099.

4.    All documents that refer, reflect, or relate to any other current or former employee, consultant, agent, attorney, director, or other representative of Defendant (including but not limited to Tom Rider, Glenn Ewell, Gerald Ramos, James Stechcon, Garrison Christianson, and/or Kelly Tansy [a.k.a. Kelly Tansey]), including without limitation: (a) all communications with or about such persons; (b) all documents reflecting any such person's statements or allegations concerning the Litigation, elephants in circuses, Defendant, and/or any other current or former employee, consultant, agent, attorney, director, or other representative of Defendant; (c) all documents that reflect anything of value, whether monetary or in kind, requested by or on behalf of, given to, directed to, or made at the direction of such persons, including consulting fees and payments and/or reimbursements for services rendered or for goods obtained/received, that were given and/or made either directly to such persons or indirectly to such persons through another person and/or entity, including MGC and/or WAP; (d) all documents that relate to the purpose of any payments made to, directed to, or requested by such persons; and (e) all documents that relate to any payments received, requested, or solicited by you or on your behalf for purposes of paying such persons, funding any activities to be undertaken by such persons or funding any activities relating to Defendant or any other circus, including but not limited to, IRS Forms 1099.

5.    All documents that refer, reflect, or relate to any solicitation of or request for donations, contributions, payments and/or any thing(s) of value concerning the Litigation, elephants in circuses, Defendant, and/or any current or former employee, consultant, agent, attorney, director, or other representative of Defendant (including but not limited to Tom Rider,

Glenn Ewell, Gerald Ramos, James Stechcon, Garrison Christianson, Kelly Tansy [a.k.a. Kelly Tansey], Archele Faye Hundley, Margaret Tom and/or Robert Tom, Jr.), by: (a) Plaintiffs; (b) MGC; and (c) WAP.

6.    All pictures and video or audio recordings (such as tapes, CDs or DVDs) (in complete and unedited form) that you or anyone else has taken of anything owned by Defendant (such as its boxcars or bullhooks), of any of Defendant's animals (such as its elephants), or of anyone who has ever worked for Defendant (such as Sacha Houcke, Alex Vargas, Carrie Coleman, Tom Rider, Glenn Ewell, Gerald Ramos, James Stechcon, Garrison Christianson, Kelly Tansy [a.k.a. Kelly Tansey], Archele Faye Hundley, Margaret Tom and/or Robert Tom, Jr.).

7.    All documents provided to, or communications with, plaintiffs or their counsel (including MGC) that refer, reflect or relate to Defendant's care or treatment of its elephants at issue in the Litigation.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| PEOPLE FOR THE ETHICAL | : | |
|     TREATMENT OF ANIMALS | : | |
| | : | |
| v. | : | Misc. Case:  1:08-mc-00069 (EGS) |
| | : | |
| FELD ENTERTAINMENT, INC. | : | |

--------------------------------------------------------

**Related Case No.  03-2006 (EGS/JMF)**

| | |
|---|---|
| AMERICAN SOCIETY FOR THE | : |
| PREVENTION OF CRUELTY TO | : |
| ANIMALS, et al., | : |
| | : |
|         Plaintiffs, | : |
| | : |
|    v. | : |
| | : |
| FELD ENTERTAINMENT, INC., | : |
| | : |
|         Defendant. | : |

_____:

**RESPONSE IN OPPOSITION TO PETA'S MOTION FOR PROTECTIVE ORDER**

# EXHIBIT 2

## DECLARATION OF GEORGE A. GASPER

I, George A. Gasper, declare under oath as follows:

1.     I am counsel of record to the defendant Feld Entertainment, Inc. ("FEI") in the case ASPCA v. Feld Entertainment, Inc. (D.D.C.) (Case No. 03-cv-2006).  In connection with that litigation, I issued a subpoena to People for the Ethical Treatment of Animals ("PETA") on September 13, 2007.

2.     At my request, a process server arrived at PETA's headquarters, located at 501 Front Street in Norfolk, VA, to serve the subpoena on Friday, September 14, 2007.  I was informed, however, that PETA told the process server that PETA's legal department was in meetings all day and that no one authorized to accept service would be available that day.

3.     At my request, the process server returned again that day to PETA and then attempted to serve PETA's registered agent, which is a woman who works for PETA.  I was informed, however, that the process server was told by an HR person that no one from PETA was in that day and that she should just leave the papers at the desk.

4.     I also was informed that the process server waited at PETA's headquarters for a while and observed the HR person come down to the receptionist and ask where papers had been left.  I understand that the receptionist told the HR person that the process server had not left the papers at the desk, but that the process server was still waiting in the building.  I further understand that the HR person left again without taking the papers from the process server.

5.     At my request, the process server returned again to PETA's headquarters to attempt service on Monday, September 17, 2007.  I understand, however, that PETA again refused to accept the subpoena.  PETA then advised the process server that it would accept service on Friday, September 21, 2007.

6.     Because of PETA's conduct, I was required to issue a new subpoena to PETA on September 20, 2007 that requested the same documents but extended the return date in light of PETA's refusal to accept service for a week.  It was this second subpoena that the process server then served on PETA on Friday, September 21, 2007.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 24th day of February, 2008.


_____
George A. Gasper

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PEOPLE FOR THE ETHICAL            :
    TREATMENT OF ANIMALS      :
                                                   :

v.                                :        Misc. Case:  1:08-mc-00069 (EGS)
                                                   :

FELD ENTERTAINMENT, INC.          :
--------------------------------------------------------

Related Case No.  03-2006 (EGS/JMF)

AMERICAN SOCIETY FOR THE          :
PREVENTION OF CRUELTY TO          :
ANIMALS, <u>et al.</u>,                 :
                                                 :

                 Plaintiffs,        :
                                                 :

     v.                           :

FELD ENTERTAINMENT, INC.,         :

                 Defendant.         :
                                      :

<u>RESPONSE IN OPPOSITION TO PETA'S MOTION FOR PROTECTIVE ORDER</u>

# EXHIBIT 3

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
## UNITED STATES DISTRICT COURT

Eastern                          DISTRICT OF                          Virginia

ASPCA et al.

V.                                                    **SUBPOENA IN A CIVIL CASE**

Ringling Bros. et al.

Case Number:[1]  03-cv-2006 (D.D.C.)

TO:  People for the Ethical Treatment of Animals
     501 Front Street
     Norfolk, VA 23510

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Appendix A

| PLACE   501 Front Street | DATE AND TIME |
|---|---|
| Norfolk, VA 23510 | 10/12/2007 10:00 am |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *George Gasper* (Attorney for Defendant) | 9/20/2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
George Gasper, Fulbright & Jaworski L.L.P.
801 Pennsylvania Avenue, N.W., Washington, DC 20004  (202-662-4504)

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | September 21, 2007 | PETA<br>501 Front Street<br>Norfolk, VA 23510 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Jeff Kerr / General Counsel | Corporate |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Nancy G. Wood | Private Process Server |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on    Sept. 21, 2007
                          DATE

SIGNATURE OF SERVER

_Nancy G. Wood_

ADDRESS OF SERVER    Capitol Process Services, Inc.
                                   1827 18th Street, NW
                                   Washington, DC 20009

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

**APPENDIX "A"**

**DEFINITIONS**

1.      "Animal Activist/Group" means any person or entity that advocates on behalf of animals and includes, but is not limited to, the American Society for the Prevention of Cruelty to Animals ("ASPCA") or any local or regional Society for the Prevention of Cruelty to Animals ("SPCA"), the Fund for Animals ("FFA"), the Animal Welfare Institute ("AWI"), the Performing Animal Welfare Society ("PAWS"), the Earth Liberation Front ("ELF"), the Animal Liberation Front ("ALF"), Animal Protection Institute ("API"), Captive Animals' Protection Society ("CAPS"), In Defense of Animals ("IDA"), Compassion over Killing, the Wildlife Advocacy Project ("WAP"), and any other local and/or regional grass roots group or local and/or regional animal activist organization.

2.      "Communication" means the transmittal or exchange of information of any kind in any form, including oral, written, or <u>electronic form</u>.

3.      "Complaint" refers to the Complaint filed by the ASPCA, AWI, FFA, and Tom Rider originally captioned as *American Society for the Prevention of Cruelty to Animals, et al. v. Ringling Bros. and Barnum & Bailey Circus et al.*, No. 03-2006 (EGS) (D.D.C.), dated September 23, 2003.

4.      "Defendant" means Feld Entertainment, Inc., any of its current or former employees, consultants, agents, attorneys, directors, other representatives, and all other persons acting under their control or on their behalf and includes the Ringling Bros. and Barnum and Bailey Circus as referred to in the Complaint.

5.      "Document" is defined to be synonymous and equal in scope to usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a), and shall include all Documents regardless of whether they exist in paper or electronic format.

A copy or duplicate of a document which has any non-conforming notes, marginal annotations, or other markings, and any preliminary version, draft, or revision of the foregoing is a separate document within the meaning of this term. Document(s) include, by way of example only, any memorandum, letter, envelope, correspondence, electronic mail, report, note, Post-It, message, telephone message, telephone log, diary, ledger, chart, journal, calendar, minutes, working paper, financial report, accounting report, account statement, check, work papers, teletype message, facsimile, directory, computer disk or tape, thumb or flash drive, or video or audio recording such as a tape, CD, or DVD. Document(s) also include the file, folder tabs, binders and labels appended to or containing any Documents.

6.    "Litigation" means this case, originally captioned as *American Society for the Prevention of Cruelty to Animals, et al. v. Ringling Bros. and Barnum & Bailey Circus, et al.,* No. 03-2006 (EGS) (D.D.C.), and/or its predecessor suit, captioned as *American Society for the Prevention of Cruelty to Animals, et al. v. Ringling Bros. and Barnum & Bailey Circus, et al.,* No. 00-1641 (EGS) (D.D.C.).

7.    "MGC" means the law firm of Meyer Glitzenstein & Crystal, formerly known as Meyer & Glitzenstein.

8.    "Person" means any natural persons, proprietorships, public or private corporations, partnerships, trusts, joint ventures, groups, associations, organizations, or other legal entities, including any representative of any such person or persons.

9.    "Plaintiffs" refers to the plaintiffs in the Litigation: ASPCA, FFA, AWI, API and Tom Rider.

10.    "Produce" or "Production" means to provide legible, complete, and exact copies of responsive documents to the undersigned counsel, or to make such documents available to the

undersigned counsel for inspection and reproduction. Where the document is in the form of a computer program or computer data, production should include production of the responsive information in machine-readable format along with a description of the format and any other information necessary and sufficient to permit access to and an understanding of the information.

11.    The phrase "refer, reflect, or relate to" is used as a means of requesting information or documents that constitute, comprise, consist of, contain, evidence, set forth, propose, show, disclose, describe, discuss, mention, explain, summarize, reflect, deal with, identify, analyze, demonstrate, or in any way address, involve, regard, pertain to, touch upon, affect, or concern, in whole or in part, the subject matter of the relevant request for production.

12.    "Wildlife Advocacy Project" ("WAP") refers to an organization purporting to be a non-profit advocacy group that was founded by Katherine Meyer and Eric Glitzenstein of MGC. Any reference to WAP includes, but is not limited to, any persons that are partners, associates, employees, paralegals, interns, clerks, independent contractors or otherwise associated with MGC, including but not limited to Katherine Meyer, Eric Glitzenstein and Leslie Mink, that are acting on behalf of WAP.

13.    "You" and "Your" refer to the People for the Ethical Treatment of Animals ("PETA").

14.    To the extent not otherwise defined, all words shall have their usual and ordinary meaning as the context of the sentence would indicate.

## INSTRUCTIONS

1.    All documents shall be produced in the order they are kept in the ordinary course of business, and shall be produced in their original folders, binders, covers or containers, or facsimile thereof. Documents should be produced in a manner that ensures that the source of each document can be determined. Documents attached to each other should <u>not</u> be separated.

2.    These requests relate to all documents which are in Your possession, custody or control that are responsive to one or more of the document production requests contained herein.

3.    Unless otherwise noted, these requests shall apply to the period January 1, 1996 to the present.

4.    All uses of the conjunctive include the disjunctive and vise versa. Words in the singular include the plural and vice versa. Pronouns shall be construed as gender-neutral.

5.    Each document production request shall operate and be construed independently. Unless otherwise noted, no paragraph limits the scope of any other paragraph.

6.    For each document whose production is requested, produce the entire original document, along with all attachments, appendices, and exhibits, and any copies that are not identical to the original (whether because of notes made on, or attached to, such copy or otherwise).

7.    You shall affix to every page of every document that You produce a Bates number or other unique identifier.

8.    Documents shall be produced in such fashion as to identify the department, branch, or office in whose possession they were located and, where applicable, the natural

person in whose possession they were found and the business address of each document's custodian(s).

9.    Electronically stored information should be produced in an intelligible format or together with a sufficient description of the system or program from which it was derived to permit rendering the material intelligible. As stated above, the term "documents" specifically includes, but is not limited to, e-mail communications and other electronic records.

10.    If any document responsive to any request is withheld, in whole or in part, from production under a claim of privilege (including, without limitation, attorney-client or work-product privilege) or otherwise, please provide a list identifying for <u>each</u> such withheld document the following:

a.    the type of document (e.g., memorandum, letter, report, chart, etc.), its general subject matter (without revealing the information as to which privilege is claimed), the date of the document, and the nature and length of any attachment or appendices;

b.    all author(s), addressee(s), distributee(s), and recipient(s);

c.    the date of the document; and

d.    the nature of the privilege or protection claimed, or any other basis on which the document has been withheld.

11.    If a document responsive to these requests was at any time in Your possession, custody or control but is no longer available for production, as to each document state the following information:

a.    whether the document is missing or lost;

b.    whether the document has been destroyed;

c.    whether the document has been transferred or delivered to another person and, if so, at whose request;

d.    whether the document has been otherwise disposed of; and

e.    the circumstances surrounding the disposition of the document and the date of its disposition.

## REQUESTS FOR PRODUCTION

1.    All documents that refer, reflect, or relate to Archele Faye Hundley, including without limitation:  (a) all communications with or about Ms. Hundley; (b) all documents reflecting Ms. Hundley's statements or allegations concerning the Litigation, elephants in circuses, Defendant, and/or any current or former employee, consultant, agent, attorney, director, or other representative of Defendant; (c) all documents that reflect anything of value, whether monetary or in kind, requested by or on behalf of, given to, directed to, or made at the direction of Ms. Hundley, including consulting fees and payments and/or reimbursements for services rendered or for goods obtained/received, that were given and/or made either directly to Ms. Hundley or indirectly to Ms. Hundley through another person and/or entity, including MGC and/or WAP; (d) all documents that relate to the purpose of any payments made to, directed to, or requested by Ms. Hundley; and (e) all documents that relate to any payments received, requested, or solicited by you or on your behalf for purposes of paying Ms. Hundley, funding any activities to be undertaken by Ms. Hundley, or funding any activities relating to Defendant or any other circus, including but not limited to, IRS Forms 1099.

2.    All documents that refer, reflect, or relate to Robert Tom, Jr., including without limitation:  (a) all communications with or about Mr. Tom; (b) all documents reflecting Mr. Tom's statements or allegations concerning the Litigation, elephants in circuses, Defendant,

and/or any current or former employee, consultant, agent, attorney, director, or other representative of Defendant; (c) all documents that reflect anything of value, whether monetary or in kind, requested by or on behalf of, given to, directed to, or made at the direction of Mr. Tom, including consulting fees and payments and/or reimbursements for services rendered or for goods obtained/received, that were given and/or made either directly to Mr. Tom or indirectly to Mr. Tom through another person and/or entity, including MGC and/or WAP; (d) all documents that relate to the purpose of any payments made to, directed to, or requested by Mr. Tom; and (e) all documents that relate to any payments received, requested, or solicited by you or on your behalf for purposes of paying Mr. Tom, funding any activities to be undertaken by Mr. Tom, or funding any activities relating to Defendant or any other circus, including but not limited to, IRS Forms 1099.

3.    All documents that refer, reflect, or relate to Margaret Tom, including without limitation:  (a) all communications with or about Mrs. Tom; (b) all documents reflecting Mrs. Tom's statements or allegations concerning the Litigation, elephants in circuses, Defendant, and/or any current or former employee, consultant, agent, attorney, director, or other representative of Defendant; (c) all documents that reflect anything of value, whether monetary or in kind, requested by or on behalf of, given to, directed to, or made at the direction of Mrs. Tom, including consulting fees and payments and/or reimbursements for services rendered or for goods obtained/received, that were given and/or made either directly to Mrs. Tom or indirectly to Mrs. Tom through another person and/or entity, including MGC and/or WAP; (d) all documents that relate to the purpose of any payments made to, directed to, or requested by Mrs. Tom; and (e) all documents that relate to any payments received, requested, or solicited by you or on your behalf for purposes of paying Mrs. Tom, funding any activities to be undertaken by Mrs. Tom, or

funding any activities relating to Defendant or any other circus, including but not limited to, IRS Forms 1099.

4.     All documents that refer, reflect, or relate to any other current or former employee, consultant, agent, attorney, director, or other representative of Defendant (including but not limited to Tom Rider, Glenn Ewell, Gerald Ramos, James Stechcon, Garrison Christianson, and/or Kelly Tansy [a.k.a. Kelly Tansey]), including without limitation: (a) all communications with or about such persons; (b) all documents reflecting any such person's statements or allegations concerning the Litigation, elephants in circuses, Defendant, and/or any other current or former employee, consultant, agent, attorney, director, or other representative of Defendant; (c) all documents that reflect anything of value, whether monetary or in kind, requested by or on behalf of, given to, directed to, or made at the direction of such persons, including consulting fees and payments and/or reimbursements for services rendered or for goods obtained/received, that were given and/or made either directly to such persons or indirectly to such persons through another person and/or entity, including MGC and/or WAP; (d) all documents that relate to the purpose of any payments made to, directed to, or requested by such persons; and (e) all documents that relate to any payments received, requested, or solicited by you or on your behalf for purposes of paying such persons, funding any activities to be undertaken by such persons or funding any activities relating to Defendant or any other circus, including but not limited to, IRS Forms 1099.

5.     All documents that refer, reflect, or relate to any solicitation of or request for donations, contributions, payments and/or any thing(s) of value concerning the Litigation, elephants in circuses, Defendant, and/or any current or former employee, consultant, agent, attorney, director, or other representative of Defendant (including but not limited to Tom Rider,

Glenn Ewell, Gerald Ramos, James Stechcon, Garrison Christianson, Kelly Tansy [a.k.a. Kelly Tansey], Archele Faye Hundley, Margaret Tom and/or Robert Tom, Jr.), by: (a) Plaintiffs; (b) MGC; and (c) WAP.

6.      All pictures and video or audio recordings (such as tapes, CDs or DVDs) (in complete and unedited form) that you or anyone else has taken of anything owned by Defendant (such as its boxcars or bullhooks), of any of Defendant's animals (such as its elephants), or of anyone who has ever worked for Defendant (such as Sacha Houcke, Alex Vargas, Carrie Coleman, Tom Rider, Glenn Ewell, Gerald Ramos, James Stechcon, Garrison Christianson, Kelly Tansy [a.k.a. Kelly Tansey], Archele Faye Hundley, Margaret Tom and/or Robert Tom, Jr.).

7.      All documents provided to, or communications with, plaintiffs or their counsel (including MGC) that refer, reflect or relate to Defendant's care or treatment of its elephants at issue in the Litigation.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PEOPLE FOR THE ETHICAL    :
      TREATMENT OF ANIMALS    :
                                      :

v.                                :     Misc. Case:  1:08-mc-00069 (EGS)
                                        :

FELD ENTERTAINMENT, INC.    :
--------------------------------------------------------

Related Case No.  03-2006 (EGS/JMF)

AMERICAN SOCIETY FOR THE    :
PREVENTION OF CRUELTY TO    :
ANIMALS, <u>et al.</u>,             :
                                      :

              Plaintiffs,    :
                                      :

     v.                            :
                                      :

FELD ENTERTAINMENT, INC.,    :
                                      :

             Defendant.    :
_____:

## <u>RESPONSE IN OPPOSITION TO PETA'S MOTION FOR PROTECTIVE ORDER</u>

# EXHIBIT 4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS, <u>et al.</u>, | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | Case No. 03-2006 (EGS/JMF) |
| FELD ENTERTAINMENT, INC., | : : | |
| Defendant. | : | |

MEMORANDUM OF POINTS AND AUTHORITIES BY DEFENDANT
FELD ENTERTAINMENT, INC. REGARDING THE SCOPE OF
FURTHER DISCOVERY IN THIS CASE

This brief is submitted by defendant Feld Entertainment, Inc. ("FEI") in accordance with the direction of Magistrate Judge Facciola to the parties at the status conference on November 20, 2007 to brief the question of what the scope of remaining discovery should be following the recent summary judgment and discovery rulings of Judge Sullivan. Specifically, FEI requests that the Court enter a protective order pursuant to Fed. R. Civ. P. 26(c) terminating and prohibiting any further discovery regarding the allegations made by Archele Hundley, Robert Tom, Jr. and Margaret Tom, which relate solely to elephants located on the Red Unit of FEI's circus. The relief requested herein is consistent with and pursuant to Judge Sullivan's recent orders narrowing the scope of this case. <u>See</u> Order & Mem. Op. (8/23/07) (Docket # 172 & 173) ("Summ. Judg. Op."); Order (8/23/07) (Docket # 178) ("Discovery Order"); Order & Mem. Op. (10/25/07) (Docket # 212 & 213) ("Standing Op.").

I.      JUDGE SULLIVAN'S ORDERS NARROWING THE CASE

On August 23, 2007, the Court granted FEI summary judgment as to the 21 elephants in its herd that are subject to a captive-bred wildlife ("CBW") permit. <u>See</u> Summ. Judg. Op. at 22-

23 ("Plaintiffs' conclusory allegations challenging the evidence with respect to all defendant's elephants are not sufficient to warrant further discovery on the only relevant issue regarding the elephants subject to the CBW permit – whether such elephants were born in captivity in the United States."). Judge Sullivan granted summary judgment on the CBW elephants notwithstanding the declarations submitted by plaintiffs from former Red Unit employees Archele Hundley and Robert Tom in opposition to FEI's motion for summary judgment. See Pls. Notice of Filing Supp. Aff. In Support of Their Opp. to Defs. Mot. for Summ. Judg. (11/22/06) (Docket # 113), Ex. LL (Robert Tom, Jr. Decl.) & Ex. MM (Archele Hundley Decl.). In so doing, Judge Sullivan eliminated the CBW elephants from the case and denied plaintiffs' request, pursuant to Fed. R. Civ. P. 56(f), for further discovery regarding relating to the care of these animals. See Summ. Judg. Op. at 22 (plaintiffs do not "provide any meaningful challenge or any reason for further discovery as to the elephants that defendant claims were born in captivity in the United States and subject to a CBW permit."); cf. Liss 56(f) Decl. ¶¶ 9-13 (seeking discovery regarding care of CBW elephants) (Ex. B to Opp. to Mot. for Summ. Judg.) (10/6/06) (Docket # 96). Thus, Judge's Sullivan's summary judgment decision was both a ruling on the merits of plaintiffs' claims as well as a limitation on discovery.

On that same day, Judge Sullivan also ruled on plaintiffs' motion to conduct an inspection of FEI's entire herd and all of its elephant facilities. Even though he deemed the inspection "highly relevant," Judge Sullivan **prohibited** any inspection of CBW elephants: "Consistent with the Court's ruling on the motion for summary judgment, however, plaintiffs are only entitled to inspect those elephants which are not subject to a valid captive-bred wildlife permit." See Discovery Order at 10. This ruling, as is any discovery ruling, rested on the standard of relevance set forth in Fed. R. Civ. P. 26(b)(1).

Shortly thereafter, Magistrate Judge Facciola held a status conference on September 19, 2007. FEI submitted a list identifying the names and location of its Pre-Act elephants remaining in the case. See Notice of Issues for Status Conference at 2 (9/19/07) (Docket # 188) (reiterating objections to discovery beyond the six elephants for which Rider claims emotional attachments required for standing). Magistrate Judge Facciola then ruled that "Pursuant to Judge Sullivan's [summary judgment] ruling, only the Pre-Act elephants remain at issue in this lawsuit. Plaintiffs will therefore be allowed to inspect each of the Pre-Act elephants." See Inspection Order at 2, ¶ 2 (9/25/07) (Docket # 195).

On October 25, 2007, Judge Sullivan narrowed the case further when he granted (in part) FEI's Motion for Reconsideration. Judge Sullivan entered partial summary judgment that excluded from the case an additional 26 Pre-Act elephants in FEI's herd for which Rider lacked standing. See Standing Op. at 5-7 ("[D]efendant's Motion for Reconsideration concerning the standing of Tom Rider is granted and plaintiffs' claims are limited to the six 'pre-Act' elephants identified above."). The six Pre-Act elephants remaining in this case are Susan, Lutzi, Jewell, Karen, Mysore and Nicole. Id.[1]

In the same Order, Judge Sullivan simultaneously denied plaintiffs' motion for leave to amend to add three more plaintiffs, Archele Hundley, Robert Tom, Jr. and Margaret Tom, who "recently worked for Ringling Brothers' 'Red Unit' during 2004-2006" and who alleged *"the same ESA claims as the current plaintiffs in the case."* Standing Op. at 9 (emphasis added). Those three witnesses' complaints related to the Red Unit elephants[2] as well as a former elephant

---

[1]     Plaintiffs also claim Rider has standing for a seventh Pre-Act elephant, Zina, which he evidently "forgot" to identify in his deposition despite his claimed strong "emotional attachment" to this elephant. Ex. 1, Dep. of Tom E. Rider at 11 (10/12/06) ("Rider Dep."). Plaintiffs, however, have taken no action to correct their alleged "mistake."

[2]     Feld Entertainment operates three different traveling circus shows:  the Blue Unit, the Red Unit, and the Gold Unit. Each unit has different animals, performers and employees. The Blue Unit is the only traveling unit which houses elephants to which Rider has alleged an emotional attachment, see supra page 3.

handler on the Red Unit named Sacha Houcke.[3]  Hundley Decl. ¶ 1 ("I worked for Ringling's red

unit from approximately April 20, 2006 through June 27, 2006.") & ¶¶ 5-10, 13-18, 23, 32

(complaints related to Sacha Houcke); Robert Tom Decl. ¶ 1 ("I worked on the red unit.") & ¶¶

4-5, 10, 14, 23, 25-26, 32 (complaints related to Sacha Houcke).  In contrast, Tom Rider worked

on the Blue Unit nearly a decade earlier, has never worked on the Red Unit, and has no

connection to the elephants on the Red Unit.  See Rider Dep. at 8-9 & 244 (Rider stating under

oath that he worked for Ringling from June 1997 until November 1999 and that he only worked

on the Blue Unit); see also Notice of Issues for Status Conference at 2 (9/19/07) (Docket # 188)

(identifying Red Unit elephants – none of which Rider worked with).

FEI opposed the motion to add these new plaintiffs because doing so would unravel the

Court's recent orders narrowing this case and actually *expand* the scope of this case.  (Standing

Op. at 10).  FEI further argued that "adding new plaintiffs would prejudice FEI's right to take

complete and timely discovery as well as ultimately increase the expense and length of trial.

Because the scope of this case now concerns only the six 'pre-Act' elephants to which Mr. Rider

has become emotionally attached, defendant contends that adding new plaintiffs will necessarily

require any trial to include testimony about eight more elephants, as well as numerous additional

employees who work with these elephants on FEI's Red Unit."  Id.

Judge Sullivan agreed:

The Court agrees that defendant would be unduly prejudiced by amending the
complaint to add three plaintiffs at this late stage.  Defendant has already been
granted partial summary judgment and the issues in this case have been
narrowed.  Despite plaintiffs' protestations to the contrary the Court agrees with
defendant that adding three new plaintiffs would significantly expand the scope
of this case and require substantial additional discovery.  The Court rejects
plaintiffs' contention that additional parties would not further complicate and
lengthen this already protracted litigation and cause undue burden and expense
to the defendant.

---

[3]    Mr. Houcke is no longer an FEI employee and is traveling with a circus currently touring France.

. . .

> The Court rejected defendant's proposed counterclaim because plaintiffs would
> be prejudiced by the late expansion of the lawsuit and defendant's delay in
> filing its claim. The Court finds the same potential for prejudice here, and
> declines plaintiffs' invitation to expand this litigation now with the late addition
> of parties after so recently narrowing the scope of this case.

Id. at 11-12. Judge Sullivan's order is clear. He has narrowed this case down to the six Blue

Unit elephants for which Rider alleges standing, he has prohibited the expansion of this case to

the Red Unit, he has rejected the "substantial additional discovery" that would become necessary

to step beyond Rider's claims, and he has ruled that FEI should not be prejudiced in such a

manner at this stage of the proceedings. Id. Indeed, Judge Sullivan's rulings would be rendered

superfluous if, as plaintiffs apparently contend, Red Unit discovery was already relevant to their

case whether or not Hundley et al. are plaintiffs.

Accordingly, FEI seeks a protective order that would prohibit the precise type of

discovery that Judge Sullivan has ruled is beyond the scope of this case. Specifically, FEI asks

that all discovery related to the allegations made by Archele Hundley, Robert Tom and Margaret

Tom be prohibited, which would necessarily preclude any depositions of those three witnesses,

Mr. Houcke and any other Red Unit employees regarding their claims. The burden faced by FEI

is substantial since it would entail four additional depositions, one of which would be in Europe.[4]

## II.     LEGAL STANDARD

The scope of discovery permitted by Federal Rule of Civil Procedure 26 is admittedly

broad. That broad discovery, however, is not boundless. Crawford-El Britton, 523 U.S. 574,

598 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly.").

---

[4]       The relief requested herein is no different than what the Court has already prohibited with regard to the
inspections. Indeed, once the Standing Order and Opinion was issued, the parties revised the inspection schedule to
include only the Blue Unit and the CEC, not the Red Unit or Williston. See Consent Motion for Time Extension
(10/15/07) (Docket # 204) (setting Blue Unit inspection date) & Notice of Filing That The Parties Have Agreed to
Conduct the Florida Inspection on November 29 (10/29/07) (Docket # 215) (setting CEC inspection for same date
held for Red Unit inspection prior to Standing Order).

All discovery sought must be both relevant *and* it must be reasonably calculated to lead to the discovery of admissible evidence. See Fed. R. Civ. P. 26(b)(1); see also Food Lion, Inc. v. United Food & Commercial Workers Int'l Union, 103 F.3d 1007, 1012 (D.C. Cir. 1997) ("the relevance standard of Rule 26 is not without bite"); Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd., 242 F.R.D. 1, 6 (D.D.C. 2007) ("discovery of matters not 'reasonably calculated to lead to the discovery of admissible evidence' are not within the scope of discovery"); Smith v. Café Asia, No. 07-261, 2007 U.S. Dist. LEXIS 73071, at *3-4 (D.D.C. Oct. 2, 2007) (Facciola, J.) ("[R]elevancy alone does not entitle a requesting party to *carte blanche* in discovery. As with most things in life, Rule 26 is not an all-or-nothing proposition. One important constraint is the admissibility of the discovery being sought.") (internal citations omitted).

The Court has narrowed this case and limited the claims to a half-dozen elephants that were on the Blue Unit with Rider. Consistent with that ruling, it has the further ability to issue FEI a protective order that ensures that any further discovery remains related to those six elephants and not be expanded to the Red Unit, which involves entirely different elephants and entirely different personnel with the exception of one employee, Alex Vargas, who has worked on both units and was already deposed by plaintiffs. Judge Sullivan narrowed the case in such a manner notwithstanding that Ms. Hundley and the Toms have made the same ESA claims as plaintiffs. FEI has shown good cause and the Court should issue a protective order terminating any further Red Unit discovery. See Fed. R. Civ. P. 26(c) ("[u]pon motion by a party or by the person from whom discovery is sought" and "for good cause shown," a district court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense"); Friends of the Earth v. U.S. Dep't of Interior, 236 F.R.D. 39, 41 (D.D.C. 2006) ("To show good cause for entry of a protective order, the movant

must articulate specific facts to support its request and cannot rely on speculative or conclusory statements.") (internal citations omitted).

To permit Red Unit discovery to continue as plaintiffs seek would be a *de facto* overruling of Judge Sullivan's orders rejecting plaintiffs' prior efforts to expand the scope of this case beyond Rider to the Red Unit. The discovery should be prohibited to avoid circumvention of the numerous orders the Court has issued and to protect FEI from the undue prejudice and burden such an expansion would cause.

Plaintiffs' attempt to broaden discovery by analogizing to employment discrimination and retaliation cases, even assuming such an analogy applies to this ESA citizen suit,[5] which it does not, is of no moment. Evidence of other acts of discrimination or retaliation are only discoverable if relevant to the plaintiff's allegations: "other claims of discrimination against a defendant are discoverable if limited to the same form of discrimination claimed by plaintiff, *if limited to the same department or agency where plaintiff worked*, and if limited to a reasonable time before and after the discrimination complained of." Mitchell v. Nat'l R.R. Passenger Corp., 208 F.R.D. 455, 456 (D.D.C. 2002) (Facciola, J.) (emphasis added); see also Pleasants v. Allbaugh, 208 F.R.D. 7 (D.D.C. 2002) (Facciola, J.) (in employment discrimination cases, "courts remain concerned about fishing expeditions, discovery abuse, and inordinate expenses involved in overbroad and far-ranging discovery requests and *have therefore limited discovery to the issues involved in the particular case*.") (internal citations omitted and emphasis added).

---

[5]     Plaintiffs' employment discrimination and retaliation analogy incorrectly assumes that motive and intent are elements of their claims, which they are not. See Willingham v. Ashcroft, 226 F.R.D. 57, 61 (D.D.C. 2005) (Facciola, J.) ("prior acts of discrimination or retaliation are relevant to establish motive and intent"). As previously argued to the Court, motive and intent are irrelevant under the ESA's citizen suit provision. See 16. U.S.C. § 1540(g)(1)(A) (no mens rea specified for citizen suits); Reply in Support of Def.'s Cross Motion to Enforce Prior Court Orders at 5 (12/8/06) (Docket # 118) ("The ESA contains no intent or motive element – either a defendant engaged in certain conduct or it did not, and either that conduct constitutes a taking or it does not. The defendant's intent is not part of any burden of proof or element of any claim under the ESA."). Therefore, plaintiffs should not be permitted to conduct Red Unit discovery on this basis.

Just as evidence of discrimination in one department, division, or office of a company is irrelevant to whether discrimination occurred in another, Red Unit evidence regarding elephants excluded from this case is irrelevant to the treatment of the elephants on an entirely different traveling unit, *i.e.* the Blue Unit. See Glenn v. Williams, 209 F.R.D. 279, 281 (D.D.C. 2002) (Facciola, J.) ("discovery in Title VII actions may be appropriately limited to employment units, departments, and sections in which there are employees who are similarly situated to the plaintiff"); Pleasants, 208 F.R.D. at 15 (discovery limited to particular division(s) in which plaintiff worked); White v. U.S. Catholic Conference, No. 97-1253, 1998 U.S. Dist. LEXIS 11832, at *15 (D.D.C. May 22, 1998) (Facciola, J.) (discovery limited to office in which plaintiff worked). Further, as previously argued and recognized by Judge Sullivan, the Red Unit involves different personnel and different elephants than the Blue Unit, which again, would make such evidence irrelevant in the employment discrimination and retaliation context because it involves different "decision makers," or in this case, different caregivers. See Willingham, 226 F.R.D. at 61 ("discovery in the ordinary course should be restricted to the acts of the persons claimed to have discriminated or retaliated against plaintiff") (Facciola, J.); Marshall v. District of Columbia Water & Sewage Auth., 214 F.R.D. 23, 26 (D.D.C. 2003) (Facciola, J.) ("[Plaintiff's] request sweeps too broadly because it potentially involves complaints that have nothing to do with plaintiff's department or the persons he accuses of discriminatory conduct."); Pleasants, 208 F.R.D. at 9 ("discovery should be reasonably related to the circumstances involved in the alleged discrimination ... and the individuals who are allegedly involved in that conduct") (internal citations omitted). Therefore, even if plaintiffs' employment discrimination and retaliation

analogy is applicable to this case, which it is not, the Court should terminate all discovery related to the Red Unit because it is irrelevant to issues as narrowed by Judge Sullivan.[6]

Moreover, narrowly tailored discovery is particularly warranted in this case because the only remedy available under the ESA citizen suit provision is injunctive relief. See 16 U.S.C. § 1540(g)(1)(A) ("any person may commence a civil suit … to enjoin any person"); Califano v. Yamasaki, 442 U.S. 682 (1979) (an injunction "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs"). Judge Sullivan's ruling that Rider's alleged injury-in-fact is limited to the six Pre-Act elephants to which he alleged an emotional attachment necessarily limited the scope of any injunctive relief to the same six elephants. See Lewis v. Casey, 518 U.S. 343, 357 (1996) (*"The [injunctive] remedy must of course be limited to the inadequacy that produced the injury-in-fact that the plaintiff has established"*) (emphasis added).[7]  Because Red Unit elephants cannot be subject to any injunctive relief ordered by the Court, discovery should be limited accordingly.

---

[6]     Moreover, the Court's recent opinions make clear that this case is not analogous to a pattern or practice class action. Rider does not have standing to bring a "class action" lawsuit challenging FEI's treatment of all of its elephants and discovery must be tailored in accordance with the scope of the case. Cf. Willingham, 226 F.R.D. at 61 ("This is not a national class action in which all the African Americans who make up a national class are claiming a national pattern or practice and therefore legitimately inquiring as to how all African Americans are disciplined compared to their white or Hispanic colleagues. It is an individual action where plaintiff is obliged to prove that she was the victim of racial discrimination or retaliation. How superiors disciplined other people anywhere in the country in the DOJ or the DEA for the 15-year period plaintiff demands cannot possibly make any more likely that the persons who disciplined her were motivated by a discriminatory or retaliatory animus.").

     Further, because motive and intent are not elements of plaintiffs' claim, see supra n. 5, "pattern or practice" evidence is not applicable. Cf. Williams v. Johanns, 245 F.R.D. 10 (D.D.C. 2007) (Facciola, J.) (evidence of pattern or practice discoverable in individual discrimination case because it may be used to demonstrate motive and intent).

[7]     In Lewis, the Supreme Court further explained: *"But standing is not dispensed in gross.* If the right to complain of one administrative deficiency automatically conferred the right to complain of all administrative deficiencies, any citizen aggrieved in one respect could bring the whole structure of state administration before the court for review. That is of course not the law. As we have said, *'nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.'"* Lewis, 518 U.S. at 358 n. 6 (quoting Blum v. Yaretsky, 457 U.S. 991, 999 (1982)) (emphases added).

## III.    REQUEST FOR RELIEF

In accordance with the above orders and Fed. R. Civ. P. 26(c), FEI requests that the Court enter an order immediately prohibiting any and all discovery related to the claims made by Ms. Hundley, Robert Tom, Jr., and Margaret Tom. These issues are not related to and do not affect any of the six elephants remaining in the case. Any such discovery would not, and could not, be reasonably calculated to lead to the discovery of admissible evidence. Judge Sullivan ruled that FEI should not be put to this burden and expense. Yet because plaintiffs continue to insist that this discovery should be permitted and that these witnesses should testify at trial, FEI has had to direct its time and energy away from the issues in this case – whether a taking has occurred for the six elephants left – and prepare to depose Ms. Hundley, the Toms and Mr. Houcke.

FEI has subpoenaed Ms. Hundley and the Toms for their depositions on December 16, 17, and 18, 2007. It will prepare papers necessary to the process for deposing Mr. Houcke in France. Because of the urgency of this matter, FEI requests a ruling immediately so it may focus its attention to the six elephants that remain in controversy in this case. A proposed form of order is attached.

Dated this 30th day of November, 2007.

Respectfully submitted,

John M. Simpson (D.C. Bar #256412)
Joseph T. Small, Jr. (D.C. Bar #926519)
Lisa Zeiler Joiner (D.C. Bar #465210)
Michelle C. Pardo (D.C. Bar #456004)
George A. Gasper (D.C. Bar #488988)

FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 662-0200
Facsimile: (202) 662-4643
Counsel for Feld Entertainment, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **AMERICAN SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS, <u>et al.</u>,** | : | |
| | : | |
| | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **Case No. 1:03-CV-02006 (EGS/JMF)** |
| | : | |
| **FELD ENTERTAINMENT, INC.,** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

### [PROPOSED] ORDER

Upon consideration of the Memorandum of Points and Authorities by Defendant Feld Entertainment, Inc. Regarding the Scope of Further Discovery in This Case, the plaintiffs' memorandum, and for good cause shown, it is this _____ day of December, 2007,

ORDERED that all discovery regarding the allegations made by Archele Hundley, Robert Tom, Jr. and Margaret Tom is TERMINATED; and it is further

ORDERED that Archele Hundley, Robert Tom, Jr. and Margaret Tom are stricken from plaintiffs' witness list disclosures regarding persons with information relevant to this case.

_____
MAGISTRATE JUDGE FACCIOLA

60054321

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PEOPLE FOR THE ETHICAL | : | |
| TREATMENT OF ANIMALS | : | |
| | : | |
| v. | : | Misc. Case:  1:08-mc-00069 (EGS) |
| | : | |
| FELD ENTERTAINMENT, INC. | : | |

------------------------------------------------------

Related Case No.  03-2006 (EGS/JMF)

| | | |
|---|---|---|
| AMERICAN SOCIETY FOR THE | : | |
| PREVENTION OF CRUELTY TO | : | |
| ANIMALS, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| FELD ENTERTAINMENT, INC., | : | |
| | : | |
| Defendant. | : | |

<u>RESPONSE IN OPPOSITION TO PETA'S MOTION FOR PROTECTIVE ORDER</u>

# EXHIBIT 5

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**AMERICAN SOCIETY FOR THE
PREVENTION OF CRUELTY TO
ANIMALS** *et al.*,

     **Plaintiffs,**

          **v.**                    **Civil Action No.  03-cv-2006 (EGS/JMF)**

**FELD ENTERTAINMENT, INC.,**

     **Defendant.**

### ORDER

The parties in this case are in the final stages of what has been a complicated and demanding discovery process.  At a recent status conference, they raised several issues which I will now resolve.

1.    <u>Exchange of witness lists.</u>  With the limited number of depositions available and the limited time within which to take them, plaintiffs propose that the parties exchange a list of witnesses they intend to call so that the parties can use their resources and time most effectively.  Defendants resist on the grounds that under Rule 26(a)(3) of the Federal Rules of Civil Procedure, a party is ordinarily not obliged to identify its trial witnesses until 30 days before trial and defendants see no reason to add an additional intermediate deadline to the schedule.  While plaintiffs' proposal is commendable in terms of efficiency, it would require me to create a whole new system of discovery for this case—one in which the parties would have to identify their witnesses before depositions were taken and impose sanctions if they failed to do so.  There is no warrant for such a procedure in the Federal Rules and I question my authority to create

one for this case. In every case, a party, having received her opponent's initial

disclosures, must husband the limited number of depositions and choose the most

important or significant witnesses. Plaintiffs are in no better or worse position than any

other litigant and I will not create an extraordinary procedure for just this case.

Moreover, as indicated below, I am, with the approval of Judge Sullivan,

increasing the number of depositions each party may take and the deadline for fact

discovery to end. This should alleviate some of the parties' concerns about the most

effective use of the time and number of depositions they have left.

2.    <u>Other acts evidence.</u> Judge Sullivan has carefully limited the claims in

this case to the treatment of certain elephants but plaintiffs are presently planning to

present evidence as to the defendants' treatment of other elephants. Defendants protest

that such evidence violates Judge Sullivan's restriction and that they should not be

obliged to expend any of their time taking depositions of, for example, former employees

whose knowledge and experience pertains only to the elephants who are not part of the

class of elephants that Judge Sullivan has identified as the only elephants whose

treatment is at issue. Plaintiffs protest that they should be able to present evidence as to

the treatment of the other elephants pursuant to Rule 404(b) of the Federal Rules of

Evidence to establish, for example, motive or intent or a pattern or practice of treating all

elephants in a cruel or inhumane way.

While evidence of other acts is never admissible to prove a propensity to act in a

certain way, it may be admissible for other purposes. Fed. R. Evid. 404(b). This principle

is well established in the law of this Circuit. <u>See</u> <u>White v. U.S. Catholic Conference</u>, No.

97-CV-1292, 1998 WL 429842, at *5 (D.D.C. May 22, 1998). It would be reckless for

me to predict that Judge Sullivan will ultimately rule that evidence pertaining to the defendants' treatment of elephants other than the ones in the class he created is inadmissible. At this point, it has to be said that such evidence is potentially relevant and therefore meets the fundamental requirement of discoverability. I will therefore not preclude the plaintiffs from introducing such evidence. I will also increase the number of depositions that the parties may take to 15 and require plaintiffs to specifically indicate to defendants what potential other acts evidence they intend to introduce by identifying the persons they intend to call to give such other acts evidence and to provide a brief summary of their potential testimony.

3.     Expert evidence. The parties intend to introduce expert evidence and a schedule for discovery of that evidence must be put in place. Plaintiffs shall comply with the requirement of Rule 26(a)(2) as to all their intended experts by January 21, 2008. Defendants shall comply with that same rule by February 21, 2008. On February 22, 2008, there will commence a 60 day period of expert discovery and all discovery of whatever type or nature will end on April 22, 2008.

4.     Review of documents. By a letter dated December 5, 2007, defendants made available to me certain documents from which they had redacted material that they claimed was privileged. I have reviewed the originals and the redacted copies in camera and I sustain the privileges claimed with one exception. On the document number Priv-30, the defendants have redacted a portion of an e-mail that deals with recommendations for a restaurant and a hotel. While I suppose that they may expose a lawyer's thinking— he is hungry and needs some place to sleep—I don't believe that the work product privilege has been extended to such matters, unless there is a new Michelin work product

privilege.  In all other respects, the defendants need only produce the redacted

documents.

     5.    <u>Fact Discovery.</u>  With the approval of Judge Sullivan, I have decided to

extend fact discovery to January 30, 2007, and increase the number of depositions the

parties may take to 15.

     **SO ORDERED.**

December 18, 2007

                               _____/S/_____

                               JOHN M. FACCIOLA

                               UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PEOPLE FOR THE ETHICAL   :
  TREATMENT OF ANIMALS  :
             :
v.            :  Misc. Case:  1:08-mc-00069 (EGS)
             :
FELD ENTERTAINMENT, INC.  :

--------------------------------------------------------

Related Case No.  03-2006 (EGS/JMF)

AMERICAN SOCIETY FOR THE  :
PREVENTION OF CRUELTY TO  :
ANIMALS, et al.,       :
             :
     Plaintiffs,   :
             :
v.            :
             :
FELD ENTERTAINMENT, INC.,  :
             :
     Defendant.  :

--------------------------------------------------------

**RESPONSE IN OPPOSITION TO PETA'S MOTION FOR PROTECTIVE ORDER**

# EXHIBIT 6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
- - - - - - - - - - - - - - - -x
                                :
In the Matter of:               :
                                :
AMERICAN SOCIETY FOR THE        :
  PREVENTION OF CRUELTY TO      :
  ANIMALS, et al.,              :
      Plaintiffs,               :
                                :
          vs.                   : Civil Action No. 03-2006
                                :
RINGLING BROTHERS AND           :
  BARNUM & BAILEY CIRCUS, et al.,:
                                :
      Defendants.               :
                                : Washington, D.C.
- - - - - - - - - - - - - - - -x November 20, 2007
```

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiffs:      KATHERINE A. MEYER, ESQ.
                         TANYA SANERIB, ESQ.

For the Defendants:      LISA ZEILER JOINER, ESQ.
                         JOHN M. SIMPSON, ESQ.
                         MICHELLE PARDO, ESQ.

Proceedings recorded by the Court, transcript produced by
Pro-Typists, Inc., 1012-14th Street, N.W., Suite 307,
Washington, D.C.  20005, 202-347-5395, www.pro-typists.com
M2158V/bf

1   to finish the fact discovery before the expert discovery,

2   and as long as that extension, whatever we're talking

3   about, does not greatly delay -- further delay this case,

4   Your Honor, we would be willing to consider that.

5           Again, I'd like to have it all sort of coupled

6   with finding out who the fact -- finding out what

7   depositions we -- who the fact witnesses are going to be,

8   so we can decide whether or not we need any additional fact

9   depositions, and having that wrapped up in the next few

10  weeks so that we at least meet that December 31st cutoff of

11  fact witness discovery.

12          THE MAGISTRATE JUDGE:  I agree.  I think that's

13  a good way to proceed.  Well, let me do this.  There are

14  obviously developments in every case.  It's always been

15  my position that the discovery deadlines and the other

16  deadlines in the case reside with the District Court Judge,

17  so it's almost the time when Judge Sullivan and I usually

18  take a walk and get a cup of coffee.  So I'm going to go

19  take a walk with Judge Sullivan, get a cup of coffee, and

20  we're going to talk about this.  Okay?

21          MS. JOINER:  I had a couple more issues.

22          THE MAGISTRATE JUDGE:  Oh, sure.  Come on up.

23  It's going to be a very long cup of coffee, but come up.

24          MS. JOINER:  There are -- if you want to look

25  down the horizon in terms of things that are still out

29

 1   there, you should be aware that there is a subpoena that we

 2   have issued to PETA.  Okay, so that comes out of --

 3            THE MAGISTRATE JUDGE:  I'm sorry, who's PETA?

 4            MS. JOINER:  PETA is the --

 5            THE MAGISTRATE JUDGE:  Oh.  People for the --

 6            MS. JOINER:  -- People for the Ethical Treatment

 7   of Animals.

 8            THE MAGISTRATE JUDGE:  -- Ethical Treatment of

 9   Animals.  Not a man named Peter.

10            MS. JOINER:  Yes, exactly.  So --

11            THE MAGISTRATE JUDGE:  I thought he might be from

12   Boston, talk like Katharine Hepburn.

13            MS. JOINER:  PETA, Paul and Mary.  Anyway, so

14   it's a document subpoena.

15            THE MAGISTRATE JUDGE:  A famous line by Katharine

16   Hepburn, PETA.

17            MS. JOINER:  "Peta, Peta."

18            THE MAGISTRATE JUDGE:  That's right.

19            MS. JOINER:  I'd have to work on my New England

20   accent.

21            THE MAGISTRATE JUDGE:  All right.

22            MS. JOINER:  So anyway, a document subpoena has

23   gone out to them, and ironically their counsel's response

24   was in line with our position on the case, which is Judge

25   Sullivan has greatly narrowed this case and we don't need

30

1   all of this stuff, and in the midst of these orders going

2   back and forth in October --

3           THE MAGISTRATE JUDGE:  Uh-huh.

4           MS. JOINER:  -- we were kind of inclined to agree

5   with them.  In light of your ruling with Mr. Jacobson's

6   deposition, we wrote back to them and said, "No, you're

7   going to have to give us the whole range of stuff."  So

8   that's something that's --

9           THE MAGISTRATE JUDGE:  They're going to be coming

10  in to _____.

11          MS. JOINER:  Right.  So --

12          THE MAGISTRATE JUDGE:  Who is their counsel, by

13  the way?

14          MS. JOINER:  They're represented right now by

15  Phil Hirshcoff, who's over in Alexandria.  And that would

16  have to come out, I guess, you know, the subpoena hearkens

17  out of the Norfolk Division, so if it comes to that we'll

18  have to go down there and deal with it, I guess.

19          We have an issue with the USDA documents that

20  both women were referencing a little bit earlier.  There

21  was a protective order, the subpoena to the USDA that went

22  out by Plaintiffs in this case resulted in a separate case

23  that was filed, and in order to settle it there was a

24  protective order that came out that said that the USDA

25  agrees to release documents, quote, "in unredacted form."

31

1   And that counsel agree to treat the unredacted versions of

2   these materials confidential, and the order also said that

3   the documents that are responsive to Plaintiffs' pending

4   FOIA request dated February 14th, 2005 and 2006, were

5   subject to this.

6       So Mr. Gaspar, with our firm, wrote to Plaintiffs

7   immediately in September and said, "We would like copies,

8   as we're entitled to under Rule 45 as well as our own

9   document request."  And we just recently got the documents

10  and what we've gotten now are documents that are blacked

11  out and redacted.

12      THE MAGISTRATE JUDGE:  And you got those from

13  whom?

14      MS. JOINER:  From Plaintiffs' counsel.  So --

15      THE MAGISTRATE JUDGE:  And those -- are those the

16  same documents we were talking about that were in the

17  pending investigations by the USDA?

18      MS. JOINER:  I think that these could be very

19  much an overlap.  So what we got is a redacted version of

20  the documents, and we have asked and have not gotten an

21  answer, "Why are they redacted?  The protective order says

22  they're coming to you unredacted.  So it shouldn't be

23  filtered to us in terms of redaction."

24      And also, there are exculpatory documents in

25  here.  Where investigators are saying overall they found

32

1  the knowledge and dedication of the Blue Unit staff to be

2  commendable.  The animal manager has been working with

3  circus animals all his life, the elephant manager has many

4  years of elephant training, the vet tech has worked part-

5  time for the circus and for some time --

6           THE MAGISTRATE JUDGE:  Shh, shh, shh, counsel,

7  slow down.

8           MS. JOINER:  -- recently hired full-time.  So

9  exculpatory materials are contained in this.

10           So the second question that we have been asking

11  Plaintiffs but haven't gotten, "Why do we have redacted

12  documents and, two, do we have all the documents?"  We

13  don't -- when you send out a subpoena, you get the good

14  with the bad.

15           THE MAGISTRATE JUDGE:  Now, who did you serve

16  with the subpoena?

17           MS. JOINER:  Plaintiffs served the USDA with the

18  subpoena.

19           THE MAGISTRATE JUDGE:  I understand.

20           MS. JOINER:  Right.

21           THE MAGISTRATE JUDGE:  And then there was a

22  protective order issued by the Judge.

23           MS. JOINER:  There was a protective order in a

24  separate piece of litigation, I guess to compel the USDA to

25  turn over these materials to Plaintiffs.

33

1          THE MAGISTRATE JUDGE:  To Plaintiffs.

2          MS. JOINER:  Yes.  To Plaintiffs.

3          THE MAGISTRATE JUDGE:  And the Plaintiffs got

4     them, but they got them in -- you ultimately got them

5     pursuant to your subpoena placed on the Plaintiffs.

6          MS. JOINER:  We got them pursuant to our document

7     request.

8          THE MAGISTRATE JUDGE:  Document request --

9          MS. JOINER:  Right.

10         THE MAGISTRATE JUDGE:  -- and they're in a

11    redacted form.

12         MS. JOINER:  Yes.

13         THE MAGISTRATE JUDGE:  And you want to know why

14    they're redacted.

15         MS. JOINER:  Why did we get them from Plaintiffs

16    in redacted form?  Do we have all of them?

17         And the third issue is that I believe that the

18    U.S. Attorney told Mr. Gaspar that they were provided to

19    Plaintiffs in electronic versions.  So we got them in hard

20    copy.  And we'd like to have in electronic copy, as well.

21    And so because this protective order indicates that this

22    covers FOIA requests as well as the subpoena, we want to

23    make sure we have all the exculpatory materials, and not

24    just the stuff that Plaintiffs would like to rely upon.

25         THE MAGISTRATE JUDGE:  Okay.  Will the government

34

1    give it to you?

2        MS. JOINER:  We've asked the government.  The

3    government said, "Go ask Plaintiffs."  So we're caught

4    between --

5        THE MAGISTRATE JUDGE:  Our tax dollars at work.

6    Okay.

7        MS. JOINER:  Yes.

8        THE MAGISTRATE JUDGE:  Who's the Assistant United

9    States Attorney in this case?

10        MS. JOINER:  Mr. Gaspar knows that.  I'd have to

11    get the name.  I can get the name to you.

12        THE MAGISTRATE JUDGE:  Well, is it the U.S.

13    Attorney's Office here?

14        MR.        :  It is, Your Honor.  I'm not sure

15    exactly -- I mean I think --

16        MS.        :  Jane Lyons, Your Honor.

17        THE MAGISTRATE JUDGE:  Jane Lyons.

18        MS. JOINER:  Yes.

19        THE MAGISTRATE JUDGE:  Okay.

20        MS. JOINER:  Okay?

21        THE MAGISTRATE JUDGE:  All right.  Do you mind if

22    I call Ms. Lyons and discuss this with her?

23        MS. JOINER:  Absolutely not.

24        THE MAGISTRATE JUDGE:  All right.

25        MS. JOINER:  Absolutely  not.

35

1          THE MAGISTRATE JUDGE:  Fine.  Let me see what I

2   can find out.  Why are they redacted?

3          MS. MEYER:  Well, first of all, Your Honor, of

4   course we have not withheld any documents.

5          THE MAGISTRATE JUDGE:  Okay.

6          MS. MEYER:  None at all.  So that's _____

7   speaking of non-issue, that's a non-issue.

8          The only thing we redacted were names of third

9   parties -- not any of our Plaintiffs or our witnesses --

10  names of third parties and their Social Security Numbers,

11  and their home addresses, which we understood from the USDA

12  that the USDA considers to be personal privacy information.

13         THE MAGISTRATE JUDGE:  Could you send me an

14  unredacted copy in camera and I'll look at them?

15         MS. MEYER:  Sure.

16         THE MAGISTRATE JUDGE:  That'll take care of it

17  that way.

18         MS. MEYER:  Okay.

19         THE MAGISTRATE JUDGE:  Okay.

20         MS. JOINER:  One, one more thing.

21         THE MAGISTRATE JUDGE:  Yes.

22         MS. JOINER:  And then on to the coffee room.

23  Okay.

24         THE MAGISTRATE JUDGE:  He's gone now, I'll tell

25  you that.

1          MS. JOINER:  The next thing is for Red Unit

2     discovery, which I want to come back and revisit before I

3     have to spend the time and the money to do this, to make

4     sure that I'm understanding correctly that we really have

5     to do it.

6          Plaintiffs sought leave to add Archelle Dudley,

7     Robert Tom and Margaret Tom to this case, and Judge

8     Sullivan said no, in his order.  And when he did that he

9     said, "Defendants have already been granted partial summary

10    judgment and the issues in this case have been narrowed.

11    Despite Plaintiffs' protestations to the contrary, the

12    Court agrees with Defendant that adding three new

13    Plaintiffs would significantly expand the scope of this

14    case and require substantial additional discovery.  The

15    Court requests Plaintiffs' contention that the additional

16    parties would not further complicate and lengthen this

17    already protracted litigation and cause undue burden and

18    expense to the Defendant."

19          So.  The issue then becomes, do I need to go out

20    and depose these three people, because from our perspective

21    these are Red Unit employees.  Mr. Rider was never on the

22    Red Unit.  He didn't work with any of these elephants.

23    Their complaint, if I understand their declarations filed

24    in this case, has to do with a former handler for the

25    circus named Sasha Haukusio (phonetic) in France, which

1    means I have to go track him down in France, as well.

2              So, at the prior hearing I believe that the issue

3    of sexual harassment type evidence had come up, and I just

4    wanted to make clear that you had understood that, you

5    know, at the time that we briefed the Rule 34 inspections,

6    this same argument was made in terms of pattern and

7    practice evidence and whether or not Plaintiffs should be

8    permitted to inspect elephants that were out of the case,

9    the CBW, and you know, Judge Sullivan then went and issued

10   his order limiting it.  So it has been briefed to some

11   extent.

12             Before I have to undertake those depositions and

13   chase down a witness in France, I want to make sure --

14             THE MAGISTRATE JUDGE:  Okay, what would you

15   reasonably expect these witnesses to say?

16             MS. JOINER:  I would expect these witnesses to

17   follow their declarations that they filed for summary

18   judgment in this case, which is talking about Sasha Hauk

19   and how he handled elephants and what they believe they saw

20   about that.

21             THE MAGISTRATE JUDGE:  All right.  Are any of the

22   elephants that Mr. Hauk is said to have handled, are they

23   in the case or out of the case?

24             MS. JOINER:  They're out of the case.

25             THE MAGISTRATE JUDGE:  Okay.  And your concern is

38

1  that nevertheless Plaintiff would rely on the testimony of

2  these people on the grounds that there was a pattern and

3  practice of treating elephants, and therefore how these

4  people treated those elephants is still an issue?

5      MS. JOINER:  That is correct.  And again, this is

6  one of the areas where we disagree.  I don't think that

7  pattern and practice is appropriate here.

8      THE MAGISTRATE JUDGE:  Okay.  So your concern is

9  you don't want to use the limited number of depositions you

10  have to chase after witnesses one is reasonably to suppose

11  they will not testify in this case.  Is that right?

12      MS. JOINER:  From our perspective, they should

13  not be testifying, that's correct.

14      THE MAGISTRATE JUDGE:  So you would like them to

15  tell you in advance whether they intend to call them.

16      MS. JOINER:  Well, I would like guidance from you

17  as to whether this --

18      THE MAGISTRATE JUDGE:  Okay, the point, of

19  course, is I can't stop them from trying to -- their trying

20  to call whoever they want to call.

21      MS. JOINER:  Uh-huh.

22      THE MAGISTRATE JUDGE:  I mean, are you saying

23  that they should now be compelled to state one way or the

24  other whether they're going to call these witnesses?

25      MS. JOINER:  Well, I'm --

1              THE MAGISTRATE JUDGE:  Which would meld into the

2    list of fact witnesses they're seeking.  If they don't list

3    them on that tentative list of fact witnesses, then you

4    would know that they don't.

5              MS. JOINER:  I suppose --

6              THE MAGISTRATE JUDGE:  So in that case, the fact

7    witness list helps you as much as it helps them.

8              MS. JOINER:  Well, I suppose that that's one way

9    to go about it.  I mean, I -- they have just added them to

10   their witness list in March.  From my perspective, the

11   bigger issue here is that Judge Sullivan issued his order

12   saying, "I am narrowing this case," and I would like

13   guidance as to what does narrowing this case mean?  You

14   said they can't be plaintiffs, and if we're still wide open

15   to discovery on the entire herd I don't really see how the

16   case has been narrowed.

17             THE MAGISTRATE JUDGE:  So your concern is that if

18   they were to indicate in the witness lists or elsewhere

19   that they intend to call these three witnesses, it would be

20   overly burdensome for you to then have to depose those

21   witnesses because it is more likely than not that they will

22   never be permitted to testify, in light of Judge Sullivan's

23   restriction on the nature of the evidence in this case.

24             MS. JOINER:  I think that is correct, and it

25   would not just be three, it would be Mr. Hauk, who's over

40

1   in France.

2              THE MAGISTRATE JUDGE:  All right.  Four.

3              MS. JOINER:  Four. That's correct.

4              THE MAGISTRATE JUDGE:  Okay.

5              MS. MEYER:  First of all, Your Honor, as

6   Ms. Joiner just informed you, they've known since March.

7              THE MAGISTRATE JUDGE:  Yes.

8              MS. MEYER:  That we intended -- as soon as we

9   decided we were going to call these people as witnesses, we

10  sent them a letter.  And as I've said, we've actually told

11  them who we're calling.  We've never gotten that from them.

12             We sent them a letter saying, "These three

13  witnesses, we will be relying on their testimony," so

14  they've known for eight months, Your Honor, and haven't

15  bothered to take their depositions.

16             Number two, Judge Sullivan's order -- ruling --

17  went to the relief that is available.  It did not say that

18  any evidence about the treatment of any other elephant in

19  this case does not fall within the scope of Rule 26(b) or

20  otherwise would not be admissible into evidence when we get

21  to the trial of this case.  All three of these individuals

22  worked for Ringling Brothers, they left their employment

23  last summer, and all three of them have testimony which has

24  -- most of which has been given to these Defendants in a

25  different form, Your Honor.  They know what their testimony

41

1  is going to be, which is why they want to keep it out.

2  That while they were at the circus they saw elephants

3  beaten with bull hooks and on chains most of the day.

4          Those are our two core claims in the case, Your

5  Honor.  So yes, we intend to call those witnesses.  We let

6  them know that as soon as we had made that decision.

7  They've had eight months to take their depositions, and

8  they haven't.

9          THE MAGISTRATE JUDGE:  As I understand counsel's

10  points, the elephants who were allegedly bull whipped or

11  kept in chains all day, they are not the elephants that

12  Judge Sullivan said are at issue in this case.  Is that the

13  point?

14          MS. MEYER:  They are taking Judge Sullivan's

15  ruling with respect to the relief that Mr. Rider can get,

16  as a Plaintiff in this case, which elephants he has

17  standing with respect to, and saying that that also defines

18  what's relevant information.

19          THE MAGISTRATE JUDGE:  I understand.

20          MS. MEYER:  We went through this with respect to

21  Gary Jacobson's deposition.  You ruled against them and

22  said he had to come back and answer questions about

23  recalcitrant elephants.  It is our position that both under

24  Rule 26(b) and under the Rules of Evidence, that how --

25  especially in a pattern and practice case, which is what we

42

1   have here, Your Honor, how Ringling Brothers treats all of

2   its elephants is relevant to whether or not we can sustain

3   our claims with respect to any of the elephants.

4         THE MAGISTRATE JUDGE:  So to tee it up, you want,

5   more particularly to put it into a procedural context we

6   can all understand, I think what they are saying is they

7   should be deemed to move in limine right now to preclude

8   you from calling those witnesses.

9         MS. MEYER:  That seems to be what they're saying.

10        THE MAGISTRATE JUDGE:  They abide by-- by

11  precluding witnesses it takes that out -- it takes from

12  anybody an obligation to depose.  Is that a fair --

13        MS. MEYER:  That seems to be what they're saying,

14  Your Honor.

15        THE MAGISTRATE JUDGE:  Okay.  I don't know.  I

16  think in that particular instance, as reluctant as I am to

17  have any more paper in this case, I would like both of you

18  just to submit a brief memorandum, no more than 10 pages,

19  what authority there is for the proposition the Court can

20  do then.  I'm not aware of any.  Basically --

21        MS. MEYER:  The proposition that --?

22        THE MAGISTRATE JUDGE:  The proposition presented

23  is that a party Defendant in this case, or any party to

24  _____ may move during the discovery period in limine

25  to preclude the other side from taking witnesses.

43

1          MS. MEYER:  When do you want --

2          THE MAGISTRATE JUDGE:  In other words, I think we

3    can -- just let me think it out loud for a minute.  I think

4    it would flow from the protective order power under

5    Rule 26, they're saying to preclude them from unnecessary

6    discovery in limine, this Court, if Judge Sullivan should

7    rule that these other witnesses may not be called.

8          Again, keep it very brief.  No more than ten

9    pages on each side, one brief for each side.  If, given the

10   Thanksgiving holidays, you can get it to me in ten days

11   that'll be fine.

12         MS. MEYER:  Thank you, Your Honor.

13         THE MAGISTRATE JUDGE:  Ten days, not counting

14   today, so.  Enjoy your turkey.

15         All right?  Thanks very much.

16         (Whereupon, proceedings were concluded.)

17

18

19

20

21

22

44

```
UNITED STATES OF AMERICA )
                         ) Civil Action No. 03-2006
DISTRICT OF COLUMBIA     )
```

I, PAUL R. CUTLER, do hereby certify that a recording of the foregoing proceedings in the above matter was duplicated from an original recording by the Office of the Clerk, United States District Court for the District of Columbia, and that said duplicate recording of the proceedings was transcribed under my direction to typewritten form.

_____
PAUL R. CUTLER

I do hereby certify that the foregoing transcript was typed by me and that said transcript is a true record of the recorded proceedings to the best of my ability.

_____
BONNIE FURLONG

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

PEOPLE FOR THE ETHICAL      :
    TREATMENT OF ANIMALS   :
                                     :

v.                                   :     Misc. Case:  1:08-mc-00069 (EGS)
                                       :

FELD ENTERTAINMENT, INC.    :
--------------------------------------------------------

Related Case No.  03-2006 (EGS/JMF)

AMERICAN SOCIETY FOR THE    :
PREVENTION OF CRUELTY TO   :
ANIMALS, <u>et al.</u>,              :
                                       :
           Plaintiffs,     :
                                       :
    v.                           :
                                       :
FELD ENTERTAINMENT, INC.,   :
                                       :
          Defendant.     :

## <u>RESPONSE IN OPPOSITION TO PETA'S MOTION FOR PROTECTIVE ORDER</u>

# EXHIBIT 7

AO 88 (Rev. 1/94) Subpoena in a Civil Case - SDNY WEB 4/99

Issued by the
# UNITED STATES DISTRICT COURT

| Eastern | DISTRICT OF | Virginia |
|---|---|---|

American Society for the Prevention of Cruelty to
Animals, et al.

## V.

Ringling Bros. and Barnum & Bailey Circus, et al.

## SUBPOENA IN A CIVIL CASE

CASE NUMBER: [1]  03-2006 (D.D.C.)

TO:  People for the Ethical Treatment of Animals
501 Front St.
Norfolk, VA 23510

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attached Schedule A

| PLACE | DATE AND TIME |
|---|---|
| Willcox & Savage, P.C.  222 Central Park Ave., Ste. 1500 Virginia Beach, VA   23462 (contact is Shirley Flint) | February 21, 2005, 10:00AM |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Maura A. Dalton*  Attorney for Defendants | January 21, 2005 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Maura A. Dalton, Covington & Burling, 1201 Pennsylvania Avenue, N.W., Washington, D.C. 20004 (202) 662-6000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 1/94) Subpoena in a Civil Case - SDNY WEB 4/99

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | 1/25/05 | 501 Front Street Norfolk, VA 23510 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Ms. Natalie Hawkins | place of employment |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Wanda Lee Beale | Coipiole Process Server |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on  1/25/05
DATE

Wanda Lee Beale
SIGNATURE OF SERVER

4824 Machen Ave
ADDRESS OF SERVER

VA Beach, VA 23455

---

### Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)  A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A)  A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)  Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A)  On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)  fails to allow reasonable time for compliance,

(ii)  requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that,

subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)  subjects a person to undue burden.

(B)  If a subpoena

(i)  requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)  requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)  DUTIES IN RESPONDING TO SUBPOENA.

(1)  A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)  When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

# SCHEDULE A TO SUBPOENA

### I.     DEFINITIONS

1.     "Document" is defined to be synonymous and equal in scope to usage of this term in Federal Rule of Civil Procedure 34(a). A copy or duplicate of a document which has any non-conforming notes, marginal annotations, or other markings, and any preliminary version, draft, or revision of the foregoing is a separate document within the meaning of this term. Documents include, by way of example only, any memorandum, letter, envelope, correspondence, electronic mail, report, note, Post-It, message, telephone message, telephone log, diary, journal, calendar, minutes, working paper, financial report, accounting report, work papers, teletype message, facsimile, directory, computer disk or tape, or video or audio recording such as a tape, CD, or DVD.  Documents also include the file, folder tabs, and labels appended to or containing any documents.

2.     The phrase "refer, reflect, or relate to" is used as a means of requesting information or documents that constitute, comprise, consist of, contain, evidence, set forth, propose, show, disclose, describe, discuss, mention, explain, summarize, reflect, deal with, identify, analyze, demonstrate, or in any way address, involve, regard, pertain to, touch upon, affect, or concern, in whole or in part, the subject matter of the relevant request for production.

### II.    INSTRUCTIONS

1.     All documents shall be produced in the order they are kept in the ordinary course of business, and shall be produced in their original folders, binders, covers or containers, or facsimile thereof.

2.     These requests relate to all documents which are in your possession, custody or control.

3.      You shall produce the original of each document described below or if the original is not in your custody, then a copy thereof.

4.      If production of documents is withheld on the ground of privilege, please provide sufficiently particular information regarding the alleged privileged communication in a privilege log on the date on which the documents are produced.

5.      Whenever a document is not produced in full or is produced in redacted form, so indicate on the document and state with particularity the reason(s) it is not being produced in full and describe with particularity those portions of the document not being produced.

6.      If a document responsive to these requests was at any time in your possession, custody or control but is no longer available for production, as to each document state the following information:

   a.      whether the document is missing or lost;

   b.      whether the document has been destroyed;

   c.      whether the document has been transferred or delivered to another person and, if so, at whose request;

   d.      whether the document has been otherwise disposed of, and

   e.      the circumstances surrounding the disposition of the document and the date of its disposition.

## III.   REQUESTS FOR THE PRODUCTION OF DOCUMENTS

### REQUEST NO. 1:

All documents that refer, reflect, or relate to Frank E. Hagan.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PEOPLE FOR THE ETHICAL   :
  TREATMENT OF ANIMALS :
            :
v.            :  Misc. Case:  1:08-mc-00069 (EGS)
            :
FELD ENTERTAINMENT, INC.  :
---------------------------------------------------------

Related Case No.  03-2006 (EGS/JMF)

AMERICAN SOCIETY FOR THE  :
PREVENTION OF CRUELTY TO  :
ANIMALS, <u>et al.</u>,       :
            :
     Plaintiffs,   :
            :
  v.          :
            :
FELD ENTERTAINMENT, INC.,  :
            :
     Defendant.   :
_____:

<u>RESPONSE IN OPPOSITION TO PETA'S MOTION FOR PROTECTIVE ORDER</u>

# EXHIBIT 8

# FULBRIGHT & JAWORSKI L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
801 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, D.C. 20004-2623
WWW.FULBRIGHT.COM

GGASPER@FULBRIGHT.COM
DIRECT DIAL: (202) 662-4504

TELEPHONE:    (202) 662-0200
FACSIMILE:    (202) 662-4643

December 18, 2007

**VIA FACSIMILE AND FIRST-CLASS MAIL**

Philip J. Hirschkop
Hirschkop & Associates, P.C.
908 King Street, Suite 200
Alexandria, VA 22314-3013

Re:    ASPCA v. Feld Entertainment, Inc. (Subpoena *duces tecum* to PETA)

Dear Mr. Hirschkop:

Thank you for your letter dated December 14, 2007. This letter will address the issues that continue to remain outstanding.

1.    Documents Concerning the Credibility of Witnesses (Request Nos. 1-4)

As we have discussed, FEI's position is that *all* documents concerning the nine individuals referenced in the subpoena must be produced. PETA may not, as it suggests, refuse to produce documents concerning payments to or for these individuals merely because it has produced a chart containing the date and amount of such payments. Indeed, both Judge Sullivan and Magistrate Judge Facciola have rejected this very approach by two other organizations that FEI has been forced to subpoena in this case. *See* Discovery Order (8/23/07) at 8 (Judge Sullivan ordering WAP to produce "all" documents concerning payments to Rider); Order (12/3/07) at 2 (Judge Facciola ordering HSUS to produce the same). The two judges presiding over this case have ruled that a chart of payments is insufficient and that all documents concerning payments must be produced. PETA, similarly, must produce all documents concerning its payments to these individuals.

Also, you represented that PETA has been asked to search for "all correspondence by" these nine individuals and "all correspondence by PETA to" any of them. Indeed, it appears that such documents have been produced. However, it seems odd that PETA has produced all correspondence by these individuals (regardless of the intended recipient) but has produced only the correspondence to these individuals that was prepared by PETA. Please let me know whether PETA has copies of any correspondence to these individuals that was created by someone else. If so, such correspondence also must be produced.

60060063.1

AUSTIN • BEIJING • DALLAS • DENVER • DUBAI • HONG KONG • HOUSTON • LONDON • LOS ANGELES • MINNEAPOLIS
MUNICH • NEW YORK • RIYADH • SAN ANTONIO • ST. LOUIS • WASHINGTON DC

Philip J. Hirschkop
December 18, 2007
Page 2

You also represented that some videos have been located involving these nine individuals and that they will be reviewed for possible production. Please produce all such videos immediately, including any undercover video taken of FEI or its employees by these individuals. They are responsive to the subpoena, relevant to the litigation, and not unduly burdensome to produce.

In addition to the nine individuals specifically mentioned in the subpoena, you and I have discussed documents concerning payments to Frank Hagan, which are responsive to Request No. 4 of the subpoena. To be clear, I never told you that Mr. Hagan "is going to be a witness" in this case. That is because Mr. Hagan already has been a witness in this case, having been deposed by plaintiffs several years ago. As you know, Mr. Hagan is now deceased which makes it all the more imperative that PETA produce its documents concerning him since he is no longer available for cross-examination on issues that have to come light since he was deposed in this case. As with the nine individuals above, please produce unredacted copies of all documents PETA has concerning Mr. Hagan, including all documents concerning payments to or for him.

2.    Plaintiffs' Requests Concerning the Funding of this Lawsuit (Request No. 5)

As explained in my prior letter, Request No. 5 is limited to documents concerning requests for funding that were *made by plaintiffs, WAP, and/or plaintiffs' counsel* and that relate to this litigation and/or FEI and its current or former employees. Your letter of December 14, 2007 is conspicuously limited to payments to WAP and payments by PETA to MGC for this lawsuit. You did not address, and PETA has not produced documents concerning, any requests for funding made by the plaintiffs – whether for this litigation, Tom Rider, or otherwise. You, moreover, did not answer the applicable question with respect to WAP or MGC. Has WAP or MGC requested funding from PETA for this lawsuit, for Tom Rider, or for other potential witnesses in this case? Your representation that PETA has "not paid any expenses" in this lawsuit does not answer the applicable questions, nor does it explain PETA's refusal to comply with this request. PETA must produce all documents responsive to Request No. 5.

3.    Evidence Concerning FEI's Treatment of its Elephants (Request Nos. 6-7)

It is clear that PETA refuses to produce all of its videos and photos of FEI, yet it fails to explain in detail why such a search and production would be so burdensome. Indeed, the production of such material should present no burden at all. PETA took the videos and photos for a specific purpose, so it is inconceivable that these materials are not highly organized and that PETA cannot put its hands on them immediately by subject matter. PETA knows exactly what is on its videos and photos; that is why they made them.

PETA has left us no choice but to seek Court assistance on the issue of whether it must produce "all" videos and photos. In the meantime, however, since PETA has offered to deal with specific requests for specific videos, we hereby request copies of all videos and photos given to, or discussed with, plaintiffs or MGC and, as discussed above, all videos and photos of

Philip J. Hirschkop
December 18, 2007
Page 3

(or taken by) the ten former FEI employees at issue in the subpoena. Please provide such videos and photos immediately.

Finally, you have not addressed, and PETA has not produced documents concerning, Request No. 7, which seeks all documents relating to FEI's treatment of its elephants that were given to plaintiffs (or their counsel) and all documents reflecting communications with plaintiffs (or their counsel) concerning the same. Although you have vaguely referenced some form of mutual defense privilege, you have not provided any authority for this position, as requested in my previous letter. Indeed, while a common interest privilege might attach if PETA were actually adverse in a lawsuit involving FEI, that is not the case. Neither political nor philosophical adversity satisfies the applicable test, although I suppose that such a privilege could attach if the facts showed that PETA were actively involved in this case (enough to essentially be a co-plaintiff). If that is the case, please let me know immediately. Otherwise, PETA should produce the documents it has given to plaintiffs or their counsel concerning FEI's treatment of its elephants and PETA should produce its communications with plaintiffs or their counsel concerning the same.

As this letter addresses many issue we already have discussed, please produce the documents and videos discussed above by Thursday, December 20, 2007.

Very truly yours,

George A. Gasper

60060063.1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **PEOPLE FOR THE ETHICAL** | : | |
| **TREATMENT OF ANIMALS** | : | |
| | : | |
| **v.** | : | **Misc. Case:  1:08-mc-00069 (EGS)** |
| | : | |
| **FELD ENTERTAINMENT, INC.** | : | |

---------------------------------------------------------

**Related Case No.  03-2006 (EGS/JMF)**

| | | |
|---|---|---|
| **AMERICAN SOCIETY FOR THE** | : | |
| **PREVENTION OF CRUELTY TO** | : | |
| **ANIMALS, <u>et al.</u>,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **FELD ENTERTAINMENT, INC.,** | : | |
| | : | |
| **Defendant.** | : | |

_____:

### <u>RESPONSE IN OPPOSITION TO PETA'S MOTION FOR PROTECTIVE ORDER</u>

# EXHIBIT 9

# FULBRIGHT & JAWORSKI L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
801 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, D.C. 20004-2623
WWW.FULBRIGHT.COM

LISA ZEILER JOINER
PARTNER
LJOINER@FULBRIGHT.COM

DIRECT DIAL:    (202) 662-4501
TELEPHONE:   (202) 662-0200
FACSIMILE:    (202) 662-4643

January 25, 2008

**_VIA E-MAIL & REGULAR MAIL_**

Katherine A. Meyer
Meyer Glitzenstein & Crystal
1601 Connecticut Ave., N.W., Ste. 700
Washington, D.C. 20009

Re:    <u>ASPCA, et al. v. Feld Entertainment, Inc., Civ. Action No. 1:03-cv-2006:</u>
<u>Plaintiffs' Subpoenae to PETA</u>

Dear Ms. Meyer:

On behalf of Feld Entertainment, Inc. ("FEI"), I am writing to put both you and Mr. Hirschkop on notice that FEI objects to the two subpoenae that plaintiffs purportedly served yesterday and Wednesday on PETA for deposition transcripts. FEI's objections are contained in the attached Notice. Pursuant to Paragraph 5 of the protective orders entered by the Court in Fairfax, you are both hereby advised the FEI objects to the production of all transcripts that it produced, provided and/or designated in the PETA v. Feld cases. Consequently, no production can occur until the relevant parties agree or a court determines otherwise pursuant to those protective orders. Please advise whether plaintiffs will withdraw the subpoenae voluntarily, or whether it will be necessary to file a motion to quash in this case.

Sincerely,

Lisa Zeiler Joiner

cc:    Philip Hirschkop (via facsimile)
Matthew Andelman (via facsimile)
William Porter (via facsimile)

60070245.1

AUSTIN • BEIJING • DALLAS • DENVER • DUBAI • HONG KONG • HOUSTON • LONDON • LOS ANGELES • MINNEAPOLIS
MUNICH • NEW YORK • RIYADH • SAN ANTONIO • ST. LOUIS • WASHINGTON DC

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMERICAN SOCIETY FOR THE :
PREVENTION OF CRUELTY TO :
ANIMALS, <u>et al.</u>, :
 :
   Plaintiffs, :
 :
 v. : **Case No. 03-2006 (EGS/JMF)**
 :
FELD ENTERTAINMENT, INC., :
 :
   Defendant. :
 :

### NOTICE OF OBJECTION TO SUBPOENAE

Defendant Feld Entertainment, Inc. ("FEI") hereby objects to the subpoena purportedly served on January 23, 2008 on People for the Ethical Treatment of Animals ("PETA") according to counsel for plaintiffs, Katherine Meyer, <u>see</u> E-Mail Correspondence & Subpoena (1/23/08) (attached hereto as Exhibit 1) ("Subpoena I"), and to the subpoena purportedly served on January 24, 2008 on PETA according to counsel for plaintiffs, Kimberly Ockene, <u>see</u> E-Mail Correspondence & Subpoena (1/24/08) (attached hereto as Exhibit 2) ("Subpoena II"). FEI states its objections as follows:

1. FEI objects to Subpoena I as a sham and in violation of Fed.R.Civ.P. 45. Subpoena I is blank and is not addressed to any person or party. In addition to being unaddressed, Subpoena I contains no certificate of service for any person or party.

2. FEI objects to Subpoena II as invalid for improper notice, and also contains no proof of service. Subpoena II is dated January 24, 2008 and indicates a return date of Wednesday, January 30, 2008, which is only four business days (as calculated by Fed.R.Civ.P. 6). FEI objects to the four-day return period in Subpoena II as insufficient and unreasonable

notice. FEI objects to Subpoena II as it attempts to expand the scope of Subpoena I by enlarging the transcripts requested (attempting to add Jerome Sowalsky), and due to the lack of reasonable notice (five days' notice) for the return date, Subpoena II violates the January 30, 2008 discovery cutoff set by the Court in this case.

2.    FEI objects to Subpoena I & Subpoena II on the grounds that they violate protective orders entered by other courts with competent jurisdiction to do so. FEI objects to the production of any and all deposition transcripts identified in categories 1 and 2 of the Subpoena that are sealed and/or protected in any way by any of the various protective orders entered in People for the Ethical Treatment of Animals, Inc. v. Kenneth Feld, et al., No. 220181 (Cir. Ct. Fairfax County, Va.); People for the Ethical Treatment of Animals, Inc. v. Steven Kendall, et al., No. 204452 (Cir. Ct. Fairfax County, Va.); People for the Ethical Treatment of Animals, Inc. v. Kenneth Feld, et al., No. 204452 (Cir. Ct. Fairfax County, VA); Pottker, et al. v. Feld, et al., No. 99-8068 (D.C. Super. Ct.), and any other applicable protective order entered by any court.

3.    FEI objects to Subpoena I & Subpoena II on the grounds that PETA is no longer lawfully in possession of any such transcripts called for by both subpoenae pursuant to Paragraph 9 of the protective orders entered in PETA v. Kenneth Feld, et al., At Law No. 204452 (2/23/04) & (3/11/04) and in PETA v. Kenneth Feld, At Law No. 220181 (5/7/04). Pursuant to such orders, PETA no longer has possession, custody or control of the transcripts sought by Subpoena I & Subpoena II. FEI objects to any transfer to PETA or plaintiffs at this time of any transcripts for purposes of producing such transcripts pursuant to Subpoena I & Subpoena II as unlawful. FEI further objects that Subpoena I & Subpoena II are issued to the wrong party in interest, PETA.

4.    FEI objects to Subpoena I & Subpoena II as harassing, overbroad, an invasion of

privacy, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence as the subject matters of these law suits were not related to animals or the Endangered Species Act. For example, in the <u>Pottker</u> case, the D.C. Superior Court ordered that no discovery be had regarding animals or animal rights issues, and no such testimony was taken. Accordingly, Subpoena I and Subpoena II violate this Court's discovery order warning plaintiffs not to take discovery on matters extraneous to this litigation. <u>See, e.g.</u>, Order at 2 (11/5/07) (advising plaintiffs that they would be sanctioned for attempting to question witness "about behaviors that are not at issue in this case").

5.    FEI objects to Subpoena I & Subpoena II as a violation of and improper effort to circumvent the standing orders entered by the Court in this case, <u>ASPCA, et al. v. Feld Entertainment, Inc., et al.</u>, to the extent that any testimony was provided in other cases that has been prohibited in this case. By way of example only and not as a complete list, testimony related to financial information has been precluded in this case pursuant to the Court's February 23, 2006 Order at 2. FEI objects to the production of any transcript, in whole or in part, that contains discovery regarding matters that are expressly prohibited by any court order in this case and/or not related to the subject matter of this case.

6.    FEI reserves its right to move to quash this subpoena, and to take any and all action necessary to prosecute any and all violations of all applicable protective orders entered regarding the transcripts sought by the Subpoena.

Dated this 25th day of January, 2008.

Respectfully submitted,

John M. Simpson (D.C. Bar #256412)
Joseph T. Small, Jr. (D.C. Bar #926519)
Lisa Zeiler Joiner (D.C. Bar #465210)
Michelle C. Pardo (D.C. Bar #456004)
George A. Gasper (D.C. Bar #488988)

FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 662-0200
Facsimile: (202) 662-4643

Counsel for Defendant Feld Entertainment, Inc.

## CERTIFICATE OF SERVICE

I, Lisa Zeiler Joiner, do hereby certify that on January 25, 2008 the foregoing **Notice of Objection to Subpoenae** was served on the following in the manners stated below:

*VIA E-MAIL AND REGULAR U.S. MAIL to:*

>Katherine Meyer, Esq.
>Meyer Glitzenstein & Crystal
>1601 Connecticut Ave., N.W., Ste. 700
>Washington, D.C. 20009
>Counsel for Plaintiffs

*VIA FACSIMILE AND REGULAR U.S. MAIL to:*

>Philip J. Hirschkop, Esq.
>Hirschkop & Associates, P.C.
>908 King Street, Suite 200
>Alexandria, VA 22314-3013
>Facsimile: 703-548-3181
>Counsel for PETA

*VIA FACSIMILE AND REGULAR U.S. MAIL to:*

>Matthew B. Andelman, Esq.
>Williams & Connolly LLP
>725 Twelfth Street, N.W.
>Washington, D.C. 20005

>William B. Porter, Esq.
>Blankingship & Keith, P.C.
>4020 University Drive, Ste. 300
>Fairfax, VA 22030
>Counsel for Kenneth J. Feld

Lisa Zeiler Joiner

# EXHIBIT 1

To

## NOTICE OF OBJECTION TO SUBPOENAE

**Joiner, Lisa**

| | |
|---|---|
| **From:** | Katherine Meyer [KatherineMeyer@meyerglitz.com] |
| **Sent:** | Wednesday, January 23, 2008 4:05 PM |
| **To:** | Joiner, Lisa |
| **Subject:** | FW: Attached image data. |

**Attachments:** 38353.pdf


38353.pdf (247 KB)

Hi Lisa - Please see attached.

Sincerely, Kathy


Katherine A. Meyer
Meyer Glitzenstein & Crystal
1601 Connecticut Ave., N.W.
Suite 700
Washington, D.C.  20009
(202)  588-5206
(202)  588-5049 (fax)

-----Original Message-----
From: Copier@meyerglitz.com [mailto:Copier@meyerglitz.com]
Sent: Wednesday, January 23, 2008 11:59 AM
To: Katherine Meyer
Subject: Attached image data.

This is image data from the scanner.

# Meyer Glitzenstein & Crystal
### 1601 Connecticut Avenue, N.W.
### Suite 700
### Washington, D.C. 20009-1056

Katherine A. Meyer
Eric R. Glitzenstein
Howard M. Crystal
Kimberly D. Ockene
Tanya M. Sanerib
Joshua R. Stebbins

Telephone (202) 588-5206
Fax (202) 588-5049
www.meyerglitz.com

January 23, 2008

**Sent by Electronic and First Class Mail**

Lisa Zeiler Joiner
Fulbright & Jaworski, L.L.P.
801 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2623

Re:   ASPCA, *et al.* v. Ringling Bros., *et al.*
       Civ. No. 03-2006 (D.D.C.) (EGS/JMF)

Dear Ms. Joiner:

Enclosed is a copy of a subpoena that was served today on People for the Ethical Treatment of Animals.

Sincerely,

Katherine A. Meyer



recycled paper

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

ASPCA, et al.

V.

Ringling Brothers and Barnum & Bailey Circus, et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]   03-2006 (D.D.C.) (EGS/JMF)

TO:

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment

| PLACE    Meyer Glitzenstein & Crystal  1601 Connecticut Ave., N.W.  Suite 700   Washington, D.C.  20009 | DATE AND TIME   1/30/2008 2:00 am |
|---|---|

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)   _Kath Meyer_ (plaintiffs attorney) | DATE   1/23/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Katherine A. Meyer   1610 Connecticut Ave., N.W.  Suite 700
Washington, D.C.  20009  (202) 588-5206

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  |  |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises -- or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim must be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN SOCIETY FOR THE PREVENTION    )
OF CRUELTY TO ANIMALS, *et al.*,    )
    )
Plaintiffs,    )
    )
v.    )
    )    Civ. No. 03-02006
    )    (EGS/JMF)
RINGLING BROTHERS AND BARNUM & BAILEY    )
CIRCUS, *et al.*,    )
    )
Defendant.    )

## ATTACHMENT TO SUBPOENA IN CIVIL CASE

People for the Ethical Treatment of Animals ("PETA") is hereby commanded to produce and permit inspection and copying of the following documents:

(1) All deposition transcripts for the following deponents in People for the Ethical Treatment of Animals, Inc. v. Kenneth Feld, et al., No. 220181 (Cir. Ct. Fairfax County, Va.), and People for the Ethical Treatment of Animals, Inc. v. Steven Kendall, et al., No. 204452 (Cir. Ct. Fairfax County, Va.):  Kenneth Feld, Alan Bloom, Charles Smith, Steven Kendall, and Joel Kaplan.

(2) All deposition transcripts in PETA's possession for the deponent Kenneth Feld taken in connection with the case Pottker, et al. v. Feld, et al., No. 99-008068 (D.C. Sup. Ct).

# EXHIBIT 2

To

## NOTICE OF OBJECTION TO SUBPOENAE

**Joiner, Lisa**

| | |
|---|---|
| **From:** | Kim Ockene [Kimockene@meyerglitz.com] |
| **Sent:** | Thursday, January 24, 2008 1:01 PM |
| **To:** | Joiner, Lisa |
| **Cc:** | Katherine Meyer |
| **Subject:** | ASPCA v. Ringling Bros. |

**Attachments:**     38446.pdf



38446.pdf (247 KB)

Attached is the amended subpoena served on People for the Ethical Treatment of Animals.

1

AO88 (Rev. 12/06) Subpoena in a Civil Case

### Issued by the
# UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

ASPCA, et al.

V.

Ringling Brothers and Barnum & Bailey Circus, et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]    03-2006 (D.D.C.) (EGS/JMF)

TO:    People for the Ethical Treatment of Animals

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment

| PLACE    Meyer Glitzenstein & Crystal 1601 Connecticut Ave., N.W.  Suite 700 Washington, D.C.  20009 | DATE AND TIME 1/30/2008 2:00 pm |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)  *(plaintiff's attorney)* | DATE    1/24/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Katherine A. Meyer   1601 Connecticut Ave., N.W.  Suite 700
Washington, D.C.  20009   (202) 588-5206

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

---

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| **SERVED** |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  |  |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                         DATE                                                      SIGNATURE OF SERVER

                                                                                    _____
                                                                                    ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) ) |
| RINGLING BROTHERS AND BARNUM & BAILEY CIRCUS, *et al.*, | ) ) ) |
| Defendant. | ) |

Civ. No. 03-02006
(EGS/JMF)

## ATTACHMENT TO SUBPOENA IN CIVIL CASE

People for the Ethical Treatment of Animals ("PETA") is hereby commanded to produce

and permit inspection and copying of the following documents:

(1)    All depositions for the following deponents in People for the Ethical Treatment of
Animals, Inc. v. Kenneth Feld, et al., No. 220181 (Cir. Ct. Fairfax County, Va.),
and People for the Ethical Treatment of Animals, Inc. v. Steven Kendall, et al.,
No. 204452 (Cir. Ct. Fairfax County, Va.):    Kenneth Feld, Alan Bloom, Charles
Smith, Steven Kendall, Jerome Sowalsky, and Joel Kaplan.

(2)    All depositions in PETA's possession for officials of Feld Entertainment Inc.
taken in connection with the case Pottker, et al. v. Feld, et al., No. 99-008068
(D.C. Sup. Ct).

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PEOPLE FOR THE ETHICAL     :
     TREATMENT OF ANIMALS    :
                                   :

v.                               :     Misc. Case:  1:08-mc-00069 (EGS)
                                   :

FELD ENTERTAINMENT, INC.    :
--------------------------------------------------------

Related Case No.  03-2006 (EGS/JMF)

AMERICAN SOCIETY FOR THE    :
PREVENTION OF CRUELTY TO    :
ANIMALS, <u>et al.</u>,             :
                                   :
            Plaintiffs,    :
                                   :
     v.                           :
                                   :
FELD ENTERTAINMENT, INC.,    :
                                   :
            Defendant.    :
_____:

<u>RESPONSE IN OPPOSITION TO PETA'S MOTION FOR PROTECTIVE ORDER</u>

# EXHIBIT 10

# RULES OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA

Revision effective March 8, 2004; as amended effective August 1, 2006 and March 14, 2007.

Local Civil Rules.

Rule
1. Scope of Rules.
3. Area and Divisions.
4. Service and Return of Summons — Abatement.
5. Designation and Handling of Documents Under Seal.
7. Pleadings — Motions — Continuances — Orders.
7.1. Financial Disclosure.
16. Pretrial Conference.
26. Discovery and Disclosure.
30. Depositions — Expenses — Summaries — Reviewing Depositions.
33. [Deleted.]
37. Motions to Compel and Sanctions.
38. Demand for Jury Trial.
45. Subpoenas.
47. Jurors.
51. Proposed Jury Instructions and Voir Dire.
54. Costs — Notice of Appeal — Jury Costs.
56. Summary Judgment.
62. Appeal Bond — Exemption From.
65. Sureties — Security — Bondsman.
67. Deposits into Court.
71A. Land Condemnation Actions.
72. United States Magistrate Judges — Duties.
79. Exhibits.
80. Official Court Reporters Transcripts — Hearing on Transcripts — Record on Appeal.
83.1. Attorneys and *Pro Se* Partics
83.1.
83.2. Sales and Distribution of Proceeds of Sales.
83.3. Photographing, Broadcasting, and Televising in Courtroom and Environs.
83.4. Habeas Corpus and Proceedings *In Forma Pauperis*.
83.6. Settlement and Alternative Dispute Resolution.

Local Criminal Rules.

Rule
1. Scope of Rules.
5. United States Magistrate Judges — Duties.
6. Grand Jury.
12. Criminal Cases — Motions.
12.4. Financial Disclosure.
17. Subpoenas.
18. Area and Divisions.
24. Trial Jurors.
30. Proposed Jury Instructions and Voir Dire.
32.2. Sales and Distribution of Proceeds of Sales.
46. Sureties — Security — Bondsman.
47. Pleadings — Motions — Continuances — Orders.
49. Designation and Handling of Documents Under Seal.
53. Photographing, Broadcasting, and Televising in Courtroom and Environs.
55. Exhibits.
57.1. Free Press — Fair Trial Directives.
57.2. Payment of Fees.
57.3. Official Court Reporters Transcripts — Hearing on Transcripts — Record on Appeal.
57.4. Attorneys and **Pro Se Parties.**
58. Collateral Payments.

Local Admiralty Rules.

(a) Authority and Scope.
(b) In Personam Actions: Attachment and Garnishment.
(c) Actions *In Rem:* Special Provisions.
(d) Possessory, Petitory and Partition Actions.
(e) Actions *In Rem* and Quasi *In Rem:* General Provisions.
(f) Limitation of Liability.

Appendix A: Plan for Third Year Practice Rule.
Appendix B: Federal Rules of Disciplinary Enforcement.
Index.

**Editor's note.** — As required by the Judicial Conference of the United States, this edition of the Local Rules renumbers the local rules so that each local rule bears the same number as the *Federal Rules of Civil Procedure* or the *Federal Rules of Criminal Procedure* to which the local rule most closely corresponds. This edition contains no change in the substance of the Local Rules as they were published on February 1, 1996, except that former Local Rules 27(B)(4) and (C) have been deleted because they were in conflict with the *Prisoner Litigation Reform Act of 1995.*

confidential memorandum for in camera review may also be submitted. The non-confidential memorandum and the proposed order shall include:

(1) A non-confidential description of what is to be sealed;

(2) A statement as to why sealing is necessary, and why another procedure will not suffice;

(3) References to governing case law; and

(4) Unless permanent sealing is sought, a statement as to the period of time the party seeks to have the matter maintained under seal and as to how the matter is to be handled upon unsealing.

The proposed order shall recite the findings required by governing case law to support the proposed sealing.

The Clerk shall provide public notice by docketing the motion in a way that discloses its nature as a motion to seal, with its hearing date (if any). Other parties and non-parties may submit memoranda in support of or opposition to the motion, and may designate all or part of such memoranda as confidential. Any confidential memoranda will be treated as sealed pending the outcome of the ruling on the motion.

(D) Any document not covered by section (B) and filed with the intention of being sealed shall be accompanied by a motion to seal that complies with the requirements of section (C). The Clerk shall provide public notice by docketing the motion in a way that discloses its nature as a motion to seal, with its hearing date (if any). Other parties and non-parties may submit memoranda in support of or in opposition to the motion, and may designate all or part of such memoranda as confidential. The document and any confidential memoranda will be treated as sealed pending the outcome of the ruling on the motion. Failure to file a motion to seal will result in the document being treated as a public record.

(E) Each document that is the subject of an existing sealing order, or the subject of a motion for such an order, shall be submitted to the Clerk's Office securely sealed, with the container clearly labeled "UNDER SEAL." The case number, case caption, a reference to any statute, rule, or order permitting the item to be sealed and a non-confidential descriptive title of the document shall also be noted on the container.

(F) A motion to have an entire case kept under seal shall be subject to the requirements and procedures of sections (C) and (E).

(G) Nothing in this Local Civil Rule limits the ability of the parties, by agreement, to restrict access to documents which are not filed with the Court.

(H) Trial exhibits, including documents previously filed under seal, and trial transcripts will not be filed under seal except upon a showing of necessity demonstrated to the trial judge.

## Rule 7. Pleadings — Motions — Continuances — Orders.

(A) **Grounds and Relief to be Stated:** All motions shall state with particularity the grounds therefor and shall set forth the relief or order sought.

(B) **Address and Telephone Number of Attorney and *Pro Se* Litigants:** All pleadings and motions shall include the attorney's office address and telephone number. All pleadings filed by non-prisoner litigants proceeding *pro se* shall contain an address where notice can be served on such person and a telephone number where such person can be reached or a message left. All pleadings filed by prisoners proceeding *pro se* shall contain an address where notice can be served on such person.

(C) **Personal Identifiers:**

(1) In compliance with the policy of the Judicial Conference of the United States, parties shall not include, or shall partially redact where inclusion is necessary, the following personal identifiers in any pleading, document or exhibit (other than trial transcripts and trial exhibits) filed with the Court unless otherwise ordered by the Court.

(a) Social Security Numbers. If an individual's social security number must be included, only the last four digits of that number should be used.

(b) Names of Minor Children. If the involvement of a minor child must be mentioned, only the initials of that child should be used.

(c) Dates of Birth. If an individual's date of birth must be included in a pleading, only the year should be used.

(d) Financial Account Numbers. If financial account numbers of individuals in their personal capacities are relevant, only the last four digits of these numbers should be used.

(e) Home Addresses. If a [...] should be listed, except that [...]

(2) If it is necessary to in [...] challenging the Social Secur [...] ity) or order, a redacted plea [...]

(a) an unredacted version [...] accord with Local Civil Rule [...] 2002 as authority in support [...]

(b) a reference list shall [...] Rule 5(B) and the party sh [...] support of the sealing. The r [...] fier(s) and the corresponding [...] the case to the redacted iden [...] refer to the corresponding [...] amended as of right.

(3) The responsibility for [...] counsel and the parties. The [...] this Local Rule. Counsel and [...] personal identifiers may subj [...]

(D) **Use of Forms:** Motio [...] mimeographed, or in any n [...] typewriter, computer, or wor [...] filing same has deleted all ex [...] reviewed the remaining por [...] pertinent to the case.

(E) **Return Date:** Except [...] Local Rules, all motions sha [...] scheduled by the Court for a [...] to set the motion for hearing [...] motion without oral argumen [...] withdrawn if the movant doe [...] hearing) within thirty (30) [...] non-moving party also may [...] appointment for a hearing o [...] desiring such hearing to mee [...] opposing counsel in a good-f [...] absence of any agreement, su [...] nearest the Court in the divis [...] has a regularly scheduled m [...] permissible motions day.

(F) **Briefs Required:** [...] (1) All motions, unless ot [...] hereinbelow in subsection 7(F [...] a concise statement of the fac [...] authorities upon which the m [...] opposing party shall file a re [...] appropriate, within eleven (1 [...] rebuttal brief within three (3) [...] No further briefs or written co [...] of Court.

(2) Briefs need not accomp [...] extension of time to respond t [...] default judgment.

(3) All briefs, including foo [...] pitch Courier style with one ir [...] filing, opening and responsive [...] tion, shall not exceed thirt [...] rebuttal briefs shall not excee [...]

(G) **Continuances:** Motion [...] granted by the mere agreemen [...] on good cause and upon such [...]

(H) **Filing of Pleadings:** A [...] briefs, and filings of any kind r [...] in which the case is pending.

1170

(e) Home Addresses. If a home address must be included, only the city and state should be listed, except that a party appearing *pro se* shall comply with section (B).

(2) If it is necessary to include a personal identifier in a pleading (e.g., in cases challenging the Social Security Administration's determination of benefits or disability) or order, a redacted pleading or order shall be publicly filed and

(a) an unredacted version of the pleading shall be tendered for filing under seal in accord with Local Civil Rule 5(B) and the party shall cite the E-Government Act of 2002 as authority in support of the sealing; or

(b) a reference list shall be tendered for filing under seal in accord with Local Civil Rule 5(B) and the party shall cite the E-Government Act of 2002 as authority in support of the sealing. The reference list shall contain the complete personal identifier(s) and the corresponding redacted identifier(s) used in the filing. All references in the case to the redacted identifiers included in the reference list will be construed to refer to the corresponding complete personal identifier. The reference list may be amended as of right.

(3) The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk will not review each pleading for compliance with this Local Rule. Counsel and the parties are cautioned that failure to redact these personal identifiers may subject them to sanctions.

(D) **Use of Forms:** Motions and interrogatories on printed forms, multigraphed, mimeographed, or in any manner reproduced by machine process, other than a typewriter, computer, or word processor, shall not be permitted unless the attorney filing same has deleted all extraneous matter and certifies that he or she has carefully reviewed the remaining portions and in good faith believes that the contents are pertinent to the case.

(E) **Return Date:** Except as otherwise provided by an order of the Court or by these Local Rules, all motions shall be made returnable to the time obtained from and scheduled by the Court for a hearing thereon. The moving party shall be responsible to set the motion for hearing or to arrange with opposing counsel for submission of the motion without oral argument. Unless otherwise ordered, a motion shall be deemed withdrawn if the movant does not set it for hearing (or arrange to submit it without a hearing) within thirty (30) days after the date on which the motion is filed. The non-moving party also may arrange for a hearing. Before endeavoring to secure an appointment for a hearing on any motion, it shall be incumbent upon the counsel desiring such hearing to meet and confer in person or by telephone with his or her opposing counsel in a good-faith effort to narrow the area of disagreement. In the absence of any agreement, such conference shall be held in the office of the attorney nearest the Court in the division in which the action is pending. In any division that has a regularly scheduled motions day, the motion should be noticed for the first permissible motions day.

(F) **Briefs Required:**
(1) All motions, unless otherwise directed by the Court and except as noted hereinbelow in subsection 7(F)(2), shall be accompanied by a written brief setting forth a concise statement of the facts and supporting reasons, along with a citation of the authorities upon which the movant relies. Unless otherwise directed by the Court, the opposing party shall file a responsive brief and such supporting documents as are appropriate, within eleven (11) days after service and the moving party may file a rebuttal brief within three (3) days after the service of the opposing party's reply brief. No further briefs or written communications may be filed without first obtaining leave of Court.

(2) Briefs need not accompany motions for: (a) a more definite statement; (b) an extension of time to respond to pleadings, unless the time has already expired; and (c) a default judgment.

(3) All briefs, including footnotes, shall be written in 12 point Roman style or 10 pitch Courier style with one inch margins. Except for good cause shown in advance of filing, opening and responsive briefs, exclusive of affidavits and supporting documentation, shall not exceed thirty (30) 8-1/2 inch x 11 inch pages double-spaced and rebuttal briefs shall not exceed twenty (20) such pages.

(G) **Continuances:** Motions for continuances of a trial or hearing date shall not be granted by the mere agreement of counsel. No continuance will be granted other than for good cause and upon such terms as the Court may impose.

(H) **Filing of Pleadings:** After the filing of the complaint, all pleadings, motions, briefs, and filings of any kind must be timely filed with the Clerk's Office of the division in which the case is pending.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| PEOPLE FOR THE ETHICAL | : | |
|     TREATMENT OF ANIMALS | : | |
| | : | |
| v. | : | Misc. Case:  1:08-mc-00069 (EGS) |
| | : | |
| FELD ENTERTAINMENT, INC. | : | |

--------------------------------------------------------

Related Case No.  03-2006 (EGS/JMF)

| | | |
|---|---|---|
| AMERICAN SOCIETY FOR THE | : | |
| PREVENTION OF CRUELTY TO | : | |
| ANIMALS, <u>et al.</u>, | : | |
| | : | |
|                 Plaintiffs, | : | |
| | : | |
|        v. | : | |
| | : | |
| FELD ENTERTAINMENT, INC., | : | |
| | : | |
|                 Defendant. | : | |
| | : | |

<u>RESPONSE IN OPPOSITION TO PETA'S MOTION FOR PROTECTIVE ORDER</u>

# EXHIBIT 11

# TROUTMAN SANDERS LLP

### ATTORNEYS AT LAW
A LIMITED LIABILITY PARTNERSHIP

150 WEST MAIN STREET
SUITE 1600
NORFOLK, VIRGINIA 23510-1609
www.troutmansanders.com
TELEPHONE: 757-640-0004
FACSIMILE: 757-687-7510

Christopher A. Abel                                           Direct Dial:  757-687-7535
chris.abel@troutmansanders.com                               Direct Fax:   757-687-1532

February 25, 2008

**BY HAND DELIVERY**
Fernando Galindo, Clerk
United States District Court
Eastern District of Virginia
Norfolk Division
600 Granby Street
Norfolk, VA 23510-2449

RE:    ***Feld Entertainment, Inc. v. People for Ethical Treatment of Animals***
       **Case No.:  2:2008mc00004**

Dear Mr. Galindo:

On January 28, 2008, Plaintiff Feld Entertainment, Inc. filed its Motion to Compel Documents Subpoenaed from Defendant People for the Ethical Treatment of Animals. That motion is now fully briefed, with Defendant People for the Ethical Treatment of Animals having filed its Memorandum in Opposition on February 13th and Plaintiff having filed its Reply Brief on February 19th.

Plaintiff believes that a hearing on this Motion to Compel would aid the Court in its determination and therefore respectfully requests that the Court schedule a hearing on the motion at its earliest convenience.

Your assistance in this matter is appreciated. Do let me know if you have any question about the enclosed. In the interim, I remain

Respectfully,

Christopher A. Abel

CAA/lmn

ATLANTA · HONG KONG · LONDON · NEW YORK · NEWARK · NORFOLK · RALEIGH
RICHMOND · SHANGHAI · TYSONS CORNER · VIRGINIA BEACH · WASHINGTON, D.C.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PEOPLE FOR THE ETHICAL | : | |
| TREATMENT OF ANIMALS | : | |
| | : | |
| v. | : | Misc. Case:  1:08-mc-00069 (EGS) |
| | : | |
| FELD ENTERTAINMENT, INC. | : | |

--------------------------------------------------------

Related Case No.  03-2006 (EGS/JMF)

| | | |
|---|---|---|
| AMERICAN SOCIETY FOR THE | : | |
| PREVENTION OF CRUELTY TO | : | |
| ANIMALS, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| FELD ENTERTAINMENT, INC., | : | |
| | : | |
| Defendant. | : | |

**RESPONSE IN OPPOSITION TO PETA'S MOTION FOR PROTECTIVE ORDER**

# EXHIBIT 12

# FULBRIGHT & JAWORSKI L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
801 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, D.C. 20004-2623
WWW.FULBRIGHT.COM

LISA ZEILER JOINER
PARTNER
LJOINER@FULBRIGHT.COM

DIRECT DIAL:   (202) 662-4501
TELEPHONE:    (202) 662-0200
FACSIMILE:     (202) 662-4643

February 12, 2008

**VIA FACSIMILE & REGULAR MAIL**

Philip J. Hirschkop
908 King Street, Suite 200
Alexandria, Virginia 22314-3013

Re:   Feld Entertainment, Inc. v. PETA, Action No. 2:08-mc-4

Dear Mr. Hirschkop:

I am in receipt of and write in response to your February 11, 2008 letter addressed to Mr. Gasper. We are comfortable that, having proceeded in accordance with the Federal Rules of Civil Procedure, we have filed in the proper forum to enforce our subpoena that was validly issued to PETA. Even you have conceded, as you must, that the forum in which we have proceeded has jurisdiction. Your actions during the past week have made it abundantly clear that your client, PETA, wishes to avoid its home forum, the Eastern District of Virginia, Norfolk Division, at all costs. However, we see absolutely no reason why that court is not qualified to resolve this dispute. Nor are we persuaded that jurisdiction can simply be conferred on the court in Washington by mere agreement of the parties. We are likewise aware of no basis for your overblown commentary that anything we have done is sanctionable. We have issued a valid subpoena to PETA out of the proper federal district. PETA has not complied, and we have moved to enforce accordingly. We intend to see this matter through to its resolution regardless of however many unnecessary additional filings you try to bring to prevent that.

Sincerely,

Lisa Zeiler Joiner

cc:   Christopher A. Abel

60074366.1

AUSTIN • BEIJING • DALLAS • DENVER • DUBAI • HONG KONG • HOUSTON • LONDON • LOS ANGELES • MINNEAPOLIS
MUNICH • NEW YORK • RIYADH • SAN ANTONIO • ST. LOUIS • WASHINGTON DC

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **PEOPLE FOR THE ETHICAL** | : | |
| **TREATMENT OF ANIMALS** | : | |
| | : | |
| **v.** | : | **Misc. Case:  1:08-mc-00069 (EGS)** |
| | : | |
| **FELD ENTERTAINMENT, INC.** | : | |

-------------------------------------------------------

**Related Case No.  03-2006 (EGS/JMF)**

| | | |
|---|---|---|
| **AMERICAN SOCIETY FOR THE** | : | |
| **PREVENTION OF CRUELTY TO** | : | |
| **ANIMALS, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **FELD ENTERTAINMENT, INC.,** | : | |
| | : | |
| **Defendant.** | : | |

_____:

**<u>RESPONSE IN OPPOSITION TO PETA'S MOTION FOR PROTECTIVE ORDER</u>**

**EXHIBIT 13**



# HUFF, POOLE & MAHONEY, P.C.
### ATTORNEYS & COUNSELLORS

J. Bryan Plumlee, Esq.

Direct Dial: 757/518-5615
Email: bplumlee@hpmlaw.com

Reply to:
Virginia Beach

February 29, 2008

Fernando Galindo, Clerk
United States District Court
Eastern District of Virginia
600 Granby Street
Norfolk, VA  23510

     Re:    Feld Entertainment, Inc. v. People for the Ethical Treatment of Animals
              Case No.: 2:08mc4
              Our File No.: 7403.002208

Dear Mr. Galindo:

     On February 13, 2008, Defendant PeTA filed a Motion for Protective Order to Transfer this Matter to the District of Columbia or to Stay the Matter. The Motion has been fully briefed by both parties.

     The Court has set a hearing on Plaintiff's Motion to Compel for March 7, 2008 at 2:00 p.m. Plaintiff's Motion and PeTA's Motion concern the same legal and procedural issues. Further, counsel for Defendant PeTA will be traveling from the Washington, D.C. area for the Motion to Compel and will be prepared to argue in support of PeTA's Motion, also.

     For these reasons, we ask our Motion for Protective Order to Transfer this Matter to the District of Columbia or to Stay the Matter filed on February 13, 2008 be considered and heard by the Court during the currently set hearing of March 7, 2008.

     Defendant PeTA believes a hearing on this Motion would aid the Court in its determination, and respectfully requests the Court hear its Motion on March 7, 2008.

     Thank you for your assistance. Should you have any questions, please do not hesitate to contact me.

VIRGINIA BEACH
4705 Columbus Street, Virginia Beach, VA 23462-6749
(757) 499-1841 • FAX (757) 552-6016

www.hpmlaw.com

CHESTERFIELD
9850 Lori Road, Suite 101, Chesterfield, VA 23832-6623
(804) 778-7265 • FAX (804) 778-7943

Fernando Galindo, Clerk
February 29, 2008
Page 2

      With kind regards, I am

                Very truly yours,

                HUFF, POOLE & MAHONEY, P.C.

            By

            J. Bryan Plumlee

JBP/tg
cc:   Christopher A. Abel, Esq. (*via notification using the CM/ECF system*)
      Dawn Serafine, Esq. (*via notification using the CM/ECF system*)
      Philip J. Hirschkop, Esq. (*via electronic mail*)